Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Natasha Mehta (SBN 272241)
nmehta@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:  (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiffs MICHAEL
CALLAGHAN, MATTHEW
CALDWELL, and RODNEY PENA,
individually, and on behalf of other
members of the public similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CALLAGHAN, MATTHEW CALDWELL, and RODNEY PENA, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> BMW of NORTH AMERICA, LLC, a New Jersey limited liability company, and BAYERISCHE MOTOREN WERKE AG, a corporation organized under the laws of the Federal Republic of Germany, <br><br> Defendants. | Case Number: <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*); <br><br> (2) Negligence; <br><br> (3) Violation of New York Deceptive Practices Act (N.Y. Gen. Bus. Law § 349); and <br><br> (4) Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, *et seq.*) <br><br> **Jury Trial Demanded** |

Plaintiffs MICHAEL CALLAGHAN, MATTHEW CALDWELL, and RODNEY PENA ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated (the "Classes," as defined in detail below), allege as follows:

1.      This is a consumer class action concerning 2002 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles equipped with the 6-Speed automatic transmission (collectively, "S Models" or "Class Vehicles").

2.      The Class Vehicles are designed, manufactured, imported, distributed, maintained and marketed in the United States by Defendants BMW of North America, LLC and Bayerische Motoren Werke AG (collectively, "BMW Group" or "Defendants").

3.      BMW Group makes misrepresentations and material omissions by marketing the Class Vehicles as being equipped with automatic transmission fluid that does not need to be replaced (*i.e.*, so-called "lifetime" fluid). Critically, BMW Group fails to disclose to consumers that if they follow BMW Group's maintenance instructions, and they do not replace the transmission fluid in the Class Vehicles, the transmission will suffer from sudden and premature failure.

4.      BMW Group's misrepresentations and material omissions present a serious safety concern to consumers, and have caused consumers to suffer significant monetary damages.

**INTRODUCTION**

5.      BMW Group introduced the Mini Cooper and Mini Cooper S Models in the United States in 2002 with great fanfare and public attention. BMW Group's marketing strategy for MINI was to launch a new class of high-end vehicles. BMW Group presented the MINI as a stylish, high performance, yet affordable vehicle.

6.     At the time of the launch, Jack Pitney, general manager of BMW Group's MINI division in the U.S., explained to the Wall Street Journal, "'[w]e're creating a new segment' of premium small vehicles."[1]

7.     BMW Group's S Models are intended by BMW Group to be a higher performance variant of the standard Mini Cooper.  The Class Vehicles feature upgrades to the standard Mini Coopers, including a turbocharger, 181 Horsepower, and other mechanical "improvements" concerning internal engine components and cooling systems. In addition, BMW Group represents in its Service and Warranty Information booklet that, unlike the standard Mini Coopers, the Class Vehicles contain lifetime transmission fluid that does not need to be replaced.

8.     Plaintiffs are informed and believe, and based thereon, allege that BMW Group markets the Class Vehicles as including lifetime transmission fluid for at least two reasons.

9.     First, Plaintiffs are informed and believe, and based thereon, allege that BMW Group wants to present an image of the Class Vehicles as being high-quality, low-maintenance vehicles that require little, if any, maintenance or repair.  Plaintiffs are informed and believe, and based thereon, allege that BMW Group aims to project an image of the S Models as a step above the standard Mini Cooper models, and the presence of supposed lifetime transmission fluid is one of the factors that distinguishes the S Models from the standard Mini Cooper models.

10.     Second, Plaintiffs are informed and believe, and based thereon, allege that BMW Group seeks to market its service and warranty program as a selling point for the Class Vehicles, while simultaneously avoiding responsibility for the costly and complicated process of changing the Class Vehicles' transmission fluid.

---

[1] *See* "BMW 'Mini' Campaign:  Odd to the Max," Karen Lundegaard, Wall Street Journal at B5 (March 1, 2002) (emphasis added).

11.    A key selling feature of BMW Group's Mini Cooper vehicles is its Maintenance & Warranty program (the "Maintenance Program"). BMW Group's Maintenance Program promises to "maximize vehicle safety, reliability, and resale value by minimizing breakdowns resulting from wear, and minimizing cost and inconvenience." BMW Group also misrepresents to consumers that under its Maintenance Program, "your car will be maintained to [its] exacting standards. Which are, admittedly, higher than most."

12.    BMW Group's Maintenance Program misrepresents to consumers and to automotive servicers that, although the automatic transmission fluid must be changed for the standard Mini Coopers, that service is not necessary for the Class Vehicles.

13.    However, Plaintiffs are informed and believe, and based thereon, allege that failing to change the automatic transmission fluid in the Class Vehicles at regular intervals causes premature and dangerous transmission failure -- a material fact that BMW Group refuses to disclose to consumers.

14.    Plaintiffs are informed and believe, and based thereon, allege that a vehicle's transmission is intended and reasonably expected to last at least ten years, if not more, without the need for repair or replacement. However, because BMW Group does not instruct its authorized dealers and servicers to change the automatic transmission fluid in Class Vehicles, consumers do not have that service performed. As a result, the automatic transmission fluid in the Class Vehicles degrades and the Class Vehicles' transmissions fail suddenly and prematurely. Transmission failure occurs long before the end of the useful life of the Class Vehicles, and well before consumers reasonably expect any such failures to occur.

15.    Plaintiffs are informed and believe, and based thereon, allege that BMW Group knows that the automatic transmission fluid in the Class Vehicles will not, and cannot, last indefinitely, and that failing to replace the transmission fluid will cause the Class Vehicles' automatic transmissions to malfunction and fail prematurely.

CLASS ACTION COMPLAINT

16.     Plaintiffs are informed and believe, and based thereon, allege that BMW Group has been aware that failing to replace the automatic transmission fluid in the Class Vehicles will cause premature automatic transmission malfunction and failure as a result of pre-production testing, design failure mode analysis, and customer complaints made to dealers -- information that is exclusively in BMW Group's possession and inaccessible to consumers.  Notwithstanding BMW Group's exclusive knowledge, however, BMW Group continues to make affirmative misrepresentations and material omissions concerning the automatic transmission fluid in the Class Vehicles.  BMW group has continued this unlawful practice even as consumer complaints concerning automatic transmission malfunctions and failures began pouring in in 2003, if not earlier.

17.     Plaintiffs are informed and believe, and based thereon, allege that BMW Group has sought to utilize its Maintenance Program as a key selling feature for the Class Vehicles.  Indeed, to date, BMW Group continues to lure new buyers to its Mini Cooper brand with its Maintenance Program.

18.     On its website, BMW Group describes the Maintenance Program as follows:

NO COST MAINTENANCE & WARRANTY

BOOT TO BONNET NO COST MAINTENANCE

Maintenance On Us for 3-years/36,000 miles.

It comes standard with every new MINI† and is one of the most comprehensive maintenance programs in its class, covering all factory-recommended maintenance for the 3 years or 36,000 miles (whichever comes first) saving you up to $1,350 in service costs.** [**As of April 19, 2013, that's a savings of up to $1,350 as compared to model year 2013 competitive vehicles according to Edmunds.com.]

- Engine Oil Services
- Inspection Services
- Brake Pads and Rotors
- Brake Fluid Service
- Wiper Blade Inserts

CLASS ACTION COMPLAINT

- Engine Drive Belt
- Engine Air Filter
- Cabin Air Microfilter

To receive these services at no cost, just schedule an appointment at your authorized MINI Dealer while your MINI is covered by this program. And since all services willbe performed by a MINI trained and certified technician, using genuine MINI parts, your car will be maintained to our exacting standards. Which are, admittedly, higher than most.

19.   A screen shot of BMW Group's promotion of its Maintenance Program, taken from its website, appears as follows:



20.     Plaintiffs are informed and believe, and based thereon, allege that by affirmatively misrepresenting in its Maintenance Program that the transmission fluid need not be replaced in the Class Vehicles, BMW Group is able to capitalize on the marketing potential of its Maintenance Program, while shirking responsibility for changing the Class Vehicles' transmission fluid, a costly and time-consuming process.

21.     As a result of BMW Group's misrepresentations and material omissions, consumers are required to spend thousands of dollars to repair or replace their damaged or destroyed transmissions, or sell their Class Vehicles without repair at a substantial loss. Furthermore, by failing to disclose the fact that unchanged transmission fluid will lead to premature transmission failure, consumers remain unaware of the need for particular repairs and replacements to their Class Vehicles within the warranty period -- namely, the replacement of automatic transmission fluid.  Plaintiffs are informed and believe, and based thereon, allege that BMW Group intentionally fails to disclose this fact so that the warranty period for the Class Vehicles will expire before owners and lessees become aware of issues with transmission function.  Through this practice, BMW Group unlawfully transfers the cost of repairs or replacement of components of the Class Vehicles to Plaintiffs and members of the Classes.

22.     The fact that the Class Vehicles require replacement of automatic transmission fluid, and that neglecting to replace the fluid causes premature transmission failure, is material because no reasonable consumer expects to spend thousands of dollars to repair or replace essential components of their Class Vehicle in the early years of ownership.

23.     Additionally, these facts are material to consumers because in purchasing the Class Vehicles, Plaintiffs and members of the Classes relied on a reasonable expectation that driving the Class Vehicles would not pose an unavoidable safety risk.  Sudden automatic transmission failure is a serious safety issue, which places the driver and passengers in the Class Vehicles at risk of serious bodily harm.  When the transmissions fail, they do so without warning, and in the midst of operating the vehicle, drivers are

6

suddenly unable to engage gears.  Consumers have reported that their Class Vehicles have hesitated, stalled, or stopped completely in the middle of traffic; they have unexpectedly surged forward while accelerating; and they have jerked and stumbled while attempting to accelerate.  Drivers are unable to keep up with the normal flow of traffic or control the movement of their vehicles, exposing them to the risk of collisions.

24.     Indeed, the safety of the vehicle is particularly material given the small size of the Class Vehicles.  When the transmissions fail, there is no safe alternative way for Class Vehicles drivers to avoid the risk of potential harm while driving.  Thus, as a result of BMW Group's misrepresentations and material omissions, BMW Group has recklessly placed the safety of owners and occupants of the Class Vehicles at risk.

25.     Had BMW Group represented to consumers of the Class Vehicles that the automatic transmission fluid would need to be changed, and that failure to do so would cause premature transmission failure, consumers would have had the fluid replaced at regular intervals, rather than allowing their transmissions to degrade and fail.  However, BMW Group neither disclosed these material facts to consumers at the time of purchase, nor anytime thereafter.  Instead, the automatic transmissions in the Class Vehicles have already failed, have begun to fail, and absent a change in BMW Group's maintenance instructions, they will continue to fail, and consumers are forced to either pay thousands of dollars to repair or replace their transmissions, or sell their damaged vehicles at a loss.

26.     Plaintiffs seek, on behalf of themselves and the Classes, injunctive relief, restitution, damages, and other appropriate relief.

## JURISDICTION AND VENUE

27.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class (as defined below) are citizens of states different from Defendants.  There are at least 100 members of the Class.  Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens.

1    28.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental

2  jurisdiction over the state law claims because all of the claims are derived from a common

3  nucleus of operative facts and are such that Class members ordinarily would expect to try

4  them in one judicial proceeding.

5    29.    Venue lies within this judicial district under 28 U.S.C. § 1391(a) and (c)

6  because BMW Group has sufficient contacts with this District to subject it to personal

7  jurisdiction in this District, and a substantial part of the events and omissions giving rise

8  to the claims asserted in this Complaint occurred within this District.

9                              **Intradistrict Assignment**

10    30.    Consistent with Northern District of California Civil Local Rule 3-5(b),

11  assignment to the San Francisco or Oakland Division is appropriate under Civil Local

12  Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this Complaint

13  occurred, among other places, in this District, in the City of San Francisco and Contra

14  Costa County.

15                                    **PARTIES**

16    31.    Plaintiff Michael Callaghan is an individual and a citizen of California.

17    32.    Plaintiff Matthew Caldwell is an individual and a citizen of California.

18    33.    Plaintiff Rodney Pena is an individual and a citizen of New York.

19    34.    Defendant BMW of North America, LLC is a New Jersey limited liability

20  company with its principal place of business located at 300 Chestnut Ridge Road,

21  Woodcliff Lake, New Jersey 07677, and doing business in the State of California.

22    35.    Plaintiffs are informed and believe, and on that basis, allege that BMW of

23  North America, LLC is responsible for the importation, distribution, marketing and sale of

24  the Class Vehicles in the United States and California.

25    36.    BMW of North America, LLC is a wholly owned subsidiary of BMW (US)

26  Holding Corporation, a Delaware corporation, which is a wholly owned subsidiary of

27  Defendant Bayerische Motoren Werke AG.

28

1    37.    Defendant Bayerische Motoren Werke AG ("BMW AG") is a corporation

2  organized under the laws of the Federal Republic of Germany, with its principal place of

3  business in Petuelring 130, 80809 Munich, Germany.

4    38.    Plaintiffs are informed and believe, and on that basis, allege that Defendant

5  Bayerische Motoren Werke AG designs and manufactures motor vehicles, parts, and other

6  products for sale in Europe and for export and sale throughout the world, including the

7  Class Vehicles sold in the United States and California.

8    39.    Whenever, in this Complaint, reference is made to any act, deed, or conduct

9  of BMW Group, the allegation means that BMW Group engaged in the act, deed, or

10  conduct by or through one or more of its officers, directors, agents, employees or

11  representatives who was actively engaged in the management, direction, control or

12  transaction of the ordinary business and affairs of BMW Group.

13                              **FACTUAL BACKGROUND**

14    40.    BMW Group designs, manufactures, imports, distributes, and markets the

15  Class Vehicles in the United States, including California. BMW Group also provides

16  maintenance services for the Class Vehicles through its nationwide network of authorized

17  dealers and service providers.

18    41.    BMW Group's marketing misrepresents to Plaintiffs and members of the

19  Classes that the Class Vehicles' transmission fluid does not need to be replaced. BMW

20  Group has furthermore not disclosed, at any time, that failure to replace old and degraded

21  fluid will cause premature transmission failure in the Class Vehicles, long before the end

22  of the useful life of the Class Vehicles, which Plaintiff is informed and believes, and

23  based thereon alleges, is approximately ten years or longer.

24    42.    As a direct and proximate result of BMW Group's misrepresentations and

25  material omissions concerning its "lifetime" transmission fluid, when the Class Vehicles'

26  transmissions malfunction and fail outside the warranty period, members of the Classes

27  suffer damages. They are required to incur substantial costs to repair or replace their

28  transmissions, or sell their vehicles are a substantially reduced price, costing them

thousands of dollars in out-of-pocket expenses. Additionally, because the Class Vehicles' transmissions fail without warning, while the vehicles are in motion, these failures pose serious safety concerns to consumers that are not reasonably avoidable.

43. Plaintiffs are informed and believe, and based thereon, allege that BMW Group is well aware of the fact that the Class Vehicles' automatic transmission fluid must be changed regularly. Additionally, Plaintiffs are informed and believe, and based thereon, allege that BMW Group is well aware that the Class Vehicles' transmissions have been failing prematurely. Nevertheless, BMW Group refuses to offer any remedy, or acknowledge that the problem exists. BMW Group instead continues to market the Class Vehicles as being equipped with lifetime automatic transmission fluid that does not need to be replaced, and refuses to disclose that this is false.

## BMW Group's Representations and Material Omissions in Marketing the Class Vehicles as being Equipped with Lifetime Transmission Fluid that Does Not Need to be Replaced

44. In its "Service and Warranty Information" for 2003 Mini Cooper and Mini Cooper S models ("2003 Manual"), BMW Group informs consumers and the automotive repair industry that transmission fluid in the Class Vehicles need not be replaced at any point. The 2003 Manual provides a "detailed list of all maintenance operations included in each of the elements of the MINI Maintenance System," which includes an oil service, an "Inspection I," and an "Inspection II."

45. "Inspection I," which pertains to "[m]ajor vehicle maintenance," provides that "[o]nly those items of inspection work which apply to your vehicle will be performed." "Inspection I" instructs that identical maintenance services must be performed for both the Mini Cooper and Mini Cooper S models, except in one significant respect: BMW Group affirmatively represents that transmission fluid will *not* need to be replaced in the Class Vehicles.

1      46.    BMW Group's instructions for "Inspection I" appears in the 2003 Manual as

2  follows:

CLASS ACTION COMPLAINT

47.   Likewise, BMW Group's "Service & Warranty Information" for 2005 Mini Cooper and Mini Cooper S models also instructs that in servicing the Class Vehicles, "[o]nly those items of inspection work which apply to your vehicle will be performed." Again, BMW Group affirmatively misrepresents that automatic transmission fluid does not need to be replaced for the Class Vehicles:

## Inspection I
Only those items of inspection work which apply to your vehicle will be performed. This list is subject to amendment.

| Undercarriage | MINI Cooper | MINI Cooper S |
|---|---|---|
| Change oil and oil filter while engine is at normal operating temperature. We recommend MINI 5W-30 High Performance Synthetic Oil. p/n 07 51 0 143 829. | • | • |
| Change CVT (automatic) transmission fluid. | • | • |
| Check transmission for leaks. | • | • |
| Half-shafts: Check for leaks at flexible boots. | • | • |
| Visually check fuel tank, lines and connections for leaks. | • | • |
| Check condition, position, and mounting of exhaust system. Examine for leaks. | • | • |
| Check power steering system for leaks. Check power steering fluid level; add fluid if necessary. | • | • |
| Check steering for absence of play, condition of suspension track rods, front axle joints, steering linkage and joint disc. | • | • |
| Check overall thickness of front and rear disc brake pads using special tool. If replacement is necessary: Examine brake disc surfaces. Clean brake pad contact points in calipers. Grease wheel centering hubs. Check thickness of parking brake linings only when replacing rear brake pads. | • | • |
| Check brake system connections and lines for leaks, damage and incorrect positioning. | • | • |
| Check parking brake actuation. Adjust if necessary. | • | • |
| Check all tire pressures (including spare if equipped). Correct if necessary. Check condition of tires (outer surface (left/right)), tread wear and pattern; in case of uneven tread wear, readjust wheel alignment if requested (invoice separately). | • | • |
| Inspect entire body according to terms of rust performation limited warranty. (Must be performed at least every two years). | • | • |

48.   Plaintiffs are informed and believe, and based thereon, allege that all of BMW Group's Service & Warranty Information manuals and literature pertaining to the Class Vehicles misrepresent that transmission fluid would not need to be changed at any time.

CLASS ACTION COMPLAINT

49.     Furthermore, Plaintiffs are informed and believe, and based thereon allege that BMW Group has never disclosed to consumers nor the automotive repair industry that the automatic transmission fluid for the Class Vehicles does in fact need to be changed, and that failure to change the fluid at regular intervals will cause premature transmission failure in the Class Vehicles.

**The Consequences of Failing
to Replace Automatic Transmission Fluid
in the Class Vehicles**

50.     Plaintiffs are informed and believe, and based thereon, allege that automatic transmission fluid does not, and cannot, last indefinitely.  Plaintiffs are informed and believe, and based thereon, allege that automatic transmission fluid begins to degrade and damage a vehicle's automatic transmission after the vehicle has been driven approximately 30,000 miles, if not sooner.

51.     Automatic transmission fluid is necessary to lubricate and protect the moving parts in the Class Vehicles' automatic transmissions.  Bearings, bearing shafts, synchronizers and gears need lubrication to spin, engage, and disengage properly.

52.     When the automatic transmission fluid in a Class Vehicle is not changed, over time, it becomes dirty, contaminated, it begins to disintegrate, and it loses its viscosity and lubricating qualities.  This leads to catastrophic and permanent destruction to the Class Vehicle's automatic transmission.  It causes increasing friction between critical transmission parts, resulting in free-floating metal shavings that score the metal surfaces of bearings, races, gears and shafts.  This in turn causes vibration, drag, non-shifting, rough shifting and sometimes complete transmission lockup or gear and shaft breakage.

53.     Because automatic transmission fluid is designed to cool as well as lubricate, automatic transmission fluid that has not been changed also causes overheating inside the transmission.  The increased friction further breaks down the viscosity and lubricating qualities of the automatic transmission fluid, causing additional friction.  Parts within the

13

Class Vehicle's automatic transmissions, including O rings, gaskets, and rubber and fiber seals, can melt or deform upon encountering excessive heat. Overheated transmission fluid further results in blown seals and leakage.

54. In addition, old, dirty, and contaminated automatic transmission fluid causes sludge to build up inside the transmission, joining with metal particles, and causing severe blockages in passages, check valves and filters. Precise pressures are required for a Class Vehicle's automatic transmissions' shifting mechanisms to function properly -- because sludge blockages cause pressure differences, this impacts a Class Vehicle's ability to shift properly. And, abnormally high pressure can blow gaskets and seals.

55. In sum, Plaintiffs are informed and believe, and based thereon, allege that when automotive servicers do not change the automatic transmission fluid in the Class Vehicles, the automatic transmissions begin to malfunction and fail prematurely.

**BMW Group Is Aware that
the Class Vehicles' Transmissions Fail Prematurely**

56. The premature failure of the Class Vehicles' automatic transmissions is a well-documented problem. At all times, BMW Group has exclusively possessed superior information to that of consumers concerning the premature failures of the Class Vehicles' automatic transmissions, and the cause thereof. Thus, BMW Group's consumer deception is both knowing and willful.

57. However, despite BMW Group's superior knowledge of this problem, BMW Group's marketing continues to misrepresent that the Class Vehicles contain lifetime automatic transmission fluid, and BMW Group fails to disclose that this essential fluid must be changed at regular intervals to prevent premature transmission failure. BMW Group willfully intends that consumers rely on its misrepresentations and material omissions in purchasing the Class Vehicles, and in not having appropriate maintenance, or repairs during the warranty periods.

14

58.     Plaintiffs are informed and believe, and based thereon, allege that hundreds of Class Vehicle owners and lessees have reported complaints concerning the Class Vehicles' premature transmission failure. Plaintiffs are informed and believe, and based thereon, allege that these complaints have been made to BMW Group directly, including to the company's network of dealerships, and to BMW Group's customer service agents, all of which are exclusively known to BMW Group, and have not been disclosed to consumers.

59.     BMW Group is, therefore, well aware of the problem and safety risks, and has been since 2003, if not earlier, when the first complaints with the National Highway Traffic and Safety Administration ("NHTSA") concerning transmission failures in the Class Vehicles were filed. A sample of such complaints, as reported to the NHTSA, follows:

Date Complaint Filed: 03/19/2006
Component(s): POWER TRAIN
Date of Incident: 02/27/2004
NHTSA ID Number: 10153123

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2003

Crash: No     Fire: No     Number of Injuries: 0     Number of Deaths: 0

Manufacturer: BMW of North America, LLC

Vehicle Identification No. (VIN): WMWRE33453T

SUMMARY:
ONE MORNING DRIVING ABOUT 100 MPH GOING UP TO CT I PAY A TOLL TAKE OFF THE CAR HESITATES IN FIRST GEAR THEN GOES OK. ABOUT A 2 MILES FROM THE TOLL I AM DOING ABOUT 100 MPH AND SWITCH TO THE RIGHT LANE AND THE CAR JUST STOP GIVING ME POWER SO I GO TO CHANGE TO 5TH GEAR NO LUCK SO I LET THE CAR ROLL TO THE SHOULDER CALL MINI ROADSIDE AND THEY TOW TO NEAREST DEALER TO MY HOUSE. THE DEALER HAS MY CAR FOR A TOTAL OF 8 DAYS AND TELL ME THE L/FRONT AXLE WILL NOT STAY IN THE TRANSMISSION. THEN THE DEALER SAY THAT ITS NOT COVERED@ FIRST THEN TELLS ME THAT WILL COVER IT A DAY LATER AFTER THE MINI SPECIALIST TAKE A LOOK @ IT AND SAY WE WILL COVER IT THIS TIME AS A FAVOR. NOW IT IS TEN DAYS LATER AND THE SAME THING HAS HAPPEN AGAIN THIS TIME I HAVE TO PAY FOR TOWING AND I CANT WAIT TO HAVE A TALK WITH THE DEALER. I WILL KEEP U GUYS POSTED. *NM

Date Complaint Filed: 10/30/2003
Component(s): POWER TRAIN
Date of Incident: 10/22/2003
NHTSA ID Number: 10045110

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2003

Details:
Crash: No     Fire: No      Number of Injuries: 1          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): Not Available

SUMMARY:
CAR LOSES POWER SUDDENLY AND LURCHES IN FIRST GEAR WHEN MOVING OFF FROM
A STANDING START. *LA

Date Complaint Filed: 09/20/2003
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 09/10/2003
NHTSA ID Number: 10039211

All Products Associated with this Complaint:

Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2003

Details:
Crash: No     Fire: No      Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): Not Available

SUMMARY:
"2003 MINI COOPER S AUTOMOBILE EXPERIENCES A NOTICEABLE AND SIGNIFICANT
STUMBLE WHEN ENGAGING FIRST GEAR AND ACCELERATING FROM A STOPPED
POSITION. THE STUMBLE IS SIGNIFICANT ENOUGH TO CAUSE A STALL CONDITION AND
RESULTS IN UNRELIABLE THROTTLE RESPONSE. THE PROBLEM IS WORSE AT HIGHER
RPM ENGAGEMENTS, IN HOTTER WEATHER, AND WITH THE AC ENGAGED. THE
STUMBLE FEELS LIKE A MOMENTARY LOSS OF POWER AND THEN SHORTLY
THEREAFTER, POWER IS RETURNED TO THE WHEELS. THE PROBLEM OCCURS ON
VIRTUALLY EVERY ENGAGEMENT BUT IS CONSIDERABLY WORSE ON THE FIRST
ENGAGEMENT AFTER THE CAR HAS SAT FOR SEVERAL HOURS WITH THE ENGINE OFF.
THE PROBLEM IS LESS SEVERE WHEN TURNING THE CAR LEFT OR RIGHT WHILE
ENGAGING FIRST GEAR. THIS ISSUE RENDERS THE THROTTLE RESPONSE UNRELIABLE
AND CAN STALL THE AUTOMOBILE AT UNEXPECTED TIMES. NO CRASHES HAVE
OCCURRED AT THIS TIME BUT THE POTENTIAL FOR A REAR-END COLLISION DUE TO A
STALL OR A SIDE IMPACT COLLISION DUE TO STALLING WHEN CROSSING AN

INTERSECTION IS PRESENT. ADDITIONAL ISSUES RELATED TO ENGINE MANAGEMENT AND THROTTLE RESPONSE OCCUR IN THE SAME AUTOMOBILE HAVE OCCURRED BUT THESE ADDITIONAL PROBLEMS HAVE BEEN INTERMITTENT AND DIFFICULT TO REPRODUCE. IN GENERAL, THE ADDITIONAL PROBLEMS SEEM TO OCCUR IN ON TEMPERATURE DAYS WITH AC ENGAGED AND INCLUDE A FULL LOSS OF POWER FOR AN EXTENDED PERIOD OF TIME WHILE ENGAGING FIRST GEAR AND A NOTICEABLE SURGING DURING ACCELERATION AS IS THE DRIVER WAS PRESSING AND RELEASING THE GAS." I AM EXPERIENCING THE EXACT SAME PROBLEM. I WOULD ONLY LIKE TO ADD THAT A CAR HAD TO MOVE INTO THE MEDIAN BECAUSE MY MINI LOST POWER WHILE ENTERING THE FREEWAY. *JB

Date Complaint Filed: 09/10/2003
Component(s): VEHICLE SPEED CONTROL
Date of Incident: 06/29/2003
NHTSA ID Number: 10038669

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2003

Details:

Crash: No     Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33493T

SUMMARY:
PURCHASED NEW VEHICLE (DELIVERY DATE BELOW). VEHICLE HAS SERIOUS LURCH AND POWER LOSS IN 1ST GEAR, PARTICULARY W/ AC RUNNING. THIS POSES SIGNIFICANT SAFETY RISK AS NORMAL ACCELERATION IS NOT AVAILABLE. MAUFACTURER HAS ACKNOWLEDGED PROBEM STATING IT IS IN THE COMPUTER SOFTWARE--CLAIMS NO FIX TO DATE DESPITE REPEATED COMPLAINTS AND REQUESTS FOR FIX.*AK

Date Complaint Filed: 09/10/2003
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 09/01/2003
NHTSA ID Number: 10037594

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2003

Details:
Crash: No      Fire: No      Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): Not Available

SUMMARY:
NEW MINI COOPER S AUTOMOBILE (PURCHASED IN JUNE OF 2003) EXPERIENCES A
NOTICEABLE AND SIGNIFICANT STUMBLE WHEN ENGAGING FIRST GEAR AND
ACCELERATING FROM A STOPPED POSITION. THE STUMBLE IS SIGNIFICANT ENOUGH TO
CAUSE A STALL CONDITION AND RESULTS IN UNRELIABLE THROTTLE RESPONSE. THE
PROBLEM IS WORSE AT HIGHER RPM ENGAGEMENTS, IN HOTTER WEATHER, AND WITH
THE AC ENGAGED. THE STUMBLE FEELS LIKE A MOMENTARY LOSS OF POWER AND
THEN SHORTLY THEREAFTER, POWER IS RETURNED TO THE WHEELS. THE PROBLEM
OCCURS ON VIRTUALLY EVERY ENGAGEMENT BUT IS CONSIDERABLY WORSE ON THE
FIRST ENGAGEMENT AFTER THE CAR HAS SAT FOR SEVERAL HOURS WITH THE ENGINE
OFF. THE PROBLEM IS LESS SEVERE WHEN TURNING THE CAR LEFT OR RIGHT WHILE
ENGAGING FIRST GEAR. THIS ISSUE RENDERS THE THROTTLE RESPONSE UNRELIABLE
AND CAN STALL THE AUTOMOBILE AT UNEXPECTED TIMES. NO CRASHES HAVE
OCCURRED AT THIS TIME BUT THE POTENTIAL FOR A REAR-END COLLISION DUE TO A
STALL OR A SIDE IMPACT COLLISION DUE TO STALLING WHEN CROSSING AN
INTERSECTION IS PRESENT. ADDITIONAL ISSUES RELATED TO ENGINE MANAGEMENT
AND THROTTLE RESPONSE OCCUR IN THE SAME AUTOMOBILE HAVE OCCURRED BUT
THESE ADDITIONAL PROBLEMS HAVE BEEN INTERMITTENT AND DIFFICULT TO
REPRODUCE. IN GENERAL, THE ADDITIONAL PROBLEMS SEEM TO OCCUR IN ON
TEMPERATURE DAYS WITH AC ENGAGED AND INCLUDE A FULL LOSS OF POWER FOR
AN EXTENDED PERIOD OF TIME WHILE ENGAGING FIRST GEAR AND A NOTICEABLE
SURGING DURING ACCELERATION AS IS THE DRIVER WAS PRESSING AND RELEASING
THE GAS. *JB

Date Complaint Filed: 11/25/2008
Component(s): POWER TRAIN
Date of Incident: 11/20/2008
NHTSA ID Number: 10249834

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2004

Details:
Crash: No     Fire: No     Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33434T

SUMMARY:
MY 2004 MINI COOPER S HAS 48,000 MILES. THE TRANSMISSION HAS GOTTEN SO BAD
THAT I CANNOT CHANGE GEARS WITHOUT GREAT DIFFICULTY. I HAVE READ
NUMEROUS REPORTS ONLINE ABOUT POWER STEERING PUMP FAILURE, BRAKE
FAILURE AND A HOST OF SAFETY ISSUES WITH THE COOPER. I THINK THIS CAR NEEDS
TO BE EVALUATED FOR SAFETY ISSUES. THANKS, KAREN *TR

Date Complaint Filed: 09/24/2012
Component(s): ENGINE , VEHICLE SPEED CONTROL
Date of Incident: 02/06/2012
NHTSA ID Number: 10476918

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No     Fire: No     Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33545T

SUMMARY:
THE VEHICLE BEGAN TO FEEL LIKE THE TRANSMISSION WAS SLIPPING: HESITATION,
WHEELS SKIDDING, ROUGH ACCELERATION AND DECELERATION. THE PROBLEM
CONTINUES AFTER 2 TRIPS TO MINI COOPER IN WHICH THE CAR'S COMPUTER WAS
"RESET" BECAUSE NO PROBLEMS WITH THE TRANSMISSION WERE FOUND. THE
PROBLEM DESCRIBED ABOVE PERSISTS, BUT THERE WAS ALSO ONE EPISODE WHERE
THE CAR DID NOT START AND LATER TURNED OFF WHILE DRIVING ON A CONGESTED
NYC ROAD. *TR

Date Complaint Filed: 08/14/2012
Component(s): POWER TRAIN
Date of Incident: 08/09/2012
NHTSA ID Number: 10470566

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No     Fire: No     Number of Injuries: 0        Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33506T

SUMMARY:
THE TRANSMISSION HAS FAILED AT 66K MILES - AS I AM RESEARCHING THIS PROBLEM,
I CAN SEE THAT MANY PEOPLE HAVE HAD PREMATURE TRANSMISSION FAILURES WITH
THEIR MINI COOPER AND BMW HAS NOT BEEN WILLING TO ADDRESS THE PROBLEM.
THE COST TO US WILL BE APPROXIMATELY $10,000 TO REPAIR. *TR


Date Complaint Filed: 11/22/2011
Component(s): POWER TRAIN , STEERING
Date of Incident: 09/01/2011
NHTSA ID Number: 10436695

All Products Associated with this Complaint
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No     Fire: No     Number of Injuries: 0        Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33455T

SUMMARY:
IN THE EARLY FALL, SEPTEMBER 2011, I ENCOUNTERED ISSUES WITH MY CAR NOT
SHIFTING PROPERLY. IT'S AN AUTOMATIC TRANSMISSION SO I KNOW THERE WAS
NOTHING I COULD BE DOING TO CAUSE THIS PROBLEM. THE CAR HAS BEEN SERVICED
REGULARLY AND DRIVEN WITH CARE WHILE IN MY POSSESSION(I'M THE SECOND
OWNER. NO SIMILAR ISSUES ON CARFAX REPORT). WHILE THE ENGINE IS COOL AND
NOT YET AT ITS OPTIMAL TEMPERATURE THE DRIVE IS FINE AND YOU MAY NOT EVEN
NOTICE A PROBLEM; HOWEVER, EVERY RIDE, ONCE WARMED UP THE CAR BEGINS TO
SHIFT INCREDIBLY VIOLENTLY AS IT IS OBVIOUSLY STRUGGLING TO SWITCH GEARS.
THIS OCCURS ALSO WHILE SLOWING DOWN AND THE CAR IS DOWNSHIFTING
CREATING AN OPPORTUNITY TO BE "SLUNG" INTO A CAR FROM BEHIND(THIS
HAPPENED IN THE MID SUMMER OF 2011). AFTER DROPPING THIS CAR OFF SEPTEMBER
15TH TO THE LOCAL MINI DEALERSHIP, I DID NOT HEAR FROM THEM FOR ALMOST
THREE WEEKS. IN THE FIRST WEEK OF OCTOBER I WAS CONTACTED AND TOLD IT
LOOKS LIKE MY CAR IS VERY EASILY FIXABLE AND SHOULD BE READY SHORTLY. IT

WAS EXPLAINED TO ME THAT A SEAL HAD BROKEN ON THE TRANSMISSION LEAKING FLUID ONTO IT CAUSING THIS SHIFTING MALFUNCTION. WHEN THEY FINALLY TOLD ME I CAN PICK UP MY CAR(APPROXIMATELY OCTOBER 18TH) THEY REGRETTED TO INFORM ME THE PROBLEM WAS NOT ABLE TO BE FIXED AND I WOULD HAVE TO BRING IT ELSEWHERE AS THEY DO NOT REBUILD TRANSMISSIONS. NOW IT IS BACK IN MY POSSESSION WHERE I AM FORCED TO COMMUTE IN IT DAILY, DRIVING WORSE THAN IT WAS BEFORE I DROPPED IT OFF. IT NOW DISPLAYS "PE" FOR ITS CURRENT GEAR FROM TIME TO TIME. THIS IS NOT THE ONLY COMPLAINT I HAVE FILED FOR THIS CAR MATCHING OTHER CONSUMER COMPLAINTS. I AM A VICTIM OF THEIR FAILED POWER STEERING AS WELL. *TR

Date Complaint Filed: 06/16/2009
Component(s): POWER TRAIN
Date of Incident: 06/02/2009
NHTSA ID Number: 10273989

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33455T

SUMMARY:
2005 MINI COOPER S-BEGAN HAVING ISSUES WITH THE CAR JERKING WHEN SHIFTING GEARS (NOT A MANUAL TRANSMISSION) IN EARLY 2009. I TOOK IT TO MY MECHANICS. THEY HAD IT FOR QUITE AWHILE, TRYING TO DETERMINE THE ROOT CAUSE. THEY ADVISED THAT THEY EVEN CONSULTED WITH THE DEALERSHIP, BUT SAID THEY FELT LIKE THE DEALERSHIP WASN'T VERY FORTHCOMING IN THEIR INFORMATION. MY MECHANIC ULTIMATELY DECIDED THAT HE THOUGHT IT WAS A SENSOR THAT NEEDED TO BE REPLACED. $500 TO REPLACE THIS SENSOR. THE ROUGH SHIFTING CONTINUED AND ON JUNE 2, 2009, WHILE I WAS OUT AT LUNCH, I LOST FIRST GEAR ALTOGETHER. THE CAR WOULD MOVE FORWARD, BUT WAS NOT ABLE TO PICK UP ANY REAL SPEED UNTIL THE RPM'S GOT HIGH ENOUGH. I PULLED OVER INTO A PARKING LOT, PUT THE CAR IN PARK AND TURNED THE CAR OFF. WHEN I STARTED IT AGAIN, I HAD THE USE OF FIRST GEAR AGAIN, BUT THIS TIME IT FELT AS THOUGH IT WOULDN'T SHIFT OUT OF THIRD. I DROVE IT VERY SLOWLY AND CAREFULLY BACK TO MY OFFICE. I CALLED THE DEALERSHIP, TOLD THEM THAT I WAS GOING TO NEED TO HAVE IT TOWED IN, AND ASKED IF THEY HAD A TOWING SERVICE. SHE SAID NO, BUT RECOMMENDED A TOWING COMPANY. I HAD IT TOWED IT BUT DIDN'T HEAR ANYTHING BACK FROM ANYONE UNTIL MONDAY, JUNE 8, 2009. MY HUSBAND WAS TOLD IT WAS THE TRANSMISSION AND THAT IT WOULD BE $8,000 FOR THE TRANSMISSION AND $2000 FOR THE LABOR. HARD TO BELIEVE ANYONE COULD SAY THAT WITH A STRAIGHT FACE. AROUND JUNE 9, 2009, THE MINI SERVICE MANAGER SAID HE WAS GOING TO WORK WITH IT A LITTLE BIT AND SEE IF HE COULD GET ANY OF THOSE COSTS COVERED UNDER A SERVICE BULLETIN. TODAY IS JUNE 16, 2009. MY HUSBAND HAS CALLED, LEFT VOICEMAILS, AND

EVEN GONE UP THE DEALERSHIP. WE HAVE HEARD NOTHING BACK FROM THE MINI SERVICE MANAGER. MY HUSBAND SPOKE TO THE BMW SERVICE MANAGER, WHO TOLD HIM THAT WE'D HAVE TO WAIT AND TALK TO THE MINI SERVICE MANAGER. *TR

Date Complaint Filed: 01/21/2013
Component(s): POWER TRAIN , STEERING
Date of Incident: 01/03/2013
NHTSA ID Number: 10493636

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33566T

SUMMARY:
WHILE DRIVING THE VEHICLE, AT ANY SPEED, THE AUTOMATIC POWER TRAIN DOES NOT SHIFT GEARS PROPERLY. IT WILL SHIFT UP, AND DOWN, AND NOT ENGAGE THE PROPER GEAR. THE VEHICLE TRANSMISSION WILL "WIND-UP", THEN JUMP INTO A GEAR. AT TIMES, THE VEHICLE WILL NOT SHIFT OUT OF FIRST GEAR. *TR

Date Complaint Filed: 11/15/2012
Component(s): ENGINE , POWER TRAIN
Date of Incident: 11/13/2012
NHTSA ID Number: 10484831

All Products Associated with this Complaint
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33526T

SUMMARY:
DRIVING ON THE FREEWAY WHEN I FELT THE CAR JERK FORWARD AND THEN IT FELT AS IF THE AUTOMATIC TRANSMISSION WAS SLIPPING IN AND OUT OF GEARS. MANAGED TO PULL OFF THE FREEWAY AND DRIVE TO THE LOCAL MINI DEALERSHIP, WHICH WAS LUCKILY ABOUT A MILE DOWN THE ROAD. WAS TOLD BY DEALERSHIP THE PROBLEM WAS TRANSMISSION FAILURE AND WAS QUOTED $9,000 REPAIR COST. WHEN I ASKED THE MECHANIC WHY THE TRANSMISSION HAD FAILED THIS EARLY, TOLD ME THEY HAD NO IDEA. HOWEVER, WHEN I ASKED ANOTHER EMPLOYEE HOW MANY OTHER CARS HAD THEY SEEN WITH TRANSMISSION PROBLEMS, HE RELUCTANTLY ADMITTED "QUITE A FEW". *TR

Date Complaint Filed: 05/28/2013
Component(s): POWER TRAIN
Date of Incident: 09/12/2012
NHTSA ID Number: 10513818

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No     Fire: No     Number of Injuries: 0          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMRE33526TJ

SUMMARY:
IN SEPTEMBER 2012 THE AUTOMATIC TRANSMISSION BEGAN SLIPPING. I HAD IT
CHECKED OUT AND WAS TOLD THAT THE TRANSMISSION WAS FINE AND THAT MINI
SAYS IT NEVER NEEDS TO BE SERVICED OR HAVE THE FLUID CHANGED. OVER THE
NEXT SEVERAL MONTHS IT GOT WORSE AND I WAS FINALLY TOLD THAT THE
TRANSMISSION NEEDS TO BE REPLACED. FORTUNATELY I NEVER HAD AN ACCIDENT
OR ANY OTHER SERIOUS CONSEQUENCE AS A RESULT OF THE FAILING TRANSMISSION.
THIS CAR HAS BEEN TRADED IN BECAUSE THE TRANSMISSION WOULD COST $10,000.00
TO REPLACE. *TR

Date Complaint Filed: 12/15/2011
Component(s): ELECTRICAL SYSTEM , ENGINE AND ENGINE COOLING , POWER TRAIN ,
VISIBILITY
Date of Incident: 12/01/2011
NHTSA ID Number: 10440113

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S     Model Year(s): 2006

Details:
Crash: No     Fire: No     Number of Injuries: 1          Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): Not Available

SUMMARY:
PLETHORA OF ELECTRICAL PROBLEMS. HEATED SEATS ARE A MAJOR CONCERN. THEY
GO ON AND OFF BY THEMSELVES, SEEM HAUNTED. SOMETIMES, THEY GET SO HOT
THEY LEAVE BURN MARKS IN MY LEGS. I AM AFRAID OF AN ELECTRICAL FIRE. THE
HEATED SEATS GET SO HOT, THEY LEFT BURN MARKS IN MY SEAT. AISIN 6 SPEED
AUTOMATIC TRANSMISSION, EQUIPPED WITH "LIFETIME" FLUID, BEGINS SLIPPING
GEARS AT 70K THE SUPERCHARGER HAD TO BE REPLACED DUE TO THE "DESIGN" OF
THE SUPERCHARGER IT COULD NOT BE REPAIRED, I WAS FORCED BY BMWUSA TO
PURCHASE A REMANUFACTURED SUPERCHARGER. I WAS TOLD IT WAS A "COMMON
PROBLEM" I HAVE ALSO FOUND OUT FROM FORUMS SUCH AS
NORTHAMERICANMOTORING.COM THIS IS A PROBLEM THAT BMW DOES NOT WANT TO

ADMIT ITS AT FAULT FOR HOWEVER THEY ARE ACKNOWLEDGING THE WIDESPREAD HAPPENINGS ACROSS THE COUNTRY. THE AVAILABILITY OF NEW SUPERCHARGERS IS VERY LOW BECAUSE OF THIS PROBLEM, HENCE ME PURCHASING A REMFGD ONE. REAR WIPER MOTOR FAILED AT 40K QUOTED HUNDREDS TO REPLACE, NOT WORTH IT!!!!! *TR

### Safety Concerns

60.     In connection with BMW Group's misrepresentations and material omissions, by marketing the Class Vehicles as being equipped with lifetime automatic transmission fluid that does not need to be replaced, BMW Group also risks the safety of occupants of the Class Vehicles.  When the Class Vehicles' automatic transmissions fail while the vehicles are in motion, a number of serious safety issues arise, including:

- Inability of the driver to engage gears;
- Vehicles hesitating, stalling or stopping completely in the midst of traffic;
- Vehicles unexpectedly surging forward while accelerating; and
- Vehicles violently jerking or stumbling while driver attempts to accelerate, or whenever driver attempts to shift gears.

61.     These symptoms of automatic transmission failure prevent Class Vehicle drivers from keeping up with the normal flow of traffic, and as a result drivers and occupants of the Class Vehicles are placed at an increased risk of collision.

62.     The reasonable expectation that the Class Vehicles are safe to drive and ride in was, and is, material to Plaintiffs and to members of the Classes.  Indeed, numerous drivers of the Class Vehicles have reported their safety concerns to the NHTSA.  Some of those reports include the following (emphasis added):

Date of Incident: 12/01/2003
NHTSA ID Number: 10049010

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2003

Details:
Crash: No     Fire: No        Number of Injuries: 0        Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33473T

SUMMARY:
BELOW IS A QUOTE OF ANOTHER PERSON,I AM EXPERIENCING SIMILAR PROBLEMS
EXCEPT FOR "TOTAL LOSS OF POWER" WHICH HAS NOT HAPPENED TO ME. ALSO, THE
STUDDERING PROBLEM IN FIRST GEAR IS GREATLY REDUCED WHEN THE "ACTIVE SKID
CONTROL" IS DISABLED.*AK MY MINI COOPER S WAS PURCHASED IN MAY 2003. "NEW
MINI COOPER S AUTOMOBILE (PURCHASED IN JUNE OF 2003) EXPERIENCES A
NOTICEABLE AND SIGNIFICANT STUMBLE WHEN ENGAGING FIRST GEAR AND
ACCELERATING FROM A STOPPED POSITION. THE STUMBLE IS SIGNIFICANT ENOUGH TO
CAUSE A STALL CONDITION AND RESULTS IN UNRELIABLE THROTTLE RESPONSE. THE
PROBLEM IS WORSE AT HIGHER RPM ENGAGEMENTS, IN HOTTER WEATHER, AND WITH
THE AC ENGAGED. THE STUMBLE FEELS LIKE A MOMENTARY LOSS OF POWER AND
THEN SHORTLY THEREAFTER, POWER IS RETURNED TO THE WHEELS. THE PROBLEM
OCCURS ON VIRTUALLY EVERY ENGAGEMENT BUT IS CONSIDERABLY WORSE ON THE
FIRST ENGAGEMENT AFTER THE CAR HAS SAT FOR SEVERAL HOURS WITH THE ENGINE
OFF. THE PROBLEM IS LESS SEVERE WHEN TURNING THE CAR LEFT OR RIGHT WHILE
ENGAGING FIRST GEAR. THIS ISSUE RENDERS THE THROTTLE RESPONSE UNRELIABLE
AND CAN STALL THE AUTOMOBILE AT UNEXPECTED TIMES. **NO CRASHES HAVE
OCCURRED AT THIS TIME BUT THE POTENTIAL FOR A REAR-END COLLISION DUE
TO A STALL OR A SIDE IMPACT COLLISION DUE TO STALLING WHEN CROSSING AN
INTERSECTION IS PRESENT.** ADDITIONAL ISSUES RELATED TO ENGINE MANAGEMENT
AND THROTTLE RESPONSE OCCUR IN THE SAME AUTOMOBILE HAVE OCCURRED BUT
THESE ADDITIONAL PROBLEMS HAVE BEEN INTERMITTENT AND DIFFICULT TO
REPRODUCE. IN GENERAL, THE ADDITIONAL PROBLEMS SEEM TO OCCUR IN ON
TEMPERATURE DAYS WITH AC ENGAGED AND INCLUDE A FULL LOSS OF POWER FOR
AN EXTENDED PERIOD OF TIME WHILE ENGAGING FIRST GEAR AND A NOTICEABLE
SURGING DURING ACCELERATION AS IS THE DRIVER WAS PRESSING AND RELEASING
THE GAS. *JB"

Date Complaint Filed: 08/15/2003
Component(s): VEHICLE SPEED CONTROL
Date of Incident: 05/31/2003
NHTSA ID Number: 10032883

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S    Model Year(s): 2003

Details:
Crash: No     Fire: No     Number of Injuries: 0        Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33413T

SUMMARY:
MY APRIL BUILD 2003 MINI COOPER S EXPERIENCES SUDDEN MOMENTARY ENGINE
POWER LOSSES, CAUSING THE CAR TO VIOLENTY JERK DURING INITIAL
ACCELERATION. FURTHERMORE, THE CAR WILL RANDOMLY AND WITHOUT WARNING,
LOSE ALL FORWARD MOMENTUM JUST WHEN I NEED IT MOST, AS IN PULLING OUT
INTO ONCOMING TRAFFIC. NO MATTER HOW MUCH THROTTLE IS ENGAGED, THE CAR
BARELY CRAWLS FOWARD FOR UP TO 3 SECONDS, THEN FINALLY ROARS TO LIFE AND
TAKES OFF. IT FEELS VERY MUCH LIKE TRYING TO ACCELERATE A CAR FROM A DEAD
STOP IN 3RD GEAR, THOUGH THE CAR IS IN 1ST GEAR. **THIS SITUATION IS DANGEROUS
AND NEEDS TO HAVE THE HIGHEST PRIORITY WITHIN BMWNA/MINIUSA.** I, AS WELL
AS MANY OTHERS, HAVE REPEATEDLY BROUGHT THIS TO THE ATTENTION OF
MINIUSA/BMWNA AND WE ARE ALWAYS TOLD THE SAME THING, THAT THEY ARE
WORKING ON IT. IT HAS BEEN OVER 6 MONTHS SINCE THESE PROBLEMS FIRST BEGAN
TO SURFACE. THERE HAS BEEN NO OFFICIAL COMMUNICATION FROM BMWNA/MINIUSA
REGARDING THE ISSUE.*AK

Date Complaint Filed: 04/17/2010
Component(s): POWER TRAIN
Date of Incident: 07/01/2007
NHTSA ID Number: 10326155

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0

Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRH33546T

SUMMARY:
I PURCHASE MY 2006 MINI COOPER S NEW ALMOST 4 YEARS AGO. I HAVE BEEN
COMPLAINING ABOUT THE AUTOMATIC TRANSMISSION SINCE I PURCHASED IT. IF YOU
ARE GOING DOWN A HILL IT DOWNSHIFTS EXTREMELY HARD CAUSING A WHIPLASH
EFFECT. **CARS HAVE ALMOST HIT ME FROM BEHIND MANY TIMES. ADDITIONALLY
WHEN GOING UP A HILL SUCH AS A FREEWAY ON-RAMP, THE CAR WILL JUST
REFUSE TO ACCELERATE. THIS IS VERY DANGEROUS WHEN TRYING TO MERGE
ONTO THE FREEWAY.** I HAVE SPOKEN MANY TIMES TO MINI HEADQUARTERS AND THE
CONSENSUS IS THAT IS HOW THE VEHICLE IS SUPPOSED TO OPERATE. THEY TOLD ME
TO BUY A NEW ONE NOW BECAUSE THEY DON'T USE THAT TRANSMISSION ANY MORE.
THEY ALSO TOLD ME TO MANUALLY SHIFT THE CAR IN THOSE SITUATIONS. I SAID IF I
HAD WANTED TO SHIFT MANUALLY I WOULDN'T HAVE PAID FOR AN AUTOMATIC
TRANSMISSION. I AM VERY FRUSTRATED WITH THEIR RESPONSE. I AM DISABLED AND
ON A LIMITED INCOME. I CAN'T AFFORD TO BUY A NEW CAR AND MORE IMPORTANTLY
I COULDN'T MORALLY SELL THIS ONE WITH THESE KIND OF PROBLEMS. *TR

CLASS ACTION COMPLAINT

**To Reduce Its Costs and Increase Sales**
**BMW Group Markets the Class Vehicles as being**
**Equipped with Lifetime Transmission Fluid that**
**Does Not Need to be Replaced**

63.     Despite its knowledge of the serious safety issue posed to drivers and occupants of the Class Vehicles, BMW Group's marketing continues to misrepresent that the transmission fluid does not need to be replaced, and BMW Group has refused to disclose that following BMW Group's maintenance protocol will actually cause premature automatic transmission failure.  BMW Group made these misrepresentations and material omissions both before consumers purchased or leased their Class Vehicles, and during the time when the Class Vehicles' warranties were in effect, thereby preventing members of the Class from timely obtaining warranty repairs and covered maintenance.

64.     Plaintiffs are informed and believe, and based thereon, allege that BMW Group markets the Class Vehicles as including lifetime automatic transmission fluid for at least two reasons.

65.     First, Plaintiffs are informed and believe, and based thereon, allege that BMW Group wants to present an image of the Class Vehicles as being high-quality, low-maintenance vehicles that require little, if any, maintenance or repair.  Plaintiffs are informed and believes, and based thereon, allege that BMW Group aims to project an image of the Class Vehicles as a step above the standard Mini Cooper models, and the presence of supposed lifetime automatic transmission fluid is a factor that distinguishes the Class Vehicles from standard Mini Cooper vehicles.

66.     Second, Plaintiffs are informed and believe, and based thereon, allege that BMW Group seeks to market its Maintenance Program as a selling point for the Class Vehicles, while simultaneously avoiding responsibility for the costly and complicated process of changing the Class Vehicles' automatic transmission fluid.

67.     BMW Group understands that its Maintenance Program is essential to the marketing and sale of its vehicles, including the Class Vehicles.

68.    By way of example, BMW Group's October 2002 and June 2003 Service Information Bulletins (respectively, "October 2002 SIB" and "June 2003 SIB") highlight this fact.  In BMW Group's October 2002 and June 2003 SIB, the company informed its dealers that "[i]n an effort to . . . set MINI apart from the competition, MINI now offers an upgrade to the standard Full Maintenance plan to 4 years/50,000 miles . . . This is a strong selling feature that should be proudly promoted by your MINI sales or aftersales staff."

69.    In addition, in the June 2003 SIB, BMW Group provided its dealers with further information about its Maintenance Program.  BMW Group informed its dealers that "[b]y providing a Full Maintenance Program we have provided an exceptional selling opportunity for the New Car Sales Department.  Customers will return to the Dealer for their required maintenance.  Having the customers return to us instead of an independent repair facility ensures greater customer retention."  In addition, BMW Group intended that its Full Maintenance Program would "[a]dd[] more value to assist in exceeding expectations of [BMW Group's] customers," "[f]urther position[] MINI as the best in its class," "[e]stablish a clear competitive selling advantage on your showroom floor," and "provide[] an additional means of customer retention and profitability for [a MINI dealership's] service department."

70.    Although BMW Group clearly understands the marketing value of its Maintenance Program, Plaintiffs are informed and believe, and based thereon, allege that BMW Group avoids transmission fluid replacement as a part of its Maintenance Program because of the costly, time consuming nature of the service.  Plaintiffs are informed and believe and based thereon, allege that due to the particular design of the Class Vehicles' automatic transmissions, changing the automatic transmission fluid is especially complicated and time-consuming.

71.    Plaintiffs are informed and believe, and based thereon, allege that the Class Vehicles' automatic transmissions cannot be flushed like traditional automatic transmissions because they contain no front external coolers, but instead use heat

exchangers.  Plaintiffs are informed and believe, and based thereon, allege that the Class Vehicles' automatic transmissions also do not contain dipsticks to measure the fluid levels.  Plaintiffs are informed and believe, and based thereon, allege that this makes it difficult to refill the Class Vehicles' automatic transmissions with fresh transmission fluid at the correct level.

72.   In addition, Plaintiffs are informed and believe, and based thereon, allege that in order to access the Class Vehicles' internal strainers to change the automatic transmission fluid, servicers must drop the pan from under the transmission, another time-consuming procedure.  For these reasons, Plaintiffs are informed and believe, and based thereon, allege that changing transmission fluid in the Class Vehicles was a highly undesirable task for BMW Group.

73.   Plaintiffs are informed and believe, and based thereon, allege that while BMW Group aimed to spare itself the time and cost of taking responsibility for automatic transmission fluid replacement, BMW Group also sought to capitalize on its highly effective marketing technique of providing a service and warranty program to Class Vehicle owners and lessees.  Plaintiffs are informed and believes, and based thereon, alleges that by marketing that its Class Vehicles are equipped with lifetime automatic transmission fluid, BMW Group could accomplish this.

74.   Plaintiffs are informed and believe, and based thereon, allege that BMW Group has marketed its Class Vehicles as having lifetime automatic transmission fluid in order to avoid responsibility for following the complex procedures for automatic transmission fluid replacement in the Class Vehicles within the consumers' three-year/36,000 mile warranty periods, or four-year/50,000 mile Maintenance Programs. Plaintiffs are informed and believe, and based thereon, allege that servicers therefore do not change automatic transmission fluid, and by the time the transmission fluid has degraded to the point of causing transmission failure, the warranty periods for the Class Vehicles have expired, and the costs of repairs have been thereby transferred to consumers.

75.     Plaintiffs are informed and believe, and based thereon, allege that in the auto industry, it is generally accepted by automotive experts that automatic transmission fluid needs to be replaced after approximately 30,000 mile intervals of driving.  Despite this, BMW Group's Service and Warranty Information booklet expressly misrepresents that the Class Vehicles' automatic transmission fluid need not be changed, and does not instruct its authorized dealers to perform this service.

76.     Plaintiffs are informed and believe, and based thereon, allege that BMW Group intended that the Class Vehicles' automatic transmissions begin to prematurely fail after BMW Group's warranties for the Class Vehicles expires, but before the end of the expected useful life of the Class Vehicles.  Plaintiffs are informed and believe, and based thereon, allege that through this practice, BMW Group has unlawfully transferred the cost of repairs or replacement from itself to the owners and lessees of the Class Vehicles.

**Plaintiffs Have Suffered Harm As a Result of
BMW Group's Having Marketed the Class Vehicles
as being Equipped with Lifetime Transmission Fluid
that Does Not Need to be Replaced**

77.     The fact that the Class Vehicles' automatic transmission fluid needs to be changed at regular intervals, and that neglecting to do so will lead to premature automatic transmission failure, is material because no reasonable consumer anticipates needing to pay thousands of dollars for repairs in the early years of vehicle ownership.  Additionally, the fact that the automatic transmission fluid requires replacement is material because, as discussed above, it presents consumers with a serious safety issue.

78.     As a result of BMW Group's affirmative misrepresentations and omissions concerning the Class Vehicles' automatic transmission fluid, consumers have been forced to either spend thousands of dollars -- in some cases, upward of $10,000 -- to repair or replace the Class Vehicles' damaged or destroyed automatic transmissions, or to sell their unrepaired Class Vehicles at a loss, or to be deprived of use of their Class Vehicles.

1

2

## PLAINTIFFS' CLAIMS AGAINST BMW GROUP

### Michael Callaghan

3    79.    Plaintiff Michael Callaghan is a resident of Walnut Creek, California, which

4  is in Contra Costa County.

5    80.    On or around April 2011, Plaintiff Callaghan purchased a used 2005 Mini

6  Cooper S from MINI of San Francisco for personal, family or household purposes.  The

7  vehicle had a mileage of approximately 65,445 miles.

8    81.    Plaintiff Callaghan was exposed to BMW Group's advertising campaign,

9  which generally depicted the Class Vehicles to be of good quality.

10    82.    When Plaintiff Callaghan purchased his Class Vehicle, he was told at the

11  dealership that all appropriate and routine services had been performed on his Class

12  Vehicle.  The MINI dealership provided Plaintiff Callaghan with a CARFAX Vehicle

13  History Report, which indicated that the appropriate maintenance procedures, as

14  established by BMW Group, had taken place.  He relied upon these representations in

15  purchasing his Class Vehicle.  He furthermore relied on a reasonable expectation that the

16  Class Vehicle's automatic transmission would last beyond the warranty period without

17  need for repair or replacement, and that the Service and Warranty Information booklet did

18  not affirmatively misrepresent that the automatic transmission fluid does not need to be

19  replaced.  He also relied on a reasonable expectation that his Class Vehicle did not pose

20  an unavoidable safety risk.  Given the small size of his Class Vehicle, the safety of the

21  vehicle was particularly material to him.

22    83.    Plaintiff Callaghan also reviewed BMW Group's promotional materials and

23  other information, and had BMW Group disclosed its knowledge that the automatic

24  transmission fluid needs to be changed at regular intervals, and that failure to do so would

25  lead to premature transmission failure, Plaintiff Callaghan would have seen such

26  disclosures and been aware of them.

27

28

CLASS ACTION COMPLAINT

84.     Indeed, BMW Group's affirmative misrepresentations and nondisclosures were material to Plaintiff Callaghan, and he would not have purchased the Class Vehicle had he known that, even if BMW Group's maintenance protocols were followed, the transmission would prematurely fail, and that he would likely have to spend thousands of dollars for repairs in the early years of vehicle operation and ownership. Accordingly, he has suffered injury in fact and monetary damages as a result of BMW Group's conduct.

85.     After he purchased his Class Vehicle, the automatic transmission in Plaintiff Callaghan's Class Vehicle continued to degrade over time until ultimately, his Class Vehicle would not shift above the third gear.

86.     On or around November 7, 2012, Plaintiff Callaghan took his Class Vehicle to MINI of Concord for repairs. At this time, the mileage of his Class Vehicle was approximately 69,000 miles. MINI of Concord advised Plaintiff Callaghan that the transmission would have to be replaced, at a cost of $8,000. His vehicle is currently undergoing a transmission rebuild at an independent repair shop. Thus, Plaintiff Callaghan has been damaged and suffered injury-in-fact as a result of BMW Group's misconduct.

### Matthew Caldwell

87.     Plaintiff Matthew Caldwell is a resident of West Sacramento, California.

88.     On or around 2008, Plaintiff Caldwell purchased a used 2005 Mini Cooper S model vehicle for personal, family or household purposes.

89.     Plaintiff Caldwell was exposed to BMW Group's advertising campaign, which generally depicted the Class Vehicles to be of good quality.

90.     When Plaintiff Caldwell purchased his Class Vehicle, he relied on a reasonable expectation that the vehicle's transmission would last beyond the warranty period without need for repair or replacement, and that the Service and Warranty Information booklet did not affirmatively misrepresent that the transmission fluid did not need to be replaced. He also relied on a reasonable expectation that his Class Vehicle did not pose an unavoidable safety risk. Given the small size of his Class Vehicle, the safety

1  of the vehicle was particularly material to him.

2      91.    Plaintiff Caldwell reviewed BMW Group's promotional materials and other

3  information, and had BMW Group disclosed its knowledge at the time of Plaintiff

4  Caldwell's purchase that the automatic transmission fluid needs to be changed at regular

5  intervals, and that not changing the fluid will cause transmission failure, Plaintiff

6  Caldwell would have been seen such disclosures and would have been aware of them.

7  Indeed, BMW Group's misrepresentations and omissions were material to Plaintiff

8  Caldwell, and he would not have leased or purchased his Class Vehicle, had he known

9  that the transmission would prematurely fail, or that he likely would have to spend

10  thousands of dollars for repairs in the early years of vehicle operation and ownership.

11  Accordingly, Plaintiff Caldwell has been monetarily damaged and suffered injury in fact

12  as a result of BMW Group's misconduct.

13      92.    On or around 2010, shortly after expiration of the Class Vehicle's warranty,

14  Plaintiff Caldwell's Class Vehicle began shifting harshly while accelerating, and the

15  transmission would become stuck in neutral and the Class Vehicle would stop completely.

16  Thus, on November 19, 2010, Plaintiff Caldwell took his Class Vehicle to Niello MINI

17  and paid $160 for a diagnosis of the issue. The dealership's technicians informed him that

18  his transmission fluid was "burnt." The technicians also informed him that the only

19  recommended solution from BMW Group was to replace the transmission entirely, which

20  would cost $9,099.00 (plus costs of labor). Although the dealership requested that BMW

21  Group cover the cost of repairs given that the warranty had just expired, BMW Group

22  denied this request.

23      93.    On December 22, 2010, after researching online and determining that

24  degraded transmission fluid was the likely cause of the transmission issues, Plaintiff

25  Caldwell took his Class Vehicle back to Niello MINI to have the transmission fluid

26  flushed. Plaintiff Caldwell paid $284.03 to Niello MINI for this repair, after, as a gesture

27  of goodwill, BMW Group discounted $100.00 from his total bill. Shortly thereafter, the

28  transmission defects manifested themselves again and worsened.

94.    On December 6, 2011, Plaintiff Caldwell took his Class Vehicle to a mechanic, EU Tech, for diagnosis.  After paying $110.00, the technicians informed Plaintiff Caldwell that the issue with the transmission was "internal[] and mechanical" and needed to be completely replaced.

95.    On January 16, 2012, Plaintiff Caldwell's Class Vehicle registered a fault on the computer and put the car into "limp" mode, where it was locked into 2nd or 3rd gear. Plaintiff Caldwell had his vehicle towed to Sunrise Auto Source, a mechanic, who cleared the fault from the vehicle's computer for $80.00.

96.    On November 10, 2012, Plaintiff Caldwell's Class Vehicle again went into fault mode.  Plaintiff Caldwell took his Mini Cooper S Model to another mechanic, Sierra Hart, and a technician reset the code for $47.50.

97.    At this time, Plaintiff Caldwell decided it was necessary to replace the transmission due to the above-described ongoing problems that were not resolved.  He purchased a used manual transmission for $2,155.  He paid $2845.45 to technicians at Ryan GMW in Auburn, California, for installation of the used transmission.

98.    At all times, Plaintiff Caldwell drove his vehicle in a reasonably foreseeable manner.

99.    In total, Plaintiff Caldwell was forced to spend $5,732.18 out-of-pocket expenses for repairs to his Class Vehicle.   Accordingly, he has suffered injury in fact and monetary damages as a result of BMW Group's conduct.

**Rodney Pena**

100.    Plaintiff Rodney Pena is a resident of Campbell Hall, New York.

101.    On or around 2007, Plaintiff Pena purchased a used 2005 Mini Cooper S model vehicle from Prestige MINI in Ramsey, New Jersey.  Plaintiff Pena purchased this vehicle for personal, family or household purposes.

102.    Plaintiff Pena was exposed to BMW Group's advertising campaign, which generally depicted the Class Vehicles to be of good quality.  Plaintiff Pena reviewed BMW Group's promotional materials and other information, and had BMW Group

1  disclosed its knowledge that the Class Vehicle's transmission fluid would need

2  replacement at regular intervals, and that neglecting to have the automatic transmission

3  fluid replaced would lead to premature transmission failure, Plaintiff would have seen

4  such disclosures and been aware of them.

5       103.   When Plaintiff, in 2007, purchased his Class Vehicle from BMW Group, he

6  relied on a reasonable expectation that the vehicle's transmission would last beyond the

7  warranty period without need for repair or replacement, and that the Service and Warranty

8  Information booklet did not misrepresent or omit the fact that the transmission fluid did

9  not need to be replaced.  He also relied on a reasonable expectation that his Class Vehicle

10  did not pose an unavoidable safety risk; given the small size of vehicle, the safety of the

11  vehicle was particularly material to him.

12       104.   Indeed, BMW Group's misrepresentations and omissions were material to

13  Plaintiff Pena.  He would not have purchased his Class Vehicle, had he known that the

14  transmission would prematurely fail, or that he likely would have to spend thousands of

15  dollars for repairs in the early years of vehicle ownership and operation.  Accordingly,

16  Plaintiff Pena has been monetarily damaged and suffered injury in fact as a result of

17  BMW Group's misconduct.

18       105.   On or around July 2013, at a mileage of approximately 125,000 miles,

19  Plaintiff Pena began experiencing problems with the transmission in his Class Vehicle.  It

20  began slipping and not staying in gear.  He took his vehicle to a BMW specialist, who

21  changed the transmission fluid.  However, the problems persisted, and he was told that he

22  would have to replace the transmission at a cost of approximately $9,000.  At that time,

23  the approximate value of his car was $9,500.  As a result of the transmission problem, he

24  ultimately traded in his car for approximately $4,000.   Accordingly, he suffered injury in

25  fact and monetary damages.

26       106.   At all times, Plaintiff Pena drove his Class Vehicle in a reasonably

27  foreseeable manner, as it was intended to be driven.

28

1  **STATUTE OF LIMITATIONS**

2      107.   Any applicable statutes of limitations have been tolled by BMW Group's

3  knowing and active concealment, denial, and misleading actions, as alleged herein.

4  Plaintiffs and members of the Classes defined below were kept ignorant of critical

5  information required for the prosecution of their claims, without any fault or lack of

6  diligence on their part.  Plaintiffs and members of the Classes could not reasonably have

7  discovered the latent nature of the premature and unsafe transmission failure in the Class

8  Vehicles, or the cause thereof, or any of the other issues and facts alleged herein.

9      108.   BMW Group is under a continuous duty to disclose to Plaintiffs and

10  members of the Classes the true character, quality, and nature of the Class Vehicles, and

11  in particular, to disclose the fact that unchanged transmission fluid would cause premature

12  and unsafe transmission failure in the Class Vehicle.  However, BMW Group knowingly,

13  affirmatively, and actively concealed the true character, quality, and nature of the

14  transmission fluid placed in the Class Vehicles.  Plaintiffs and members of the Classes

15  reasonably relied upon BMW Group's knowing, affirmative, and active concealment.

16  Based on the foregoing, BMW Group is estopped from relying on any statutes of

17  limitation as a defense in this action.

18      109.   The causes of action alleged herein did or will only accrue upon discovery of

19  the latent premature transmission failure, as a result of BMW Group's fraudulent

20  concealment of the defect.  Plaintiffs and members of the Classes did not discover, and

21  could not have discovered, through the exercise of reasonable diligence, the true nature of

22  the transmission defect.

23  **CLASS ACTION ALLEGATIONS**

24      110.   Plaintiffs brings this action, on behalf of themselves and all others similarly

25  situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

26      111.   The classes Plaintiffs seek to represent (collectively, the "Classes") are

27  defined as follows:

28

CLASS: All persons and entities in the United States who purchased or leased a Mini Cooper S Model (defined as any of the following: 2002 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles).

CALIFORNIA SUBCLASS: All citizens of the state of California who purchased or leased a Mini Cooper S Model (defined as any of the following: 2002 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles).

NEW YORK SUBCLASS:  All citizens of the state of New York who purchased or leased a Mini Cooper S Model (defined as any of the following: 2002 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles).

112.   Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

113.   Plaintiffs reserve the right to establish subclasses as appropriate.

114.   This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) and satisfies the requirements thereof.

115.   <u>Numerosity</u>:  While the exact number of members of the Classes is unknown

to  Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Classes is ascertainable based upon the records maintained by BMW Group.  At this time, Plaintiffs are informed and believe that the Classes include thousands of members.  Therefore, the Classes are sufficiently numerous that joinder of all members of the Classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

116.   Ascertainablity:  Names and addresses of members of the Classes are available from BMW Group's records.  Notice can be provided to the members of the Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

117.   Typicality:  Plaintiffs' claims are typical of the claims of the other members of the Classes which they seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Classes have been subjected to the same deceptive and improper practices and have been damaged in the same manner thereby.

118.   Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4).  Plaintiffs are adequate representatives of the Classes, because they have no interests which are adverse to the interests of the members of the Classes.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

119.   Superiority:  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)   The expense and burden of individual litigation make it economically

39

1   unfeasible for members of the Classes to seek to redress their
2   "negative value" claims other than through the procedure of a class
3   action.

4   (b)   If separate actions were brought by individual members of the Classes,
5         the resulting duplicity of lawsuits would cause members to seek to
6         redress their "negative value" claims other than through the procedure
7         of a class action; and

8   (c)   Absent a class action, BMW Group likely would retain the benefits of
9         its wrongdoing, and there would be a failure of justice.

10   120.   Common questions of law and fact exist as to the members of the Classes, as
11   required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions
12   which affect individual members of the Classes within the meaning of Federal Rule of
13   Civil Procedure 23(b)(3).

14   121.   The common questions of fact include, but are not limited to, the following:

15   (a)   Whether transmission fluid installed in the Class Vehicles'
16         transmissions needs to be replaced at regular intervals;

17   (b)   Whether failure to replace transmission fluid in the Class Vehicles
18         causes premature transmission failure;

19   (c)   Whether the fact that the Class Vehicles' transmissions would fail
20         prematurely is material to consumers;

21   (d)   Whether the fact that neglecting to replace transmission fluid in the
22         Class Vehicles causes premature transmission failure is material to
23         consumers;

24   (e)   Whether BMW Group had a duty to disclose that neglecting to replace
25         transmission fluid in the Class Vehicles causes premature transmission
26         failure;

27   (f)   Whether BMW Group had a duty to disclose to consumers that the
28         Class Vehicles' transmissions would prematurely fail;

(g)    Whether BMW Group breached its duty to disclose that neglecting to replace transmission fluid in the Class Vehicles causes premature transmission failure;

(h)    Whether BMW Group breached its duty to disclose that the Class Vehicles' transmissions would prematurely fail;

(i)    Whether BMW Group affirmatively misrepresented that transmission fluid in the Class Vehicles did not need to be replaced at regular intervals;

(j)    Whether BMW Group was negligent in failing to inform consumers that transmission fluid in the Class Vehicles needs to be replaced at regular intervals;

(k)    Whether BMW Group actively concealed material facts for the purpose of transferring the costs of transmission failure to consumers;

(l)    Whether BMW Group's conduct has constituted violation(s) of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*);

(m)    Whether BMW Group's conduct constituted violation(s) of New York Deceptive Practices Act (N.Y. Gen. Bus. Law § 349);

(n)    Whether BMW Group's conduct constituted violation(s) of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, *et seq.*);

(o)    Whether Plaintiffs and members of the Class are entitled to restitution and damages.

122.    In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for BMW Group;

41

1    (b)    The prosecution of separate actions by individual members of the

2          Classes would create a risk of adjudications as to them which would,

3          as a practical matter, be dispositive of the interests of the other

4          members of the Classes not parties to the adjudications, or

5          substantially impair or impede their ability to protect their interests;

6          and

7    (c)    BMW Group has acted or refused to act on grounds generally

8          applicable to the Classes, thereby making appropriate final injunctive

9          relief or corresponding declaratory relief with respect to the Classes as

10         a whole and necessitating that any such relief be extended to members

11         of the Classes on a mandatory, class-wide basis.

12    123.  Plaintiffs are not aware of any difficulty which will be encountered in the

13  management of this litigation which should preclude its maintenance as a class action.

14                          **FIRST CAUSE OF ACTION**
15               **Violation of Consumers Legal Remedies Act**
                    **(Cal. Civ. Code §§ 1750 *et seq.*)**
16

17    124.  Plaintiffs Michael Callaghan and Matthew Caldwell ("California Plaintiffs")

18  hereby incorporate by reference the allegations contained in the preceding paragraphs of

19  this Complaint.

20    125.  California Plaintiffs bring this cause of action against BMW Group on behalf

21  of themselves and members of the California Subclass.

22    126.  This cause of action is brought under the Consumers Legal Remedies Act,

23  California Civil Code sections 1750 *et seq.* ("CLRA").  California Plaintiffs and members

24  of the California Subclass are consumers as defined by California Civil Code

25  section 1761(d).  The Class Vehicles are goods within the meaning of California Civil

26  Code section 1761(a).

27    127.  BMW Group violated and continues to violate the CLRA by engaging in the

28  following practices proscribed by California Civil Code section 1770(a) in transactions

with California Plaintiffs and members of the California Subclass, which were intended to result in, and did result in, the sale of Class Vehicles:

> (5)    Representing that [Class Vehicles have]… characteristics…[and] uses…which they do not have….
>
> (7)    Representing that [Class Vehicles] are of a particular standard…if they are of another.
>
> (9)    Advertising goods…with intent not to sell them as advertised.
>
> (16)   Representing that [Class Vehicles] have been supplied in accordance with a previous representation when they have not.

128.   BMW Group violated the CLRA by affirmatively misrepresenting that the Class Vehicles were equipped with lifetime transmission fluid, when in reality the fluid needed to be regularly replaced.

129.   BMW Group violated the CLRA by failing to timely disclose to California Plaintiffs and members of the California Subclass that not changing the transmission fluid in the Class Vehicles would cause premature transmission failure.

130.   BMW Group further violated the CLRA by actively concealing material facts from California Plaintiffs and members of the California Subclass for the purpose of transferring the cost of the transmission failure to consumers.

131.   BMW Group also violated the CLRA because its failure to disclose to California Plaintiffs and members of the California Subclass the material fact that neglecting to change the transmission fluid would cause premature and sudden transmission failure ultimately risked the safety of owners and occupants of the Class Vehicles.

132.   As a result of BMW Group's affirmative misrepresentations and nondisclosures, California Plaintiffs and members of the California Subclass were exposed to safety risks, and were required to spend thousands of dollars to repair or replace their transmissions, or to sell their vehicles without repair for a substantial loss. The facts that the transmission fluid in the Class Vehicles needed to be changed, and that

1  otherwise the transmissions installed in Class Vehicles would fail prematurely, are
2  material because no reasonable consumer expects that they will have to spend thousands
3  of dollars for repairs in the early years of vehicle ownership, and because California
4  Plaintiffs and members of the California Subclass had a reasonable expectation that the
5  Class Vehicles would not suffer from a premature failure that would present a safety risk,
6  especially given the small size of the vehicles.

7      133.   On August 22, 2013, via certified mail, return receipt requested, under
8  Section 1782 of the CLRA, Plaintiffs' counsel, on behalf of Plaintiff Matthew Caldwell,
9  and all other members of the California Subclass, notified BMW Group in writing of the
10  particular violations of Section 1770, and demanded that it rectify the problems associated
11  with the behavior detailed above, which acts and practices are in violation of Section
12  1770.

13      134.   BMW Group failed to respond in any way to Plaintiff Caldwell's notice
14  letter, nor did it give notice to all affected consumers under Section 1782.  Therefore,
15  under Section 1780(a) of the CLRA, California Plaintiffs and members of the California
16  Subclass seek actual and punitive damages.

17      135.   Under Section 1782(d) of the CLRA, California Plaintiffs, on behalf of
18  themselves and members of the California Subclass, also seek an order enjoining the act
19  and practices described above, restitution of property, any other relief that the court deems
20  proper.

21      136.   BMW Group's conduct is malicious, fraudulent, and wanton, and the
22  company continues to intentionally mislead and withhold material information from
23  consumers.  The malicious, fraudulent, and wanton nature of BMW Group's conduct is
24  evidenced by the fact that even after receiving notice of the issues described above from
25  Plaintiff Caldwell, and from countless other consumers, BMW Group continues to deny
26  that there is any problem with the transmissions installed in the Class Vehicles, continues
27  to affirmatively represent that the transmission fluid need not be replaced, and refuses to
28  offer California Plaintiffs and members of the California Subclass any remedy for the

1  damages it has caused.

## SECOND CAUSE OF ACTION
### Negligence

137.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

138.   Plaintiffs bring this cause of action on behalf of themselves and all members of the Class.

139.   BMW Group had a duty to Plaintiffs and the Class to design, manufacture, assemble and sell safe and reliable vehicles fit for their intended purpose. BMW Group also had a duty to ensure the Class Vehicles' safety by conducting thorough research and investigation prior to putting them on the market.

140.   BMW Group furthermore had a duty to warn Plaintiffs and the Class about material facts, namely, that the transmission fluid in the Class Vehicles needed to be replaced, and that failure to have this service performed would cause premature and sudden transmission failure. Plaintiffs are informed and believe, and based thereon, allege that BMW Group has known since 2003, if not earlier, that BMW Group's marketing of the Class Vehicles misrepresented and materially omitted information about the maintenance of the automatic transmissions installed in the Class Vehicles, as a result of pre-production testing, design failure mode analysis, customer complaints made directly to BMW Group, and complaints made to the NHTSA, among other sources of information.

141.   BMW Group breached its duty to Plaintiffs and the Class by negligently designing, manufacturing and assembling the Class Vehicles. BMW Group furthermore breached its duty by not warning Plaintiffs and the Class about material facts, namely, that the transmission fluid would need to be replaced, and that neglecting to have this service performed would cause premature and sudden transmission failure.

142.   The standard of reasonable care in the automobile industry is to produce vehicles that contain properly operating transmissions that do not fail suddenly and

45

prematurely.  The standard of reasonable care is also to provide adequate warnings and to disclose material facts to consumers.  BMW Group fell below this standard of reasonable care by refusing to disclose, at any time, that the transmission fluid would need to be replaced, and neglecting to have this service performed would cause premature and sudden transmission failure.

143.   Plaintiffs and members of the Class have been injured and inconvenienced in dealing with such defective Class Vehicles and in having to drive unsafe and unreliable vehicles.  Sudden transmission failure is a serious safety issue, placing the driver and passengers of the Class Vehicles are risk of serious bodily harm.  The safety of the Class Vehicles is particularly material given their small size.  When the transmissions fail, there is no safe alternative way for drivers to avoid the risk of potential harm while driving.

144.   BMW Group's breach of their duty to consumers proximately caused damages to Plaintiffs and members of the Class, who have experienced injury and significant economic damages.  As a direct and proximate result of BMW Group's misrepresentations and omissions concerning the transmission fluid, Plaintiffs and members of the Class did not have transmission fluid replaced in their Class Vehicles, and their Class Vehicles' transmissions prematurely malfunctioned and failed.  They were thus exposed to serious safety risks, and were required to spend thousands of dollars to repair or replace their transmissions, or to sell their Class Vehicles without repair at a substantial loss.

## THIRD CAUSE OF ACTION
### Violation of New York Deceptive Practices Act
### (N.Y. Gen. Bus. Law § 349)

145.   Plaintiff Rodney Pena incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

146.   Plaintiff Pena brings this cause of action on behalf of himself and the members of the New York Subclass.

147.   Plaintiff Pena and the members of the New York Subclass are "consumers"

1  under N.Y. Gen. Bus. Law § 349.

2  148.   BMW Group has affirmatively misrepresented that the transmission fluid in

3  the Class Vehicles does not need to be changed.  BMW Group has also failed to disclose

4  and/or concealed material facts from Plaintiff Pena and members of the New York

5  Subclass, namely, that the transmission fluid installed in the Class Vehicles needed to be

6  replaced, and that failure to replace the transmission fluid would cause premature

7  transmission failure in the Class Vehicles.  Thus, BMW Group has violated New York

8  Gen. Bus. Law § 349 by:

9         (a)  Representing that [Class Vehicles] had characteristics, uses,

10             benefits or quantities which they do not have;

11        (b)  Representing that [Class Vehicles] were of a particular standard,

12             quality or grade when they were of another;

13        (c)  Advertising [Class Vehicles] with intent not to sell them as

14             advertised;

15          and

16        (d)  Representing that [Class Vehicles] ha[ve] been supplied in

17             accordance with a previous representation when it has not;

18  149.   The deceptive acts and practices engaged in by BMW Group were consumer-

19  oriented and took place in New York.

20  150.   Plaintiff Pena is informed and believes, and based thereon, alleges that BMW

21  Group knew that its representations concerning the Class Vehicles' transmission fluid

22  were false since at least 2003, if not earlier, as a result of pre-production testing, design

23  failure mode analysis, customer complaints made directly to BMW Group, and complaints

24  made to the NHTSA, among other sources of information.

25  151.   Despite its knowledge, BMW Group chose not to fully and honestly disclose

26  to its customers the true nature of the transmission fluid's lifespan, which was not readily

27  discoverable by consumers, often until after the Class Vehicles' warranties had expired

28  and their transmissions had failed.

152.   All of the deceptive acts and practices set forth herein were materially misleading and constitute violations of New York Gen. Bus. Law § 349 independent of whether those acts and practices constitute violations of any other law, including common law.

153.   These deceptive acts and practices were committed in conduct of business, trade, commerce, or the furnishing of a service in New York.  BMW Group's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.  To the contrary, the deceptive conduct set forth herein is part of a regular and recurring practice that impacts all of the New York Subclass members.

154.   As a result of BMW Group's deceptive practices, Plaintiff Pena and the other members of the New York Subclass have suffered actual injury and damages, in that they have been forced to either spend thousands of dollars -- in some cases, upward of $10,000 -- to repair or replace the Class Vehicles' damaged or destroyed transmissions, or to sell their unrepaired Class Vehicles at a loss, or to be deprived of use of their Class Vehicles.

155.   Plaintiff Pena is informed and believes, and based thereon, alleges that BMW Group's violations of this Act were willful and knowing and committed in bad faith.

## FOURTH CAUSE OF ACTION
### Violation of New Jersey Consumer Fraud Act
### (N.J. Stat. § 56:8-1, *et seq.*)

156.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

157.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

158.   The Class Vehicles are "merchandise" under N.J. Stat. § 56:8-1(c).

159.   BMW Group is a "person" under N.J. Stat. § 56:8-1(d).

160.   N.J. Stat. § 56:8-2 states:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person aforesaid, whether or not an person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . .

161.   BMW Group has violated N.J. Stat. § 56:8-2 by failing to disclose and/or concealing material facts from Plaintiffs and the Class concerning the Class Vehicles, including but not limited to, the fact that the transmission fluid in the Class Vehicles needed to be changed, and that unchanged transmission fluid would cause premature transmission failure.

162.   For example, BMW Group violated N.J. Stat. § 56:8-2 by engaging in the following conduct:

   (a) Representing that its goods had characteristics, uses, benefits or quantities which they do not have;

   (b) Representing that its goods were of a particular standard, quality or grade when they were of another;

   (c) Concealing, suppressing and making fraudulent or negligent misrepresentations concerning the transmission fluid, as set forth above;

   (d) Failing to repair, replace or reimburse Plaintiffs and members of the Nationwide Class for damages incurred due to premature transmission failure caused by unchanged transmission fluid.

163.   BMW Group made the above described misrepresentations, concealments and omissions of material facts with full knowledge or recklessness that they were false

1 and misleading and with the intent that their consumers would rely upon such

2 concealment, suppression and omission.

3     164.   Plaintiffs are informed and believed, and based thereon allege that BMW

4 Group has known for years about the facts that transmission fluid in the Class Vehicles

5 needed to be changed, and that not changing the fluid would cause premature transmission

6 failure.    Plaintiffs are informed and believe, and based thereon, allege that BMW Group

7 has had knowledge that its representations concerning the transmission fluid were false

8 since at least 2003, if not earlier, as a result of pre-production testing, design failure mode

9 analysis, customer complaints made directly to BMW Group, and complaints made to the

10 NHTSA, among other sources of information.

11     165.   Despite its knowledge, BMW Group chose not to disclose to its customers

12 the true nature of the transmission fluid's lifespan, which was not readily discoverable by

13 consumers, often until after the Class Vehicles' warranties had expired and the

14 transmissions had begun to fail.  Plaintiffs are informed and believe, and based thereon,

15 allege that BMW Group continues to affirmatively represent that the transmission fluid in

16 the Class Vehicles need not be changed.

17     166.   Sudden transmission failure is a serious safety issue, placing the driver and

18 passengers of the Class Vehicles at risk of serious bodily harm.  The safety of the Class

19 Vehicles is particularly material given the small size of the Class Vehicles.  When the

20 transmissions fail, there is no safe alternative way for drivers to avoid the risk of potential

21 harm while driving.

22     167.   As a result of BMW Group's practices in violation of N.J. Stat. § 56:8-2,

23 Plaintiffs did not have transmission fluid changed in their Class Vehicles, and the

24 transmissions began to prematurely fail.  Accordingly, Plaintiffs have suffered actual

25 damages, in an amount to be proven at trial, in that they have been forced to either spend

26 thousands of dollars to repair or replace the Class Vehicles' damaged or destroyed

27 transmissions, or to sell their unrepaired Class Vehicles at a loss.

28

# PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against BMW Group, as follows:

1. Certifying the Classes as requested herein;

2. Ordering that BMW Group is financially responsible for notifying all members of the Classes of the alleged omissions and active concealment of material facts discussed herein;

3. Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4. Awarding to Plaintiffs and the Class punitive damages;

5. Awarding restitution and disgorgement of BMW Group's revenues to Plaintiffs and members of the Classes;

6. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining BMW Group from continuing the unlawful practices as set forth herein, and directing BMW Group to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by BMW Group by means of any act or practice declared by this Court to be wrongful;

7. Ordering BMW Group to engage in corrective advertising;

8. Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

/ / /

/ / /

/ / /

9.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.     For such other and further relief as the Court deems just and proper.

Dated: October _15_, 2013                BARON & BUDD, P.C.


                                         By: _____
                                             Mark Pifko

                                         Attorneys for Plaintiffs
                                         MICHAEL CALLAGHAN, MATTHEW
                                         CALDWELL, and RODNEY PENA,
                                         individually, and on behalf of other
                                         members of the public similarly situated

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs request trial by jury on all issues so triable.

3                          Respectfully submitted,

4   Dated: October 15, 2013            BARON & BUDD, P.C.

5

6                          By: _____

7                               Mark Pifko

8                          Attorneys for Plaintiffs
9                          MICHAEL CALLAGHAN, MATTHEW
                           CALDWELL, and RODNEY PENA,
10                          individually, and on behalf of other
                           members of the public similarly situated
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28