1  Troy M. Yoshino, Bar No. 197850
     tyoshino@cbmlaw.com
2  Eric J. Knapp, Bar No. 214352
     eknapp@cbmlaw.com
3  Aengus H. Carr, Bar No. 240953
     acarr@cbmlaw.com
4  **CARROLL, BURDICK & McDONOUGH LLP**
   Attorneys at Law
5  44 Montgomery Street, Suite 400
   San Francisco, California 94104
6  Telephone:     415.989.5900
   Facsimile:     415.989.0932
7
   Attorneys for Defendant
8  BMW of North America, LLC and
   Bayerische Motoren Werke AG
9

10              UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12

13

14  MICHAEL CALLAGHAN, MATTHEW      Case No. CV-13-4794 (RS)
    CALDWELL and RODNEY PENA, on behalf
15  of themselves and all others similarly situated,   **BMW NA'S MOTION TO DISMISS THE
                                                       COMPLAINT FOR LACK OF STANDING AND
16                  Plaintiffs,                        FOR FAILURE TO STATE A CLAIM
                                                       [FED. R. CIV. P. 12(b)(1), 12(b)(6)]**
16
         v.
17                                                     Date:          March 20, 2014
    BMW of NORTH AMERICA, LLC, a                       Time:          1:30 p.m.
18  Delaware Limited Liability Company, and            Courtroom:     3
    BAYERISCHE MOTOREN WERKE AG, a
19  corporation organized under the laws of the        Hon. Richard Seeborg
    Federal Republic of Germany,
20
                  Defendants.
21

22

23

24

25

26

27

28

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-SF\SF611204-1

BMW NA'S MOTION TO DISMISS

Case No. CV-13-4794 (RS)

1

## NOTICE OF MOTION AND MOTION TO DISMISS FOR: (1) LACK OF STANDING; AND (2) FAILURE TO STATE A CLAIM

2

3   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

4        NOTICE IS HEREBY GIVEN that on March 20, 2014, at 1:30 p.m. or as soon thereafter as

5   counsel may be heard, before the Honorable Richard Seeborg in Courtroom 3, located at 450

6   Golden Gate Avenue, San Francisco, CA 94102, Defendant BMW of North America, LLC

7   ("BMW NA") will and hereby does move the Court to dismiss this case for failure to state a claim

8   under Fed. R. Civ. P. 12(b)(1), for lack of standing to sue, and Fed. R. Civ. P. 12(b)(6), for failure

9   to state a claim.  By each of these motions, BMW NA seeks dismissal of this matter with prejudice.

10        This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

11   Authorities contained herein, the pleadings and papers on file, and upon such other matters as may

12   be presented to the Court at the time of the hearing.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2

**Page**

3 INTRODUCTION ............................................................... 1

4 PERTINENT ALLEGATIONS.................................................... 2

5 MOTION TO DISMISS FOR LACK OF STANDING................................ 3

6 I. PLAINTIFFS LACK STANDING TO SUE BECAUSE THEY HAVE NOT AND
   CANNOT FACTUALLY PLEAD THAT THEIR TRANSMISSIONS FAILED BECAUSE
7   THE FLUID WAS NOT REPLACED, AS OPPOSED TO SOME OTHER REASON ............... 4

8 II. PLAINTIFFS CANNOT ASSERT CLAIMS ON BEHALF OF THE PUTATIVE CLASS,
    AS THEY DO NOT OWN THE PRODUCTS AT ISSUE .................................... 6
9

   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ................................. 7
10

11 III. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE GOVERNING
     STANDARDS........................................................................ 7

12 IV. THE FRAUD CLAIMS SHOULD BE DISMISSED FOR MANY DIFFERENT REASONS ........ 7

13     A. The New York and New Jersey Law Claims Fail as a Matter of Law ..................... 7

14         1. The NYCPA Only Applies to Acts in New York ........................................ 7

15         2. An NJCFA Claim Cannot Be Based on Post-Warranty Part Failures.......... 8

16     B. Plaintiffs Do Not (and Cannot) Allege Their Transmission Problems Were
          Caused by BMW NA's Alleged Conduct ............................................... 8
17
          1. No Plaintiff Pleads Facts Affirmatively Diagnosing Their
18             Transmission Problems as Caused by Old Fluid ........................................ 8

19         2. Plaintiffs Have Not Identified Any Misleading Representations or
              Omissions ................................................................................ 9
20
          3. Plaintiffs Must, But Do Not, Identify the Specific Statements Which
21             Mislead Them Into Purchasing Their Vehicles ...................................... 10

22     C. Plaintiffs Cannot Unilaterally and Limitlessly Obtain Cost-Free Repairs
          After the Expiration of Their Warranties by Asserting Fraud-Based Claims......... 11
23
          1. There Are No Facts from Which to Draw a "Plausible" Inference
24             That There Is a Safety Issue; Indeed, Plaintiffs' Claims Show It Is
              Not................................................................................... 12
25
          2. In Any Event, Plaintiffs' Conclusory Speculation About What the
26             "Defect" Might Cause to Occur Do Not Establish a "Safety Defect" ........ 13

27     D. Plaintiffs Have Not Alleged Facts Showing an Intent to Defraud ...................... 14

28

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
(CONTINUED)

Page

E.      Caldwell Has No "Transaction" with BMW NA, So the CLRA Does Not Apply.................................................................................................... 15

V.     CALDWELL AND PENA'S CLAIMS ARE TIME-BARRED ........................................... 15

A.      The CLRA, NYCPA and NJCFA Statutes of Limitation Have Run...................... 15

B.      Plaintiffs Are Not Entitled to Equitable Tolling.................................................... 16

C.      Plaintiffs' UCL Claim Should Be Dismissed Because They Have an Adequate Remedy at Law ................................................................................... 16

VI.     THE NEGLIGENCE CLAIM IS BARRED BY THE ECONOMIC LOSS RULE ..................... 17

CONCLUSION............................................................................................................. 18

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5 *Adams v. I-Flow Corp.*,
   2010 WL 1339948, at *7 (C.D. Cal. Mar. 30, 2010) ...................................... 17

6 *Alban v. BMW of North America, LLC ("Alban I")*,
   2010 WL 3636253, at *7 (D.N.J. Sept. 8, 2010) ...................................... 8, 14

7

8 *Alejandre v. Bull*,
   159 Wash. 2d 674 (2007) ...................................... 17

9 *Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ...................................... 17

10

11 *Ariz. Christian Sch. Tuition Org. v. Winn*,
   131 S. Ct. 1436 (2011) ...................................... 3, 5, 6

12 *Arroyo v. Chattem, Inc.*,
   2012 WL 5412295, at *7 (N.D. Cal. Nov. 6, 2012) ...................................... 11

13

14 *Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................... passim

15 *Baltazar v. Apple*,
   2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011) ...................................... 15

16

17 *Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................... 2, 7

18 *Berenblat v. Apple, Inc.*,
   2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) ...................................... 14

19

20 *Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...................................... 3

21 *Buckland v. Threshold Enterprises, Ltd.*,
   155 Cal. App. 4th 798 (2007) ...................................... 9

22

23 *Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) ...................................... 6

24 *Chan v. Daimler AG*,
   2012 WL 5827448, at *8 (D.N.J. Nov. 9, 2012) ...................................... 4, 5

25

26 *Contreras v. Toyota Motor Sales USA, Inc.*,
   2010 WL 2528844, at *4 (N.D. Cal. June 18, 2010) ...................................... 3, 4

27 *Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ...................................... 14

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Cox v. Sears Roebuck & Co.,*
     138 N.J. 2 (1994)................................................................................................. 8

*Daugherty v. Am. Honda Motor Co., Inc.,*
     144 Cal. App. 4th 824, at 835-38 (2006) ........................................................... 11

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
     66 F.3d 604 (3d Cir. 1995) ................................................................................... 8

*In re Flash Memory Antitrust Litig.,*
     2010 WL 2465329, at *2 (N.D. Cal.  June 10, 2010) ......................................... 3

*Frey v. Novartis Pharm. Corp.,*
     642 F. Supp. 2d 787 (S.D. Ohio 2009) ............................................................... 7

*Fulford v. Logitech, Inc.,*
     Case No. C-08-2041 (MMC), 2008 WL 4914416, at *1 (N.D. Cal. Nov. 14, 2008) ......... 15

*In re General Motors Corp.,*
     383 F. Supp. 2d 1340 (W.D. Okla. 2005).......................................................... 17

*Glass v. BMW of N. Am., LLC,*
     2011 WL 6887721, at *3 (D.N.J. Dec. 29, 2011)..................................... 7, 8, 11

*Goshen v. Mut. Life Ins. Co. of New York,*
     98 N.Y.2d 314 (2002)........................................................................................... 7

*Gray v. Toyota Motor Sales, U.S.A.,*
     2012 WL 313703, at *9-10 (C.D. Cal. Jan. 23, 2012) ...........................2, 11, 12

*Heighley v. J.C. Penney Life Ins. Co.,*
     257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................ 17

*Int'l Union of Operating Eng'rs Local #68 v. Merck & Co.,*
     192 N.J. 372 (2007) ............................................................................................. 9

*Johns v. Bayer Corp.,*
     2010 WL 476688, at *4-*5 (S.D. Cal. Feb. 9, 2010) .......................................... 6

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
     578 F. Supp. 2d 1229 C.D. Cal. 2008) .............................................................. 14

*Kearns v. Ford Motor Co.,*
     567 F.3d 1120 (9th Cir. 2009) .............................................................7, 11, 14, 16

*Kent v. Hewlett-Packard Co.,*
     2010 WL 2681767, at *10 (N.D. Cal. July 6, 2010)........................................... 15

*Koronthaly v. L'Oreal USA, Inc.,*
     2008 WL 2938045, at *4-*5 (D.N.J. July 29, 2008)............................................ 3

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Kwikset Corp. v. Super. Ct.*,
     51 Cal. 4th 310 (2011) ........................................................................ 9

*Lewis v. Casey*,
     518 U.S. 343 (1996) ............................................................................ 3

*Lieberson v. Johnson & Johnson Consumer Cos.*,
     865 F. Supp. 2d 529 (D.N.J. 2011) ..................................................... 6

*Lloyd Wood Coal Co. v. Clark Equip. Co.*,
     543 So. 2d 671 (Ala. 1989) ............................................................... 17

*Madrid v. Perot Systems Corp.*,
     130 Cal. App. 4th 440 (2005) ........................................................... 16

*Marcus v. BMW of N. Am., LLC*,
     687 F.3d 583 (3rd Cir. 2012) .............................................................. 4

*Mason v. Chrysler Corp.*,
     653 So. 2d 951 (Ala. 1995).......................................................... 9, 11

*In re McNeil Consumer Healthcare*,
     877 F. Supp. 2d 254 (E.D. Pa. 2012)................................................. 5

*Meaunrit v. The Pinnacle Foods Grp., LLC*,
     2010 WL 1838715 at *2-4 (N.D. Cal. May 5, 2010)........................... 4

*Meserole v. Sony Corp. of Am.*,
     2009 WL 1403933, at *4 (S.D.N.Y. May 19, 2009) ........................ 12

*Morristown Associates v. Grant Oil Co.*,
     432 N.J. Super. 287 (2013) ............................................................... 16

*Moss v. U.S. Secret Serv.*,
     572 F.3d 962 (9th Cir. 2009) ............................................................ 14

*Neubronner v. Milken*,
     6 F.3d 666 (9th Cir. 1993) .................................................................. 7

*Nirmul v. BMW of N. Am., LLC*,
     2011 WL 5195801 (D.N.J. Oct. 31, 2011)...................................... 4, 5

*Noble v. Porsche Cars N. Am., Inc.*,
     694 F. Supp. 2d 333 (D.N.J. 2010) .................................................... 8

*O'Bryan v. Holy See*,
     556 F.3d 361 (6th Cir. 2009) .............................................................. 4

*O'Shea v. Epson Am., Inc.*,
     2011 WL 3299936, at *8 (C.D. Cal. July 29, 2011).................... 3, 11

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(CONTINUED)

**Page(s)**

*Oestreicher v. Alienware Corp.*,
    322 F. App'x 489 (9th Cir. 2009) ..................... 11

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) ..................... 5

*Pickett v. Holland Am. Line-Westours, Inc.*,
    145 Wash. 2d 178 (2001) ..................... 9

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011) ..................... 16, 17

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ..................... 3

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ..................... 17

*Robinson v. Avis Rent A Car Sys., Inc.*,
    106 Wash. App. 104 (2001) ..................... 11

*Romani v. Shearson Lehman Hutton*,
    929 F.2d 875 (1st Cir. 1991) ..................... 7

*Seely v. White Motor Co.*,
    403 P.2d 145 (1965) ..................... 17

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010)
    *aff'd*, 462 F. App'x 660 (9th Cir. 2011) ..................... 11, 13, 14, 15

*Statler v. Dell, Inc.*,
    841 F. Supp. 2d 642 (E.D.N.Y. 2012) ..................... 16

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931, at *9-*10 (N.D. Cal. June 5, 2009) ..................... 16

*Steele v. Hospital Corp. of Am.*,
    36 F.3d 69 (9th Cir. 1994) ..................... 4

*Tietsworth v. Sears, Roebuck & Co.*,
    2009 WL 3320486, at *6 (N.D. Cal. Oct. 13, 2009 ..................... 7, 13

*United States v. Gen. Motors Corp.*,
    656 F. Supp. 1555 (D.D.C. 1987) ..................... 13

*United States v. Jackson*,
    208 F.3d 633 (7th Cir. 2000) ..................... 12

*Vitt v. Apple Computer, Inc.*,
    469 F. App'x 605 (9th Cir. 2012) ..................... 11

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Wal-Mart Stores, Inc. v. Dukes*,
       131 S. Ct. 2541 (2011) ....................................................................................... 6

*Walsh v. Ford Motor Co.*,
       588 F. Supp. 1513 (D.D.C. 1984) ...................................................................... 16

*Weaver v. Chrysler Corp.*,
       172 F.R.D. 96 (S.D.N.Y. 1997) ......................................................................... 15

*Whitson v. Bumbo*,
       2009 WL 1515597, at *6 (N.D. Cal. Apr. 16, 2009) ........................................... 4

*Wiener v. Dannon*,
       255 F.R.D. 658 (C.D. Cal. 2009) ......................................................................... 6

*Wilson v. Hewlett-Packard Co.*,
       668 F.3d 1136 (9th Cir. 2012) .................................................................... 11, 14

*Woods v. Maytag Co.*,
       2010 WL 4314313, at *8 (E.D.N.Y. Nov. 2, 2010)........................................... 15


**Statutes**

California Civil Code,
       Section 1770(a)................................................................................................... 15
       Section 1783 ....................................................................................................... 15


**Rules**

Federal Rules of Court
       Rule 9(b) ................................................................................................. 1, 7, 11
       Rule 11................................................................................................................... 1


**Other Authorities**

*Denial of Motor Vehicle Defect Petition*,
       57 Fed. Reg. 45417-01 (Oct. 1, 1992) ............................................................... 13
       66 Fed. Reg. 55243-01 (Nov. 1, 2001)........................................................ 13, 15
       72 Fed. Reg. 73973-01 (Dec. 28, 2007) ............................................................ 13

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# INTRODUCTION

Recognizing that their used, nine-year-old MINI Cooper S vehicles have no warranty coverage, plaintiffs seek to impose on BMW NA an obligation to fix their cars for free, *ad infinitum*, by claiming that they—and a large group of owners and lessees of MINI Cooper S vehicles sold in the United States over almost 10 years—were "defrauded" because their transmissions failed due to "old" transmission fluid that they claim BMW NA should have told them needed to be changed.

Plaintiffs cannot prove causation due to spoliation of evidence – their vehicles have been sold and/or there is no indication that the allegedly failed transmissions were preserved for analysis. This is significant, because the transmission is one of a car's most complicated components, and a transmission can fail for many reasons other than "old" fluid. Plaintiffs' lack of proof is already apparent – not once in their 68-page complaint does any plaintiff allege facts showing their transmission failed due to fluid being too "old." Rather, each plaintiff passively states that their "transmission failed" but makes personal allegations contradictory to the 'old fluid' failure mode their complaint describes. For example, plaintiffs claim that a lack of a timely fluid change will cause the transmissions to "suddenly" fail, but several named plaintiffs drove their vehicles for more than a year with symptoms of malfunction. Others admit they did change the fluid, but that their problems only increased.

Failure to plead facts showing a causal connection between the alleged "old fluid" issue and their personal transmission issues means plaintiffs have not established Article III standing to sue. Causation is also an essential element of all of plaintiffs' theories. Plaintiffs' counsel are experienced class action litigators and know the limits of Rule 11 – the Court should dismiss all of the claims for failure to plead these key facts, and demand that each plaintiff provide affirmative, *factual* statements showing that their transmission failed *because of* the lack of a timely fluid change before this case can continue, or else their claims must be dismissed with prejudice.

Regardless, plaintiffs' fraud-based claims must be dismissed because they fail to meet Rule 9(b)'s heightened pleading requirements. As an initial matter, the New York consumer fraud claim fails because no plaintiff purchased a vehicle there and the New Jersey claim fails because the consumer fraud statute cannot be used to sue for parts that fail after the warranty expires.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Moreover, plaintiffs have not identified any statement by BMW NA that was not true – BMW NA's warranty was for 4 years or 50,000 miles, and its recommended maintenance schedules were not performance guarantees. Also, while plaintiffs' claim that BMW NA marketed the transmission fluid as "lifetime," they have not pled a single quote showing it actually said this, and representations invented by counsel cannot be the basis for any claim.

Plaintiffs also cannot establish essential elements including intent to defraud or pre-sale knowledge. Here, plaintiffs' claim that there is a safety-related issue is specious. As recognized in cases like *Gray v. Toyota Motor Sales, U.S.A.*, a large sample size can prove the absurdity of a would-be class representative's claims. 2012 WL 313703, at *9-10 (C.D. Cal. Jan. 23, 2012). This proposed class includes several lines of MINI Cooper S vehicles sold over nearly decade, yet despite this sprawling putative class of vehicles collectively driven for millions of miles, plaintiffs are unable to plead facts identifying a single accident or injury attributed to transmission failure from old transmission fluid. Plaintiffs' own allegations thus establish that there is ***not*** a safety issue.

Moreover, named plaintiffs like Caldwell and Pena continued to operate their vehicles long after experiencing the malfunctions they claim present "safety" concerns. Under *Iqbal* and *Twombly*, the alleged facts show that plaintiffs' claims are implausible.

Because the California plaintiffs would be awarded damages if successful on their other claims, the California Unfair Competition Law claim ("UCL") should be dismissed because the statute only provides equitable remedies if remedies at law are unavailable. Finally, as only the transmission itself was damaged, the negligence claim is barred by the economic loss rule and must be dismissed with prejudice.

## PERTINENT ALLEGATIONS

All of the named plaintiffs purchased used, model year 2005 MINI Cooper S vehicles.[1] First Amended Complaint ("FAC") ¶¶ 94, 102, 115, 122, 130. None of the plaintiffs factually allege what BMW NA representations and materials they saw before purchasing their vehicles. Caldwell purchased his used vehicle from a third party unaffiliated with BMW NA. None of the plaintiffs

---

[1] The Class Vehicles include several variants of MINI Cooper S vehicles (*see* FAC ¶ 1), which are collectively referred to herein as "MINI Cooper S" vehicles for the sake of simplicity.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-                          Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

1   allege that BMW NA ever refused to repair their vehicles, for free, while they were under

2   warranty.  All of the transmission issues experienced by the plaintiffs occurred after their 4-year,

3   50,000 mile limited warranties had expired.  *See id*, *passim*.  None of the plaintiffs allege facts

4   showing that their transmissions experienced problems due to the failure mode described in the

5   FAC.  In fact, Caldwell and Pena did change the transmission fluid, but it did not alleviate their

6   symptoms, which in fact became worse.  *Id.* ¶¶ 107-110; 119.  Callaghan and Caldwell also

7   continued to drive their vehicles for more than a year after experiencing problems, and did not

8   experience any "sudden failure" of the type they claim to make the "old fluid" issue a  "safety

9   hazard."  *Id.* ¶¶ 100, 106-10.

## MOTION TO DISMISS FOR LACK OF STANDING

11       "It is axiomatic that standing under Article III of the United States Constitution is a

12   threshold requirement in every civil action filed in federal court."  *In re Flash Memory Antitrust*

13   *Litig.*, 2010 WL 2465329, at *2 (N.D. Cal.  June 10, 2010).  Plaintiffs cannot seek relief on behalf

14   of themselves or a putative class if they cannot establish their own standing to assert the claims

15   made in their pleadings.  *See O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974).  In other words,

16   "named plaintiffs . . . must allege and show that they have personally been injured, not that injury

17   has been suffered by other, unidentified members of the class to which they belong and which they

18   purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted).

19       To demonstrate standing, plaintiffs must show, among other things:  (a) an invasion of a

20   legally protected interest that is "concrete and particularized" and "actual or imminent," as

21   opposed to "conjectural" or "hypothetical"; and (b) a causal connection between the injury and the

22   conduct complained about.  *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442

23   (2011) (internal quotation marks and citation omitted).  Failure to meet either requirement

24   provides independent bases for dismissal.  *Contreras v. Toyota Motor Sales USA, Inc*., 2010 WL

25   2528844, at *4 (N.D. Cal. June 18, 2010).  And courts have not hesitated to dismiss cases on the

26   pleadings where plaintiffs fail to establish standing.  *See, e.g., Birdsong v. Apple, Inc*., 590 F.3d

27   955, 961 (9th Cir. 2009); *Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 320 (5th Cir. 2002);

28   *Koronthaly v. L'Oreal USA, Inc*., 2008 WL 2938045, at *4-*5 (D.N.J. July 29, 2008).  In

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-3-

Case No. CV-13-4794 (RS)

BMW NA'S MOTION TO DISMISS

assessing standing, the Court always should reject conclusory or speculative allegations. *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009).

A plaintiff's burden of proving standing is well illustrated by *Nirmul v. BMW of N. Am., LLC*, 2011 WL 5195801 (D.N.J. Oct. 31, 2011), which dismissed NJCFA claims for lack of standing. In *Nirmul*, plaintiffs sued BMW NA for violation of the NJCFA alleging that BMW NA sold cars with allegedly defective fuel pumps. *Id.* at *1. Plaintiff claimed he had been told his fuel pump failed, and he alleged symptoms that were consistent with fuel pump failure—but his claims were dismissed for lack of standing because he did not offer sufficient evidence to establish that his symptoms were ***caused*** by the particular alleged defect in the fuel pump claimed on behalf of the putative class as opposed to some other reason. *Id.* at *5.

*Nirmul* is consistent with numerous other dismissals occurring when plaintiffs failed to establish part failure ***caused*** by the alleged issue (here, "old" transmission fluid). *See, e.g.*, *Chan v. Daimler AG*, 2012 WL 5827448, at *8 (D.N.J. Nov. 9, 2012) (plaintiffs lacked standing to pursue warranty- or fraud-based claims where plaintiffs could not establish injury ***because*** of the alleged defect at issue); *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994) (payment of excessive hospital bill did not itself confer standing, because plaintiff did not prove that payment was caused by alleged overbilling scheme, instead of some other cause); *Contreras v. Toyota Motor Sales USA, Inc.,* 2010 WL 2528844 at *6 (N.D. Cal. June 18, 2010), *aff'd in part, rev'd in part on diff. grounds*, 484 F. App'x 116 (9th Cir. 2012); *Meaunrit v. The Pinnacle Foods Grp.*, *LLC*, 2010 WL 1838715 at *2-4 (N.D. Cal. May 5, 2010) (plaintiffs' alleged economic injury—*e.g.*, paying for pot pies they ultimately discarded—was not reasonably attributable to defendant, so standing did not exist); *Whitson v. Bumbo*, 2009 WL 1515597, at *6 (N.D. Cal. Apr. 16, 2009).

**I. PLAINTIFFS LACK STANDING TO SUE BECAUSE THEY HAVE NOT AND CANNOT FACTUALLY PLEAD THAT THEIR TRANSMISSIONS FAILED BECAUSE THE FLUID WAS NOT REPLACED, AS OPPOSED TO SOME OTHER REASON**

It is beyond dispute that vehicle parts can break because of normal wear-and-tear, accidents, driver misuse, or other causes not attributable to Defendants and, in any event, if multiple causes were implicated in the case, no class could be certified. *See, e.g. Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3rd Cir. 2012) (holding that because "[e]ven 'defective' tires

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-4-

BMW NA'S MOTION TO DISMISS

Case No. CV-13-4794 (RS)

can go flat for reasons completely unrelated to their defect[,]" determining the cause of a flat tire "requires an individual examination of that class member's tire" sufficient to preclude class treatment). Plaintiffs therefore do not—and cannot—allege that this putative class action is based on every transmission that fails or becomes damaged, but rather only those that fail **because** the fluid had not been changed.

The plaintiffs lack standing to sue because, even if all of their other claims are taken as true, they have not and cannot factually allege that their transmission problems were actually caused by a failure to replace the transmission fluid. *See* FAC, *passim*. Incredibly, Caldwell and Pena concede that they **did** change the transmission fluid, but it did not alleviate their symptoms, which then became worse, indicating their issues were caused by something else. *Id*. ¶¶ 107-110; 119. Likewise, plaintiffs like Callaghan and Caldwell continued to drive their malfunctioning vehicles for more than a year, yet this is totally inconsistent with the "sudden" failure that is characteristic of the failure mode plaintiffs allege as a basis for the FAC.

To prove standing, plaintiffs must prove (among other things), "a causal connection between [their] injury and the conduct complained about." *Winn*, 131 S. Ct. at 1442. Plaintiffs lack standing because they cannot prove the transmissions they paid to repair or replace were damaged **as a result of** the alleged defects. *See, e.g.*, *Nirmul*, 2011 WL 5195801, at *4 (claims dismissed for lack of standing at pleading stage because plaintiff failed to prove his car's problems were caused by the alleged defect, as opposed to another issue); *see also In re Paxil Litig.*, 212 F.R.D. 539, 547 (C.D. Cal. 2003) (the issue "is not whether [the product] has the capacity to cause harm," but "whether it *did* cause harm and to whom"); *Chan*, 2012 WL 5827448, at *8 (even proof that plaintiffs' vehicles "may have contained defects making them prone to failure in the future is an insufficient basis for Article III standing"). If any "speculation is required as to the causal link between the behavior of a defendant and an injury to plaintiff, no standing exists." *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 276 (E.D. Pa. 2012).

Here, plaintiffs have provided no facts from which this Court can "plausibly" infer that they were caused by a failure to change the fluid as opposed to one of the other "myriad reasons" a complex car part like a transmission can break; if anything, their own allegations only permit the

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-5-                          Case No. CV-13-4794 (RS)
BMW NA's MOTION TO DISMISS

inference that they have ***not*** experienced the failure mode they describe.  Plaintiffs thus lack standing to sue because they have not pled "a causal connection between the injury and the conduct complained about."  *Winn*, 131 S. Ct. at 1442.

## II.   PLAINTIFFS CANNOT ASSERT CLAIMS ON BEHALF OF THE PUTATIVE CLASS, AS THEY DO NOT OWN THE PRODUCTS AT ISSUE

Plaintiffs lack standing to pursue claims based on purported misrepresentations in different products that they do not own.  Plaintiffs own only 2005 model year MINI Cooper S vehicles, but the putative class of vehicles concerns almost 10 model years.  Compare FAC ¶ 1 with ¶¶ 94, 102, 115, 122, 130.  Plaintiffs have not factually pled that the other model years of MINI Cooper S vehicle have the same fraudulent representations or omissions.  Plaintiffs do not own any of the other years of vehicles covered by the putative class and therefore have no standing to make the claims asserted.  *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotations omitted).  Without having leased or purchased these other vehicles, received a warranty for them, or relied on representations (or omissions) about them, plaintiffs could not have suffered any injury-in-fact from an alleged "defect" in the other vehicles.

Courts have held that a plaintiff cannot establish standing for products he did not purchase or use.  Stated another way, a plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon."  *See Johns v. Bayer Corp.*, 2010 WL 476688, at *4-*5 (S.D. Cal. Feb. 9, 2010); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (plaintiff had standing only as to the "Drumstick" products he purchased and not with respect to defendant's "Dibs" products because he "ha[d] not . . . alleged that he purchased . . . Dibs products or otherwise suffered any injury or lost money or property with respect to those products"); *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (dismissing allegations regarding baby bath products that plaintiff did not purchase); *Wiener v. Dannon*, 255 F.R.D. 658, 666 (C.D. Cal. 2009).  Plaintiffs thus lack standing to pursue claims individually, or on behalf of a class, for any model of MINI vehicle except the one they own.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE GOVERNING STANDARDS**

To survive a motion to dismiss, a complaint must plead facts sufficient to create a "reasonable inference that the defendant is liable for the [] conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  "Bare-bones" allegations like those made here are not enough; the standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *3 (D.N.J. Dec. 29, 2011) (quoting *Iqbal*, 556 U.S. at 678).  Conclusory allegations are "disentitle[d] . . . to the presumption of truth," *Iqbal*, 556 U.S. at 678, and pleading inflammatory phrases like "safety defect" does not salvage plaintiffs' claims; instead, the facts pled must "plausibly" show that each element of plaintiffs' claims is met.  *See, e.g.*, *Frey v. Novartis Pharm. Corp.*, 642 F. Supp. 2d 787, 795 (S.D. Ohio 2009) (applying *Iqbal* to product defect claims).

Moreover, plaintiffs' consumer fraud claims are "grounded in fraud" and, as such, "are subject to the heightened pleading requirements of Rule 9(b)." *Tietsworth*, 2009 WL 3320486, at *6; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also, e.g.*, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal of claims predicated on "information and belief" for lack of particularity under Rule 9(b)); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) (if fraud claims are based on "information and belief, the complaint must set forth the source of the information and the reasons for the belief").

**IV.    THE FRAUD CLAIMS SHOULD BE DISMISSED FOR MANY DIFFERENT REASONS**

**A.      The New York and New Jersey Law Claims Fail as a Matter of Law**

**1.      The NYCPA Only Applies to Acts in New York**

The New York Court of Appeal has unequivocally held that the New York Consumer Protection Act requires "that the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002).  Pena lives in New York, but because he purchased his vehicle in New Jersey (FAC ¶ 115), he has no NYCPA claim.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-                                    Case No. CV-13-4794 (RS)

BMW NA'S MOTION TO DISMISS

2.      **An NJCFA Claim Cannot Be Based on Post-Warranty Part Failures**

New Jersey courts have flatly rejected the use of the New Jersey Consumer Fraud Act to sue for post-warranty part failures when the vehicle performed for the life of the warranty.  There is no "safety" exception in the NJCFA, as New Jersey courts have expressly recognized.  *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 338-39 (D.N.J. 2010) ("This Court refuses to re-write a warranty that expired over four years ago" despite allegation of a safety-related defect); *Glass*, 2011 WL 6887721, at \*\*9-10 (same; "BMW NA's failure to advise Plaintiff that a part of a vehicle may break down or require repair after the expiration of the warranty period does not constitute a violation of the [NJ]CFA").

The plaintiff must demonstrate that the defendant engaged in conduct deemed unlawful under the NJCFA and suffered an "ascertainable loss" "as a result of" that unlawful conduct. N.J.S.A. 56:8-19; *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 23 (1994).  In New Jersey, "the general rule, stated in *Duquesne*, prohibiting breach of warranty actions premised on defects that did not arise until after the warranty expired applies to [Plaintiff's] claims regardless of [his] assertion that BMW knew that [his] vehicle was defective before the time-limit took effect…" *Alban v. BMW of North America, LLC ("Alban I")*, 2010 WL 3636253, at \*7 (D.N.J. Sept. 8, 2010) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995)); *see also Moulton v. LG Electronics USA, Inc.*, 2012 WL 3598760, at \*2 (D.N.J. Aug. 21, 2012) ("In the Third Circuit, an express warranty does not cover repairs made after the applicable time has elapsed. This rule applies even where the defect existed, but was not manifested, before the warranty period expired") (citing *Duquesne*, 66 F.3d at 616).  As he had no right to free, post-warranty repair, Pena has not suffered an "ascertainable loss" which can be remedied through the NJCFA.

B.      **Plaintiffs Do Not (and Cannot) Allege Their Transmission Problems Were Caused by BMW NA's Alleged Conduct**

1.      **No Plaintiff Pleads Facts Affirmatively Diagnosing Their Transmission Problems as Caused by Old Fluid**

As discussed above in the Motion to Dismiss for Lack of Standing (pp. 4-6), plaintiffs cannot allege facts showing that their transmission issues were diagnosed as being caused by a failure to change the transmission fluid. Indeed, as discussed above, their own allegations are

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-                              Case No. CV-13-4794 (RS)
BMW NA's MOTION TO DISMISS

*inconsistent* with such a theory. Causation is also an essential element of their fraud claims. Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 809 (2007) (quotation omitted), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011). A private plaintiff may pursue a cause of action under the NJCFA only if he or she suffers an "ascertainable loss . . . as a result of" the defendant's deceptive act or omission. *Int'l Union of Operating Eng'rs Local #68 v. Merck & Co.*, 192 N.J. 372, 392 (2007) (plaintiff must "prove a causal nexus between the alleged act of consumer fraud and the damages sustained") (citation omitted); *Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wash. 2d 178, 196 (2001) ("An actionable private claim under Washington's CPA requires a causal link between the unfair or deceptive acts and the injury suffered by plaintiff") (quotation and original edits omitted); *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995) (fraudulent suppression claim elements include "that the plaintiff's action resulted in harm to the plaintiff").

Having failed to plead any causal link between BMW NA's actions and their injuries, all of plaintiffs' fraud claims must be dismissed.

### 2. Plaintiffs Have Not Identified Any Misleading Representations or Omissions

Throughout the complaint, plaintiffs allege that BMW NA represented the MINI Cooper S transmission had "lifetime" transmission fluid (FAC ¶¶ 3, 7, 8, 9, 42, 43, 57, 59, 60, 64, 65, 73, 74 and 128), or that its "marketing misrepresents . . . . that the ... fluid does not need to be replaced" (e.g., *id.*, ¶ 42), *but nowhere do they identify any statement by BMW NA that actually says this*. Likewise, all plaintiffs "relied on a reasonable expectation that the . . . transmission would last beyond the warranty period without need for repair or replacement" (e.g., *id.* ¶ 96), but they do not deny that BMW NA actually only warranted their vehicles for 4 years or 50,000 miles. Representations about the transmissions which plaintiffs have fabricated from whole cloth, like these, cannot be used as a basis for "fraud" claims against BMW NA.

The only statement actually made by BMW NA which appears in the FAC (in ¶ 50) is an "Inspection 1" service schedule. The schedule denotes (with a dot) that MINI Cooper vehicles

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-9-                    Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

should have their "CVT" transmission fluid changed as part of Inspection 1.  Plaintiffs claim that because there is no 'dot' for MINI Cooper S vehicles, that they believed that their transmission fluid never needs to be changed.  *See id*. ¶¶ 49, 52.  However, the MINI Cooper S ***does not have a CVT transmission***, and as plaintiffs concede, the schedule plainly states "Only those items of inspection work which apply to your vehicle will be performed."  *Id*. ¶ 50.  As plaintiffs repeatedly point out, the MINI Cooper S is a "high performance variant" with different power train components than the regular MINI, including a supercharger and a conventional six-speed automatic transmission (e.g., *id*. ¶¶ 1,7) to handle the torque from this more powerful engine.[2] The ***different*** transmission is thus a selling point for the MINI Cooper S.  Regardless, nowhere does the service and warranty booklet say the MINI Cooper S fluid never needs to be changed, or that the service and warranty booklet contains all conceivable maintenance to be performed on the vehicle.

In any event, a recommended maintenance schedule is not a guarantee that a vehicle part will not break, will never need servicing or will not need servicing prior to a maintenance interval. Certainly nothing in the materials identified by plaintiffs advised them that they could ignore serious mechanical issues and continue to drive their vehicles without causing damage to them.

The FAC contains no actual statements by BMW NA claiming the transmission fluid never needs to be changed or that the MINI Cooper S transmissions would last forever, and plaintiffs "fraud" claims fail for that reason alone.

> **3.      Plaintiffs Must, But Do Not, Identify the Specific Statements Which Mislead Them Into Purchasing Their Vehicles**

That plaintiffs fail to identify a single misleading statement by BMW NA is compounded by their failure to state what they actually saw or relied upon prior to purchase.  A plaintiff pursuing a misrepresentation or omission claim under the consumer fraud statutes pled in the complaint must allege, and ultimately prove, causation based on something he or she actually read or saw or heard before buying the product.  *See, e.g.*, *Arroyo v. Chattem, Inc*., 2012 WL 5412295, at \*7 (N.D. Cal.

---

[2] CVTs – continuously variable transmissions – are mechanically very different from conventional automatic transmissions in that they have an infinitely variable gear ratio and not a set number of 'speeds.'

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-10-                                    Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

1   Nov. 6, 2012) (dismissing California consumer protection claims, noting: "While Plaintiff describes

2   material present in sections of Defendant's website, nowhere does Plaintiff allege when, where, or

3   how she was exposed to or accessed this promotion, advertising, or marketing prior to purchase");

4   *Glass*, 2011 WL 6887721, at *7 (dismissing NJCFA claim as "Plaintiff cannot simply reference a

5   statement on a website [or in a publication] without providing the date when the statement was made

6   or at what point—if ever—Plaintiff was exposed to that statement"); *Robinson v. Avis Rent A Car

7   Sys., Inc.*, 106 Wash. App. 104, 113 (2001) (WCPA plaintiff must "show[] the trier of fact that he

8   [or she] relied upon a misrepresentation of fact") (quotation omitted); *Mason*, 653 So. 2d at 954

9   (fraudulent suppression elements require inducement and reliance).

10          Here, each plaintiff makes the same generalized boilerplate allegation about the materials

11   they reviewed; this is not enough.  The consumer fraud claims must be dismissed for failure to plead

12   the specific materials to which each named plaintiff was exposed and upon which they relied.

13   **C.     Plaintiffs Cannot Unilaterally and Limitlessly Obtain Cost-Free Repairs After

14           the Expiration of Their Warranties by Asserting Fraud-Based Claims**

15          Plaintiffs cannot rely on fraud-based claims to recover against BMW NA where, as here, the

16   alleged injury is not covered under warranty.  The Ninth Circuit and numerous other courts have

17   held that plaintiffs cannot assert fraud-based claims after a warranty expires unless they plead and

18   prove that BMW NA either knew of a "safety defect" at the time of sale or made specific

19   misrepresentations.  *See Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) ("A

20   manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative

21   misrepresentation or a safety issue."); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir.

22   2012); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d at 987 (N.D. Cal. 2010) *aff'd,* 462 F. App'x 660

23   (9th Cir. 2011); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, at 835-38 (2006); *Vitt

24   v. Apple Computer, Inc.*, 469 F. App'x 605, 607-09 (9th Cir. 2012); *O'Shea v. Epson Am., Inc.*, 2011

25   WL 3299936, at *8 (C.D. Cal. July 29, 2011); *Gray*, 2012 WL 313703, at *5.

26          Here, plaintiffs cannot allege facts showing a "safety defect," much less a "safety defect"

27   concealed with intent to defraud.  Rule 9(b) exists in part "to protect those whose reputation would

28   be harmed as a result of being subject to fraud charges."  *Kearns*, 567 F.3d at 1125.  Thus, it is not

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-11-                                Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

1   sufficient to conclusorily allege that "Defendants knowingly concealed material defects in a product

2   from purchasing consumers."  *Meserole v. Sony Corp. of Am.*, 2009 WL 1403933, at *4 (S.D.N.Y.

3   May 19, 2009) (dismissing CLRA and UCL claims).  Rather, plaintiffs must set forth specific facts

4   showing a cognizable safety defect and an intent to conceal it.  They fail to do so.

5
       **1.    There Are No Facts from Which to Draw a "Plausible" Inference That**
6   **           There Is a Safety Issue; Indeed, Plaintiffs' Claims Show It Is Not**

7           Plaintiffs' own allegations establish that the "defect" is ***not*** safety-related, as the absence of

8   accidents or injury – despite the colossal number of class vehicles – shows there is no safety issue.

9   Plaintiffs speculate that a string of failures might result from the defect, such as vehicles hesitating,

10  stalling or jerking, which plaintiffs claim creates a safety issue.  FAC ¶ 22.  Here, however, none of

11  the named plaintiffs report experiencing anything threatening their safety – indeed, Callaghan and

12  Caldwell continued to drive their vehicles *for more than a year* after experiencing problems; only

13  after filing suit do they claim there was a 'safety hazard.'  *Id.* ¶¶ 100, 106-10.

14          Moreover, courts have recognized that a "large sample size" can shine a light on the

15  absurdity of a plaintiff's claims of an expansive, class-wide issue.  *See Gray*, 2012 WL 313703, at

16  *9-10.  Here, every single vehicle in the huge number of class vehicles, some of which have been

17  on the road for ***almost 10 years***, is supposedly subject to inevitable, surprise failure.  FAC ¶ 1.

18  Yet, despite this incredibly large sample-size of vehicles collectively driving millions of miles,

19  plaintiffs are unable to identify a single accident or injury allegedly caused by the failure,

20  "sudden" or not, of a MINI Cooper S transmission due to old fluid.  *Id.*, *passim*.[3]  Accordingly, it

21  is not "plausible" to infer that there is safety issue, whether from the individual allegations or the

22  class allegations.  *Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief

23  survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer

24  ————————————————

25  [3] None of the anonymous internet reports in the FAC attribute their transmission issues to the failure mode
    alleged by plaintiffs; indeed some even describe 'problems' they have experienced for the life of the
26  vehicle, which plainly cannot be based on 'old' fluid.  Further, the MINI Cooper S is sold with both
    manual and automatic transmissions and the vast majority of these posts do not differentiate.  Regardless,
27  courts recognize that statements on websites are inherently unreliable.  *See, e.g.*, *United States v. Jackson*,
    208 F.3d 633, 637 (7th Cir. 2000) ("[A]ny evidence procured off the Internet is adequate for almost
28  nothing, even under the most liberal interpretations of the hearsay exception rules").

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-12-                                                        Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

1   more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—

2   that the pleader is entitled to relief.") (edits in original; quotation omitted).

3

4         **2.      In Any Event, Plaintiffs' Conclusory Speculation About What the**
                    **"Defect" Might Cause to Occur Do Not Establish a "Safety Defect"**

5         In cases involving motor vehicles, the Motor Vehicle Safety Act's definition of "vehicle

6   safety" does not include "any conceivable safety hazard" but rather only issues that present an

7   "***unreasonable*** risk of accidents."  *Smith*, 749 F. Supp. 2d at 990 (finding standard persuasive in

8   addressing duty of disclosure issues); *United States v. Gen. Motors Corp*., 656 F. Supp. 1555,

9   1579 (D.D.C. 1987); 49 U.S.C. § 30102(a)(8).  In *Smith*, the Court dismissed UCL, CLRA, and

10  other claims based on an allegedly concealed "safety" defect in motor vehicles.  *Smith*, 749 F.

11  Supp. 2d 980.  "[A]lthough one might speculate as to how [the defect alleged could] . . . pose a

12  safety risk," the Court explained, there were no facts alleged to show that "the customer

13  encountered any danger."  *Id.* at 992 n.18.

14        Plaintiffs cannot allege facts showing that drivers will suddenly lose control.  *Smith*, 749 F.

15  Supp. 2d at 990.  As a car can still be steered and braked after its transmission stops working, the

16  National Highway Traffic Safety Administration ("NHTSA") rejects the notion that losing power

17  necessarily amounts to a "safety defect."  *See, e.g.*, *Denial of Motor Vehicle Defect Petition*, 66 Fed.

18  Reg. 55243-01 (Nov. 1, 2001) (denying petition where, among other things, reported defect

19  "caus[ed] engine to stall"); *Denial of Motor Vehicle Defect Petition*, 72 Fed. Reg. 73973-01 (Dec.

20  28, 2007); *Denial of Motor Vehicle Defect Petition*, 57 Fed. Reg. 45417-01 (Oct. 1, 1992) ("poor

21  engine performance (as evidenced by sputtering, stalling" and other issues)—"None of these

22  problems constitute safety-related defects.").

23        Consistent with the NHTSA's determinations, because plaintiffs fail to allege facts showing

24  they (or anyone else) have been put at risk by the purported defects, they have not established the

25  existence of a safety defect.  *See Tietsworth*, 2009 WL 3320486, at *5 (allegations insufficient where

26  plaintiff pled no facts showing that "any identifiable member of the putative class actually

27  experienced a malfunction" where the alleged safety consequences manifested themselves).

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-13-                    Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

1

### D. Plaintiffs Have Not Alleged Facts Showing an Intent to Defraud

2      Separately, plaintiffs cannot plead facts showing BMW NA concealed a defect with intent to

3  defraud. *See, e.g., Kearns,* 567 F.3d at 1126 ("intent to defraud" must be pled with specificity);

4  *Johnson v. Mitsubishi Digital Elecs. Am., Inc.,* 578 F. Supp. 2d 1229, 1239 (C.D. Cal. 2008); *Gray,*

5  2012 WL 313703, at *9 ("mere non-disclosure [does not] constitute[] 'active concealment'").  As

6  the Ninth Circuit held after *Iqbal*:  "The bald allegation of impermissible motive . . . standing alone,

7  is conclusory and therefore not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.,* 572

8  F.3d 962, 970 (9th Cir. 2009).

9      Plaintiffs' bare claim that BMW NA "knew" of a "safety defect" is insufficient, and the facts

10 alleged do not support it.  Because the law does "not require manufacturers to disclose things they

11 do not know," such statutes are "not violate[d] . . . by failing to inform . . . consumers of the

12 *possibility* of failure" of a part in a motor vehicle.  *Alban v. BMW NA,* 2010 WL 3636253, at *10

13 (D.N.J. Sept. 8, 2010); *Smith,* 749 F. Supp. 2d at 988.  At one point, plaintiffs concede they cannot

14 allege facts showing BMW NA actually "knew" about the issue.  *See, e.g.,* FAC ¶ 45, 46

15 (conclusory pleading that "on information and belief" BMW NA "knew") (emphasis added).

16 Elsewhere, plaintiffs present a series of conclusory statements outlining a bewildering conspiracy

17 undertaken by BMW NA, but never ***factually*** explain, *e.g.*, how BMW NA's knowledge existed or

18 what factual basis they have for these accusations.  *See, e.g.,* FAC ¶¶ 54-67; *see also Cooper v.*

19 *Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (averments of fraud must be accompanied by "the 'who,

20 what, when, where, and how'" of the misconduct charged) (citation omitted).  That customers may

21 have complained to dealers likewise does not establish BMW NA's "knowledge" as, even if true, it

22 does not establish that BMW NA knew of a ***safety defect***—or even that a safety defect exists.  *See*

23 *Wilson,* 668 F.3d at 1148 (such complaints could not support "an inference that HP was aware of the

24 defect at the time it sold the Laptops to Plaintiffs" and citing cases reflecting same).  At best, the

25 complaints "establish[] knowledge that there were *complaints*" and are "insufficient to show that [a

26 defendant] had knowledge" of a ***defect***, much less knowledge of a ***safety*** defect.  *Berenblat v. Apple,*

27 *Inc.,* 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010); *see, e.g., Baltazar v. Apple,* 2011 WL

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-14-                          Case No. CV-13-4794 (RS)

BMW NA'S MOTION TO DISMISS

588209, at *4 (N.D. Cal. Feb. 10, 2011); *Woods v. Maytag Co.*, 2010 WL 4314313, at *8 (E.D.N.Y. Nov. 2, 2010); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997).

Furthermore, because BMW NA is subject to the NHTSA's authority, NHTSA precedent guides BMW NA's "knowledge." Thus, it is significant that NHTSA rejects the notion that defects alleged to cause engine stalling necessarily amount to "safety defects." *See, e.g.*, Denial of Motor Vehicle Defect Petition, 66 Fed. Reg. 55243 (denying petition where, among other things, reported defect "caus[ed] engine to stall"); *cf. Smith*, 749 F. Supp. 2d at 990 (considering NHTSA decisions in determining that allegation of "safety defect" was insufficient to state CLRA claim). When a vehicle stalls in motion, steering, braking, and other safety features generally remain available—so it is not possible to say there always is the type of ***unreasonable*** risk of accidents required for the finding of a safety defect. Plaintiffs do not allege facts showing an exceptional circumstance here.

**E.     Caldwell Has No "Transaction" with BMW NA, So the CLRA Does Not Apply**

Caldwell purchased his used MINI Cooper S vehicle from a third party. FAC ¶ 102. He does not allege BMW NA was involved with this transaction, and so it cannot be said to have "defrauded" him, even if all other allegations are true. *Fulford v. Logitech, Inc.*, Case No. C-08-2041 (MMC), 2008 WL 4914416, at *1 (N.D. Cal. Nov. 14, 2008) (no CLRA claim where plaintiff failed to allege prohibited acts "in the course of a transaction with him"). The FAC thus fails to plead facts showing a "transaction" between Caldwell and BMW NA, much less any facts showing prohibited conduct occurring during any such transactions.

**V.     CALDWELL AND PENA'S CLAIMS ARE TIME-BARRED**

**A.     The CLRA, NYCPA and NJCFA Statutes of Limitation Have Run**

The statute of limitations for CLRA claims is 3 years. *See* Cal. Civ. Code § 1783. Caldwell alleges he purchased his car "on or around 2008", more than three years before the filing of the complaint on October 15, 2013. FAC ¶ 102. His CLRA claim is time-barred, as CLRA violations can only occur in the context of a "transaction intended to result or which results in the sale or lease of goods . . . ." Cal. Civ. Code § 1770(a); *see, e.g., Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, at *10 (N.D. Cal. July 6, 2010) (post-transaction conduct "cannot support an alleged CLRA violation").

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-15-                                              Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS

1    NJCFA claims must be brought within six years. *Morristown Associates v. Grant Oil Co*.,

2    432 N.J. Super. 287, 298 (2013). Pena purchased his vehicle before July 2007, more than six

3    years before filings suit. FAC ¶¶ 115. Likewise, NYCPA claims "must be commenced within

4    three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or

5    practice that violated the statute." *Statler v. Dell, Inc*., 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012)

6    ("[T]he allegedly faulty capacitors were present in the computers purchased at the time of delivery

7    in 2003. Thus, [if] the deceptive practice was the shipping of computers with defective capacitors,

8    that claim accrued in 2003"). Accordingly, both Caldwell and Pena's claims are time-barred.

9          **B.      Plaintiffs Are Not Entitled to Equitable Tolling**

10         Recognizing their claims are time-barred, plaintiffs attempt to invoke equitable tolling

11   through vague and conclusory allegations of "active concealment" by BMW NA. *See, e.g.*, FAC

12   ¶ 137. Plaintiffs' tolling allegations are insufficient, as they do not plead facts supporting BMW

13   NA's "active[] concealment" with specificity. *See, e.g., Iqbal*, 556 U.S. at 678; *Kearns*, 567 F.3d

14   at 1125; *Stearns v. Select Comfort Retail Corp*., 2009 WL 1635931, at *9-*10 (N.D. Cal. June 5,

15   2009); see also Section III(A)(3), above (discussing conclusory nature of plaintiffs "knowledge"

16   allegations). Further, plaintiffs cannot establish equitable tolling by making conclusory claims of

17   "active concealment," "misconduct" or "fraudulent concealment." E.g., FAC ¶¶ 137-39. The

18   "'[m]ere allegation of the word 'fraudulent' [concealment] is not sufficient to avoid the statute of

19   limitations.'" *Walsh v. Ford Motor Co*., 588 F. Supp. 1513, 1522 (D.D.C. 1984) (citation omitted;

20   bracketed language original). Accordingly, plaintiffs cannot avail themselves of the equitable

21   tolling doctrine and Pena and Caldwell's claims are time-barred.

22         **C.      Plaintiffs' UCL Claim Should Be Dismissed Because They Have an Adequate
23                    Remedy at Law**

24         "The UCL provides only equitable remedies." *Rhynes v. Stryker Corp*., 2011 WL

25   2149095, at *3 (N.D. Cal. May 31, 2011) (citing *Madrid v. Perot Systems Corp*., 130 Cal. App.

26   4th 440 (2005) ("[T]he UCL limits the remedies available for UCL violations to restitution and

27   injunctive relief. . . .")). To seek equitable relief, a plaintiff must establish the unavailability of an

28   adequate remedy at law. *Id*. "Where the claims ple[d] by a plaintiff may entitle her to an adequate

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-16-                                          Case No. CV-13-4794 (RS)

BMW NA'S MOTION TO DISMISS

remedy at law, equitable relief is unavailable." *Id.* at *4 (dismissing UCL claim because plaintiff also pled products liability claims seeking money damages); *see also Adams v. I-Flow Corp.*, 2010 WL 1339948, at *7 (C.D. Cal. Mar. 30, 2010) (injunctive relief under the UCL is unavailable where, "[s]hould plaintiffs ultimately prevail on their claims, they will be adequately compensated for their alleged injuries by an award of damages"). Here, if the California plaintiffs succeed on any of their non-UCL claims, they will be entitled to monetary relief compensating them for their alleged injuries. Plaintiffs would therefore have an "adequate remedy at law," *Rhynes*, 2011 WL 2149095, at *3, and the UCL claim should be dismissed for this reason as well. *See also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259-1260 (C.D. Cal. 2003) (dismissing UCL claim because plaintiff failed to allege he had no adequate remedy at law).

## VI. THE NEGLIGENCE CLAIM IS BARRED BY THE ECONOMIC LOSS RULE

The negligence claims is barred by the economic loss rule as the transmissions only damaged themselves. *See, e.g., Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004) (California economic loss rule bars negligence claims where a product damages only itself); *Seely v. White Motor Co.*, 403 P.2d 145 (1965); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1064, 1069–1071 (N.D. Cal. 2012) (economic loss rule bars negligence claim); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 311 (D.N.J. 2009) (economic loss rule applied as "Plaintiffs simply cannot escape the fact that the damages sought in connection with their [] claims are in the nature of economic loss and arise out of [their] contention that [the] product failed to meet performance expectations"); *Alejandre v. Bull*, 159 Wash. 2d 674, 684 (2007) ("The key inquiry is . . . are the losses economic losses, with economic losses distinguished from personal injury or injury to other property. If the claimed loss is an economic loss, and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies."); *Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671, 673 (Ala. 1989) (confirming Alabama follows national economic loss rule "that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself"); *see also In re General Motors Corp.*, 383 F. Supp. 2d 1340 (W.D. Okla. 2005) ("because

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-17-                                              Case No. CV-13-4794 (RS)

BMW NA'S MOTION TO DISMISS

1 [plaintiff] purchased a single product with integrated parts from GM the economic loss doctrine

2 precludes his negligence claim").

3       It is undisputed that plaintiffs do not allege they have been physically injured or that

4 anything was damaged by the "negligence" other than the transmissions themselves.  Thus, the

5 economic loss rule bars recovery under negligence theories.[4]

6 **CONCLUSION**

7       For the foregoing reasons, plaintiffs' FAC should be dismissed with prejudice.

8 Dated:  February 3, 2014        Respectfully submitted,

9                     CARROLL, BURDICK & McDONOUGH LLP

10

11                     By _____*/s/ Troy M. Yoshino*_____

12                             TROY M. YOSHINO
                    Attorneys for Defendant

13                     BMW of North America, LLC and
                    Bayerische Motoren Werke AG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4] In any event the negligence claim also fails for lack of causation as described above.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-18-          Case No. CV-13-4794 (RS)
BMW NA'S MOTION TO DISMISS