**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHAEL CALLAGHAN, MATTHEW CALDWELL, RODNEY PENA, JEANNE DOSE-ALDERSON, and STEVE MUELLER individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW of NORTH AMERICA, LLC, a New Jersey limited liability company, and BAYERISCHE MOTOREN WERKE AG, a corporation organized under the laws of the Federal Republic of Germany,<br><br>Defendant. | Case No. 13-CV-4794-RS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING MOTION TO STRIKE CLASS ALLEGATIONS** |

## I. INTRODUCTION

Plaintiffs bring this putative class action on behalf of themselves and other individuals who have purchased Mini Cooper S models, alleging that defendants failed to disclose a material safety defect concerning the vehicle—to wit that, unbeknownst to plaintiffs, the automatic transmission fluid would need to be replaced at some point during the lifetime of the vehicles. Defendants now move to dismiss the complaint or, in the alternative, to strike plaintiffs' class allegations. For the reasons explained below, defendants' motions to dismiss are granted because the complaint does

not sufficiently allege any material misrepresentation or omission and, separately, fails to attribute any of the alleged wrongdoing to Bayerische Motoren Werke AG. The motion to strike is denied.

## II. FACTUAL BACKGROUND[1]

Plaintiffs each purchased used, model year 2005 MINI Cooper S vehicles from authorized dealers. As alleged in the complaint, plaintiffs were led by defendants BMW of North America, LLC ("BMW NA") and Bayerische Motoren Werke AG ("BMW AG") (collectively, "BMW Group") to believe their vehicles were equipped with "lifetime" automatic transmission fluid that need never be changed. Over time, each plaintiff reports, his or her transmission suffered problems or failed. As a result, plaintiffs aver that they were forced to spend thousands of dollars to repair or replace their damaged or destroyed transmissions or to sell their vehicles without repair at a substantial loss.

According to plaintiffs, BMW Group promoted the S-Class vehicles as high-quality, low maintenance automobiles that required little, if any maintenance or repair. For example, plaintiffs point to the Maintenance Program currently described on the BMW Group website, which boasts "NO COST MAINTANCE & WARRANTY" and "BOOT TO BONNET NO COST MAINTENANCE" for the first 3-years or 36,000 miles for every new Mini. The web site copy included in the complaint makes no reference to the vehicles' transmission fluid. Nor does the "Service and Warranty Information" booklet provided by defendants for each S-Class vehicle specify any time period in which to change the transmission fluid, in contrast to other recommendations including oil service and ongoing inspections. Plaintiffs note that the instructions for one recommended inspection indicated that the service facility should "change CVT (automatic) transmission fluid" for MINI Cooper vehicles, but omits any such directive for the Mini S-Class.

Plaintiffs also point to a technical service bulletin issued by BMW Group to authorized dealerships and repair facilities suggesting that the transmission fluid should be changed "every 100,000 miles." According to plaintiffs, this recommendation exceeds the "industry standard" that automatic transmission fluid needs to be replaced after approximately every 30,000 miles. The

---

[1] All factual allegations from the complaint are taken as true for purposes of this motion to dismiss.

complaint, however, identifies no affirmative statements by defendants to consumers referring to the transmission fluid as lasting a "lifetime" or recommending any particular timeline for inspecting or changing the fluid.

Plaintiffs each allege having experienced transmission problems with their used S-Class vehicles at some time after purchase. For example, Michael Callaghan purchased a used 2005 model with approximately 65,445 miles in April 2011. At some unspecified time after that purchase, Callaghan began experiencing problems with the vehicle's transmission. According to the complaint, the vehicle had accrued approximately 69,000 miles when he took it in for repairs in November 2012, at which time he was quoted a replacement cost of $8,000 for a new transmission. The complaint does not aver the cause of his transmission failure.

Plaintiffs also point to various consumer complaints to the National Highway Traffic and Safety Administration reporting transmission problems with S-Class vehicles. One of the quoted complaints suggested that the transmission failed 1 year or 8,000 miles after the car was purchased new. Another suggested the problem began seven years and an unspecified number of miles driven after the initial purchase.

Plaintiffs seek to represent a nationwide class of consumers who purchased or leased one of the S-Class vehicles, as well as subclasses of consumers from California, New York, Washington, and Alabama. Plaintiffs allege violations of the consumer protection statutes in California, New York, New Jersey, and Washington; negligence; and suppression of a material fact under Alabama statutory law. They further allege that any applicable statutes of limitations were tolled by BMW Group's knowing and active concealment of the facts alleged in the complaint.

Defendants move to dismiss each of these claims for lack of standing and failure to state a claim. BMW AG also moves separately to dismiss on the grounds that it did not market the vehicle in the United States and was not directly involved with the sales transactions at issue in the complaint. Defendants further move to strike the class allegations.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction over the asserted claims. A jurisdictional challenge under Rule 12(b)(1)

may be made either on the face of the pleadings or by presenting extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A district court accepts all allegations of fact in the complaint as true and construes them in the light most favorable to the plaintiff. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Pursuant to Federal Rule of Civil Procedure 12(f), a party may move to strike from a pleading "any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter." Fed. R. Civ. P. 12(f). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). Before a motion to strike is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed. *Id.*; *see also RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal.2005).

IV. DISCUSSION

A. Standing

As an initial matter, defendants argue plaintiffs lack Article III standing because the complaint does not allege that defendants' actions actually caused plaintiffs' alleged injuries. To satisfy constitutional standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180–81 (2000). As the party seeking to invoke the Court's jurisdiction, plaintiffs bear the burden of establishing constitutional standing by alleging, among other things "a causal connection between [their] injury and the conduct complained about." *Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (plaintiffs' burden to satisfy standing). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

While defendants focus primarily on the element of causation, the first problem with the complaint is that the it does not make clear the nature of plaintiffs' injury. Plaintiffs refer several times to the cost of repairing or replacing their failed transmission, or to selling their vehicles at a loss without completing such repair. (Complaint ¶¶ 44, 92.) The complaint, however, never directly alleges a causal link between the alleged misrepresentations and omissions by BMW group and the named plaintiffs' transmission failures. (*Id.*, ¶¶ 93–136.)

At argument, counsel clarified that the alleged consumer fraud injury occurred not at the moment the transmission failed, but rather at the moment of sale when plaintiffs were allegedly duped into purchasing vehicles that, unbeknownst to them, would require the automatic transmission fluid to be changed at some unspecified time. In support of that claim, plaintiffs allege generally that BMW made uniform misrepresentations and material omissions concerning the automatic transmission fluid. (*Id.*, ¶¶ 3, 48, 53.) It is not clear from the complaint, however, what plaintiffs allege BMW said, or should have said, that could have avoided their alleged injury. The complaint does not include a single averment of an affirmative misrepresentation by BMW Group to the plaintiffs as to the frequency with which the automatic transmission fluid must be changed, if at all. During oral argument, plaintiffs' counsel clarified that this essentially is an omissions case. The complaint, however, offers only the most generalized allegations to suggest that automatic transmission fluid must be changed at particular intervals to avoid transmission failure. For

example: "Plaintiffs are informed and believe, and based thereon, allege that in the auto industry, it is generally accepted that automatic transmission fluid needs to be replaced after approximately 30,000 mile intervals of driving, and well in advance of every 100,000 miles." (*Id.*, ¶ 12.) Similarly, plaintiffs allege that "[i]f, following BMW Group's directions, consumers do not replace the transmission fluid in the Class Vehicles, or, alternatively, dealerships and other repair facilities wait until 100,000 miles to change the fluid, the automatic transmissions in the Class Vehicles will suffer from sudden and premature failure." (*Id.*, ¶ 3.) Yet, no allegations can be found suggesting plaintiffs or anyone else has suffered the "sudden and premature failure" of an automatic transmission *because* the automatic transmission fluid was not timely changed.

Lacking any allegations in the complaint that the alleged omission was deceptive, much less that it lead to any subsequent vehicle harm, plaintiffs cannot show that their injury—whether defined as a failed transmission or as a deceptive purchase—is traceable to any actual misstatement or omission by defendants. The complaint must, therefore, be dismissed for lack of standing, with leave to amend. *Cf. Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995) (leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment).

Defendants also challenge the named plaintiffs' standing to assert claims on behalf of putative class members who owned or leased different year and model vehicles than those owned or leased by the named plaintiffs. The Supreme Court has noted "there is tension in [its] prior cases" regarding whether differences among class members "is a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." *Gratz v. Bollinger*, 539 U.S. 244, 263 & n.15 (2003).

Recent decisions from within this District have split into three groups: (1) a strict position in which claims relating to products not purchased must be dismissed for lack of standing; (2) a middle ground in which the inquiry is whether there is sufficient similarity between the products which were purchased and those which were not; and (3) a third group finding standing to be satisfied so long as the named plaintiff has individual standing to bring claims regarding the purchased products and reserving the question of whether a proposed class can bring claims related

to other products until the class certification stage. *See Clancy v. The Bromley Tea Company*, 2013 WL 4081632, at *4, No. 12–cv–03003 (N.D. Cal. Aug. 9, 2013) (adopting the third position); *Swearingen v. Yucatan Foods*, No. 13-3544 RS, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014) (standing satisfied under either the second or third position).

BMW raised a similar argument, which was rejected, in a 2012 case in this district concerning alleged defects in its vehicles' electrical systems. *Sharma v. BMW of North Am., LLC*, 2014 U.S. Dist. LEXIS 5399, *6–7 (N.D. Cal. Jan. 15, 2014). "Where a class action complaint encompasses both a product the plaintiff purchased and a product he did not, the plaintiff sufficiently has standing to proceed with claims on behalf of class members who purchased the latter if there is sufficient similarity between the products purchased and not purchased." *Id.* at 6. In that case, the court found plaintiffs' allegations that "'all' of the makes and models identified by plaintiffs as the 'Class Vehicles' have the same 'design defect'" sufficient to survive a motion to dismiss for lack of standing. *Id.* Here, too, plaintiffs allege that all of the putative class vehicles are equipped with the same "6-Speed automatic transmission," that defendants made the same misrepresentations and omissions with respect to each of the class vehicles, and that BMW's "Service and Warranty Information" for the class vehicles uniformly misrepresents that the transmission fluid need not be changed. As in *Swarma*, such allegations are sufficient at this point to proceed on the claims, assuming, of course, that plaintiffs can present a viable complaint through amendment. Whether such a class may be certified, and whether these plaintiffs are determined to be adequate representatives, are questions best left for a determination on class certification.

B. Fraud Claims

   *1. New York Consumer Protection Act*

The New York Court of Appeal has held that the New York Consumer Protection Act ("NYCPA") requires "that the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). Although plaintiff Rodney Pena lives in New York, he purchased his vehicle in New Jersey. (Complaint, ¶ 115.) Pena alleges that he was "exposed to BMW Group's advertising campaign," but he does not aver that any of the alleged misrepresentations or omissions led to a deceptive transaction in New York.

Plaintiffs argue in their opposition to defendant's motion to dismiss that "BMW's technical service bulletin informing authorized dealerships and repair facilities that the ATF need only be changed every 100,000 miles were almost certainly distributed to dealerships in New York." The complaint, however, makes no such averment, nor does Pena claim to have relied on any service recommendation obtained in New York. Pena alleges he "took his vehicle to a BMW specialist, who changed the transmission fluid," but does not specify where that specialist was based or whether he relied to his detriment on any advice obtained therefrom. Plaintiff's New York Consumer Protection Act claim is therefore subject to dismissal, with leave to amend, on this alternative ground.

### 2. *New Jersey Consumer Fraud Act*

New Jersey courts have generally rejected claims under the New Jersey Consumer Fraud Act ("NJCFA") for post-warranty part failures when the vehicle performed for the life of the warranty. *See, e.g., Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 338–39 (D.N.J. 2010) ("This Court refuses to rewrite a warranty that expired over four years ago" despite allegations of a safety-related defect); *Glass v. BMW of N. Am., LLC*, CIV.A. 10-5259 ES, 2011 WL 6887721, at **9–10 (D.N.J. Dec. 29, 2011) ("BMW NA's failure to advise Plaintiff that a part of a vehicle may break down or require repair after the expiration of the warranty period does not constitute a violation of the [NJ]CFA"). As one court observed, "[I]f the sales warranty covered the [vehicle's] brakes up to 12,000 miles, and the brakes routinely failed at 12,001 miles, Chrysler or its successor would have had no obligation to repair them. Moreover, there would have been no undisclosed defect that Chrysler or its successor had an obligation to alert consumers to." *Tatum v. Chrysler Grp. LLC.*, 2011 WL 1253847 (D.N.J. Mar. 28, 2011)

At least one decision from the District of New Jersey, however, suggests that an exception may exist "where a manufacturer or seller of a product knew that its product had a defect which would cause it to fail before its expected useful life, and intentionally concealed that information from a purchaser, with the purpose of maximizing profit." *Maniscalco v. Brother Intern. Corp.*, 627 F. Supp. 2d 494, 502 (D.N.J. 2009). The plaintiffs in *Mansicalco* alleged that the defendant knew a component of its printers would malfunction before the end of the products' useful life and

intentionally structured its warranty to expire before the defect manifested itself.  As in *Mansicalco*, plaintiffs here do not merely allege that defendants knew the transmissions were prone to fail after the warranty period expired, but that BMW Group led plaintiffs to believe their transmission fluid did not need to be changed; a deception designed to shift the cost of an expensive procedure to consumers while still reaping the sales and marketing benefit of providing a full-vehicle maintenance program throughout the warranty period.  (Complaint, ¶ 56–58, 65.)  Absent such an allegation in the amended complaint, it would appear that plaintiffs' post-warranty claim would be precluded under the NJCFA.

      *3. Statutes of Limitations*

Defendants next argue plaintiffs' claims under the California Legal Remedies Act ("CLRA"), NYCPA, and NJCFA all fall outside of the relevant statutes of limitations.  *See* Cal. Civ. Code § 1783 (three-year statute of limitations for CRLA claims); *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) (three-year statute of limitations for NYCPA claims runs from the time the plaintiff is injured by the deceptive act or practice that violated the statute); *Kennedy v. Axa Equitable Life Ins., Co.*, CIV.06-6082(RBK), 2007 WL 2688881 (D.N.J. Sept. 11, 2007) (New Jersey's six-year statute of limitations applies to claims under the NJCFA).

While plaintiffs argue that equitable tolling must apply as alleged in the complaint, the necessity to reach the issue is unclear.  If the alleged injury flows from plaintiffs' transmission failures (as suggested by plaintiffs' opposition to BMW N.A.'s motion to dismiss), then the complaint appears to be timely.  As alleged, California plaintiff Caldwell was not informed that he needed to replace his transmission until November 19, 2010 (less than three years prior to the filing of the Complaint).  (Complaint ¶ 106.)  All of the other named plaintiffs allege the transmission in their vehicle failed within the six-year statute of limitations applicable to the NYCFA (New York plaintiff Pena) and the NJCFA (all plaintiffs).  If, however, the gravamen of the complaint on amendment is that plaintiffs were deceived in the course of their vehicle purchases (as suggested at the hearing), then it may become necessary to delve further into the statute of limitations argument.

C. <u>California UCL Claim</u>

Defendants next argue plaintiffs' claim for injunctive relief under the California Unfair Competition Law must be dismissed as plaintiffs do not lack an adequate remedy at law. The UCL provides a right to statutory injunctive relief that is complementary to other relief in that section. *See* Cal. Bus. & Prof. Code § 17205 ("Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.") In fact, UCL claims routinely lie alongside other consumer protection claims. That said, plaintiffs do not allege any basis on which they might benefit from further injunctive relief. Plaintiffs appear to claim that, but for defendants' misrepresentations and omissions, they would not have purchased their vehicles or, in the alternative, would have obtained necessary maintenance during the warranty period. Each of the named plaintiffs, however, is now well outside of the applicable warranty period. Moreover, each named plaintiff has already repaired or sold their vehicle. On amendment, plaintiffs should make clear on what grounds, if any, they are entitled to equitable relief under the UCL.

D.  Negligence Claim

Finally, defendants move to dismiss plaintiffs' negligence claim on the basis of the economic loss rule. Plaintiffs do not specify under which states' laws their negligence claim might arise, but each of the states represented in this case by the named plaintiffs follows the general rule of no recovery in negligence for purely economic losses caused by a defective product when the only damage is to the product itself. *See, e.g., Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1064, 1069–1071 (N.D. Cal. 2012) (economic loss rule bars negligence claim); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 311 (D.N.J. 2009) (economic loss rule applied as "Plaintiffs simply cannot escape the fact that the damages sought in connection with their [] claims are in the nature of economic loss and arise out of [their] contention that [the] product failed to meet performance expectations"); *Alejandre v. Bull*, 159 Wash. 2d 674, 684 (2007) ("The key inquiry is . . . are the losses economic losses, with economic losses distinguished from personal injury or injury to other property. If the claimed loss is an economic loss, and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies."); *Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671, 673

(Ala. 1989) (confirming Alabama follows national economic loss rule "that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself").

Plaintiffs allege that, because of defendants' misstatements and omissions, they failed to perform necessary maintenance on their automatic transmissions, causing those parts to fail and resulting in expensive repairs or loss of value in their vehicles. Plaintiffs do not allege any other personal or property injury. On that basis, their negligence claim must be dismissed with leave to amend.

E.  Allegations against BMW AG

BMW AG separately moves to dismiss plaintiffs' allegations against it for failure to state a claim. The complaint specifically delineates the two entities against whom relief is sought. "BMW of North America, LLC is responsible for the importation, distribution, *marketing and sale* of the Class Vehicles in the United States and California." (Complaint ¶ 36 (emphasis added).) In contrast, "Bayerische Motoren Werke AG *designs and manufactures* motor vehicles, parts, and other products for sale in Europe and for export and sale throughout the world, including the Class Vehicles sold in the United States and California." (*Id.*, ¶ 39 (emphasis added).)

While plaintiffs make passing reference to the notion that the transmissions in plaintiffs' vehicles failed prematurely, the gravamen of their complaint is that they failed to perform necessary maintenance to the transmissions as a result of misstatements and omissions in the vehicles' marketing and maintenance program. Plaintiffs do not allege that the transmissions failed due to any design or manufacturing defect. Nor do they allege that BMW AG was responsible for any of the misstatements or omissions at issue in this litigation. Plaintiffs' claims against BMW AG must therefore be dismissed in their entirety, with leave to amend.

F.  Class Allegations

Federal Rule of Civil Procedure 12(f) allows a party to move to strike from a pleading "any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter." Fed. R. Civ. P. 12(f). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple*

*Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). While courts have granted motions to strike class allegations if it is clear that no class action can be certified, *see Sanders*, 672 F. Supp. 2d at 990, defendants' argument that plaintiffs will be unable to demonstrate causation or actual injury on a class-wide basis is better addressed in response to a motion for class certification under Rule 23 than on a motion to dismiss under Rule 12(f). *See, e.g., Gomez v. Serv. Employees Intern. Union Local 89*, No. C 10–01888 RS, 2010 WL 4704407 (N.D. Cal. Nov. 12, 2010). The same is true of defendants' assertion that many putative class members may still be within the warranty coverage of their vehicles. Defendants' motion to strike is, therefore, denied.

## V. CONCLUSION

For the reasons stated above, defendants' motions to dismiss are granted. Defendants' motion to strike plaintiffs' class allegations is denied.

IT IS SO ORDERED.

Dated: April 2, 2014        By: _____
                                Richard Seeborg
                                United States District Judge