Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiffs MICHAEL
CALLAGHAN, MATTHEW
CALDWELL, RODNEY PENA,
JEANNE DOSE-ALDERSON, and
STEVE MUELLER individually, and on
behalf of other members of the public
similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CALLAGHAN, MATTHEW CALDWELL, RODNEY PENA, JEANNE DOSE-ALDERSON, and STEVE MUELLER individually, and on behalf of other members of the public similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>BMW of NORTH AMERICA, LLC, a New Jersey limited liability company, and BAYERISCHE MOTOREN WERKE AG, a corporation organized under the laws of the Federal Republic of Germany,<br><br>                    Defendants. | Case Number:  3:13-cv-04794-JD<br><br>**SECOND AMENDED COMPLAINT**<br><br>(1)    Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*);<br>(2)    Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)<br>(3)    Violation of New York Deceptive Practices Act (N.Y. Gen. Bus. Law § 349);<br>(4)    Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, *et seq.*);<br>(5)    Violation of Washington Consumer Protection Act (Rev. Code of Wash. §§ 19.86, *et seq.*); and<br>(6)    Violation of Code of Alabama § 6-5-12)<br>(7)    Fraud<br>(8)    Unjust Enrichment<br>**Jury Trial Demanded** |

Plaintiffs MICHAEL CALLAGHAN, MATTHEW CALDWELL, RODNEY PENA, JEANNE DOSE-ALDERSON, and STEVE MUELLER ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated (the "Class," as defined in detail below), allege as follows:

## INTRODUCTION

1.     This is a consumer class action concerning 2005 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles, which are equipped with the 6-Speed automatic transmission (collectively, "S Models" or "Class Vehicles").

2.     The Class Vehicles are designed, manufactured, imported, distributed, maintained and marketed in the United States by Defendants BMW of North America, LLC and Bayerische Motoren Werke AG (collectively, "BMW Group" or "Defendants").

3.     BMW Group fails to disclose to consumers that the automatic transmissions in the Class Vehicles are prone to premature failure.  BMW Group's failure to disclose this material fact presents a serious safety concern to drivers and occupants of the Class Vehicles, and has caused consumers to suffer significant monetary damages.

4.     BMW Group introduced the Mini Cooper and Mini Cooper S Models in the United States in 2002 with great fanfare and public attention.  BMW Group's marketing strategy for MINI was to launch a new class of high-end vehicles.  BMW Group presented the MINI as a stylish, high performance, yet affordable vehicle.  At the time of the launch, Jack Pitney, general manager of BMW Group's MINI division in the U.S., explained to the Wall Street Journal, "'[w]e're creating a new segment' of premium small vehicles."[1]

---

[1] *See* "BMW 'Mini' Campaign:  Odd to the Max," Karen Lundegaard, Wall Street Journal at B5 (March 1, 2002) (emphasis added).

5. BMW Group's S Models are intended by BMW Group to be a higher performance variant of the standard Mini Cooper.  The Class Vehicles feature upgrades to the standard Mini Coopers, including a turbocharger, 181 Horsepower, and other mechanical "improvements" concerning internal engine components and cooling systems. Plaintiffs are informed and believe, and based thereon allege that all the Class Vehicles are equipped with identical or substantially similar 6-Speed automatic transmissions ("Automatic Transmissions").

6. This case concerns BMW Group's failure to disclose a material problem and safety issues concerning the Class Vehicles' Automatic Transmissions.  The Automatic Transmissions in the Class Vehicles are prone to premature failure, before the end of the useful life of the Class Vehicles, and well before consumers reasonably expect any such failure to occur.  Plaintiffs are informed and believe, and based thereon, allege that a vehicle's transmission is intended and reasonably expected to last at least ten years, if not more, without the need for costly repair or replacement.

7. As a result of BMW Group's failure to disclose the fact that the Automatic Transmissions installed in the Class Vehicles were prone to unavoidable premature failure, consumers are required to spend thousands of dollars to repair or replace their Automatic Transmissions, or to sell their Class Vehicles without repair at a substantial loss.  The fact that the Automatic Transmissions are prone to premature failure is material because no reasonable consumer expects that they will have to spend thousands of dollars out-of-pocket for Automatic Transmission repairs or replacements in the early years of vehicle ownership.

8. Moreover, BMW Group's omission is material to consumers because of the significant safety concern presented.   When the Automatic Transmissions fail while the Class Vehicles are on the road, drivers are suddenly unable to engage gears.  Consumers have reported that their Class Vehicles have hesitated, stalled, or stopped completely in the middle of traffic; they have unexpectedly surged forward while accelerating; and they have jerked and stumbled while attempting to accelerate.  When the Automatic

Transmissions fail, drivers become unable to keep up with the normal flow of traffic or control the movement of their vehicles, exposing them to the risk of collisions.

9.     Indeed, the safety of the Class Vehicles is particularly material to consumers given the small size of the Class Vehicles.  When the Automatic Transmissions fail, there is no safe alternative way for drivers to avoid the risk of potential harm while driving.  As a result of BMW Group's material omission, BMW Group has recklessly placed the safety of owners and occupants of the Class Vehicles at risk.

10.     Plaintiffs and members of the Classes (as defined below) would not have bought the Class Vehicles had they known that the Automatic Transmissions installed were prone to unavoidable and dangerous premature failure.  When Plaintiffs and members of the Classes purchased the Class Vehicles, they relied on their reasonable expectation that the Class Vehicles did not pose an unavoidable safety risk.  Had BMW Group timely disclosed to consumers the material fact that that the Automatic Transmissions were prone to premature failure, Plaintiffs and members of the Classes would not have purchased the Class Vehicles, or they would not have paid the purchase price charged by BMW Group, or, at a minimum, they would have required BMW Group to repair or replace the Automatic Transmissions before the expiration of their warranties.  However, BMW Group never disclosed these material facts to consumers at the time of purchase, or anytime thereafter.

11.     Plaintiffs are informed and believe, and based thereon, allege that BMW Group has been aware that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure.  BMW Group has acquired exclusive knowledge of this issue as a result of pre-production testing, design failure mode analysis, and customer complaints made to dealers -- information that is exclusively in BMW Group's possession and inaccessible to consumers.

12.     Notwithstanding BMW Group's exclusive knowledge, however, BMW Group has continued to conceal this material safety issue from consumers.  BMW Group has continued this unlawful practice even as it began receiving consumer complaints

1   concerning the Automatic Transmission malfunctions and failures in 2005, if not earlier.

2      13.   Plaintiffs are informed and believe, and based thereon, allege that BMW

3   Group has intentionally concealed the fact that the Automatic Transmissions were prone

4   to premature failure so that the warranty period on the Class Vehicles would expire before

5   consumers became aware of the problem.  Through this practice, BMW Group unlawfully

6   transfers the cost of repairs and replacements from itself to the Class Vehicles' owners.

7      14.   As a result of its failure to disclose the material fact that the Automatic

8   Transmissions installed in the Class Vehicles are prone to premature failure, BMW Group

9   has recklessly placed the safety of the owners and occupants of the Class Vehicles at risk,

10  and caused them to suffer monetary damages.  Plaintiffs seek, on behalf of themselves and

11  the Classes, restitution, damages, and other appropriate relief.

12                      **JURISDICTION AND VENUE**

13     15.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The

14  matter in controversy, exclusive of interest and costs, exceeds the sum or value of

15  $5,000,000 and is a class action in which members of the Classes (as defined below) are

16  citizens of states different from Defendants.  There are at least 100 members of the

17  Classes.  Further, greater than two-thirds of the members of the Classes reside in states

18  other than the states in which Defendants are citizens.

19     16.   In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental

20  jurisdiction over the state law claims because all of the claims are derived from a common

21  nucleus of operative facts and are such that members of the Classes ordinarily would

22  expect to try them in one judicial proceeding.

23     17.   Venue lies within this judicial district under 28 U.S.C. § 1391(a) and (c)

24  because BMW Group has sufficient contacts with this District to subject it to personal

25  jurisdiction in this District, and a substantial part of the events and omissions giving rise

26  to the claims asserted in this Complaint occurred within this District.

27

28

**Intradistrict Assignment**

18.     Consistent with Northern District of California Civil Local Rule 3-5(b), assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this Second Amended Complaint occurred, among other places, in this District, in the City of San Francisco and Contra Costa County.

## PARTIES

19.     Plaintiff Michael Callaghan is an individual and a citizen of the State of California.

20.     Plaintiff Matthew Caldwell is an individual and a citizen of the State of California.

21.     Plaintiff Rodney Pena is an individual and a citizen of the New York State.

22.     Plaintiff Jeanne Dose-Alderson is an individual and a citizen of Washington State.

23.     Plaintiff Steve Mueller is an individual and a citizen of the State of Alabama.

24.     Defendant BMW of North America, LLC is a New Jersey limited liability company with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677, and doing business in the State of California.

25.     Plaintiffs are informed and believe, and on that basis, allege that BMW of North America, LLC is responsible for the importation, distribution, marketing and sale of the Class Vehicles in the United States and California.

26.     BMW of North America, LLC is a wholly owned subsidiary of BMW (US) Holding Corporation, a Delaware corporation, which is a wholly owned subsidiary of Defendant Bayerische Motoren Werke AG.

27.     Defendant Bayerische Motoren Werke AG ("BMW AG") is a corporation organized under the laws of the Federal Republic of Germany, with its principal place of business in Petuelring 130, 80809 Munich, Germany.

28.     Plaintiffs are informed and believe, and on that basis, allege that Defendant

Bayerische Motoren Werke AG designs and manufactures motor vehicles, parts, and other products for sale in Europe and for export and sale throughout the world, including the Class Vehicles sold in the United States and California.

29.   Whenever, in this Second Amended Complaint, reference is made to any act, deed, or conduct of BMW Group, the allegation means that BMW Group engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of BMW Group.

## FACTUAL BACKGROUND

30.   BMW Group designs, manufactures, imports, distributes, and markets the Class Vehicles in the United States, including California.  BMW Group also provides maintenance services for the Class Vehicles through its nationwide network of authorized dealers and service providers.

31.   The Class Vehicles are equipped with Automatic Transmissions that fail prematurely, well before the end of the useful life of the Class Vehicles.  As a result of the failures, the Automatic Transmissions become inoperable and must be repaired or replaced.  Consequently, Class Vehicle owners are required to incur substantial costs to replace their Automatic Transmissions, or sell their Class Vehicles at a substantially reduced price, causing consumers to incur thousands of dollars of damages.

32.   Numerous owners of the Class Vehicles have reported such complaints, and BMW Group is well aware of the problem and attendant safety risks.  Plaintiffs are informed and believe, and based thereon, allege that BMW Group knew that the Automatic Transmissions installed in the Class Vehicles were plagued with problems from the beginning, when the Class Vehicles were first offered for sale.  Nevertheless, despite BMW Group's knowledge of this material safety defect, BMW Group failed to disclose its knowledge about the Automatic Transmission failures to consumers.

**BMW Group Is Aware that**
**the Class Vehicles' Automatic Transmissions**
**Fail Prematurely**

33.    The premature failures of the Class Vehicles' Automatic Transmissions are well-documented.  Plaintiffs are informed and believe, and based thereon, allege that BMW Group has acquired exclusive knowledge of this issue as a result of pre-production testing, design failure mode analysis, and customer complaints made to dealers -- information that is exclusively in BMW Group's possession and inaccessible by consumers.

34.    At all times, including at the time BMW Group put the respective Class Vehicles on the market, BMW Group has exclusively possessed superior information to that of consumers concerning the premature failures of the Class Vehicles' transmissions. Thus, BMW Group's consumer deception is both knowing and willful.

35.    Despite BMW Group's superior knowledge of this material safety concern, however, BMW Group did not inform Plaintiffs and members of the Classes of its knowledge of the premature failures - not before they purchased the Class Vehicles, nor during the time when the warranties were in place, which would have allowed them to timely obtain warranty repairs.

36.    Indeed, Plaintiffs are informed and believe, and based thereon, allege that BMW Group willfully intends that consumers rely on its material omissions in purchasing the Class Vehicles, and in not having appropriate repairs or replacements concerning the Automatic Transmissions during the warranty periods.

37.    Plaintiffs are informed and believe, and based thereon, allege that hundreds of Class Vehicle owners and lessees have reported complaints concerning the Class Vehicles' premature transmission failures.  Plaintiffs are informed and believe, and based thereon, allege that these complaints have been made to BMW Group directly, including to the company's network of dealerships, and to BMW Group's customer service agents. Thus, all this information is exclusively known by BMW Group, and has not been disclosed to consumers.

38.     Illustrating its awareness and culpability for Automatic Transmission failures in the Class Vehicles, BMW Group has provided "goodwill" adjustments to some consumers, paying as much as 60% of the cost of a Automatic Transmission replacement, while at the same time, refusing to do so for others.

39.     Additionally, BMW Group is well aware of the problem and safety risks, as a result of complaints made to the National Highway Traffic and Safety Administration ("NHTSA") concerning Automatic Transmission failures in the Class Vehicles.  A sample of such complaints, as reported to the NHTSA, is as follows (emphasis added):

Date Complaint Filed: 09/25/2008
Component(s): POWER TRAIN
Date of Incident: 09/19/2008
NHTSA ID Number: 10243438

All Products Associated with this Complaint:
Vehicle Make:  MINI          Model:  COOPER S          Model Year(s):  2007

Details:
Crash:  No      Fire:  No      Number of Injuries:  0      Number of Deaths:  0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): Not Available

SUMMARY:
2007 MINI COOPER, PURCHASED NEW, **APPROX 21,000 MILES. PARKED CAR WOULD NOT GO INTO REVERSE**. MANY WEB FORUMS INDICATE ONGOING PROBLEMS WITH MINI TRANSMISSIONS. *TR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Date Complaint Filed: 04/17/2010
Component(s): POWER TRAIN
Date of Incident: 07/01/2007
NHTSA ID Number: 10326155

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN):  WMWRH33546T

SUMMARY:
**I PURCHASE MY 2006 MINI COOPER S NEW ALMOST 4 YEARS AGO. I HAVE BEEN COMPLAINING ABOUT THE AUTOMATIC TRANSMISSION SINCE I PURCHASED IT**. IF YOU ARE GOING DOWN A HILL IT DOWNSHIFTS EXTREMELY HARD CAUSING A WHIPLASH EFFECT. **CARS HAVE ALMOST HIT ME FROM BEHIND MANY TIMES**. ADDITIONALLY WHEN GOING UP A HILL SUCH AS A FREEWAY ON-RAMP, THE CAR WILL JUST REFUSE TO ACCELERATE. **THIS IS VERY DANGEROUS WHEN TRYING TO MERGE ONTO THE FREEWAY**. **I HAVE SPOKEN MANY TIMES TO MINI HEADQUARTERS** AND THE CONSENSUS IS THAT IS HOW THE VEHICLE IS SUPPOSED TO OPERATE. THEY TOLD ME TO BUY A NEW ONE NOW BECAUSE THEY DON'T USE THAT TRANSMISSION ANY MORE. THEY ALSO TOLD ME TO MANUALLY SHIFT THE CAR IN THOSE SITUATIONS. I SAID IF I HAD WANTED TO SHIFT MANUALLY I WOULDN'T HAVE PAID FOR AN AUTOMATIC TRANSMISSION. I AM VERY FRUSTRATED WITH THEIR RESPONSE. I AM DISABLED AND ON A LIMITED INCOME. I CAN'T AFFORD TO BUY A NEW CAR AND MORE IMPORTANTLY I COULDN'T MORALLY SELL THIS ONE WITH THESE KIND OF PROBLEMS. *TR

Date Complaint Filed: 12/14/2009
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 05/10/2009
NHTSA ID Number: 10295697

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2008

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWMF73578T.

SUMMARY:
NOISE IN ENGINE AFTER COLD START. ENGINE WAS REPLACED BY MINI OF PEABODY MA AFTER A INTERNAL ENGINE FAILURE. THIS IS A 2008 COOPER S JCW AND THE ENGINE HAS BEEN NOISY SINCE IT WAS REPLACED. NOISE GOES AWAY AFTER IT WARMS UP. DEALER TELLS ME NOTHING IS WRONG. ORIGINAL ENGINE FAILED AT 8,000

MILES AND SO DID THE TRANSMISSION AND HAD TO BE REPLACED AS WELL. NOW AT 17,000 MILES TRANSMISSION OK BUT ENGINE SOUNDS LIKE IT IS KNOCKING AT START UP. *TR

Date Complaint Filed: 09/24/2012
Component(s): ENGINE , VEHICLE SPEED CONTROL
Date of Incident: 02/06/2012
NHTSA ID Number: 10476918

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No      Fire: No       Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33545T

SUMMARY:
THE VEHICLE BEGAN TO FEEL LIKE THE TRANSMISSION WAS SLIPPING: HESITATION, WHEELS SKIDDING, ROUGH ACCELERATION AND DECELERATION. THE PROBLEM CONTINUES AFTER 2 TRIPS TO MINI COOPER IN WHICH THE CAR'S COMPUTER WAS "RESET" BECAUSE NO PROBLEMS WITH THE TRANSMISSION WERE FOUND. THE PROBLEM DESCRIBED ABOVE PERSISTS, BUT THERE WAS ALSO ONE EPISODE WHERE THE CAR DID NOT START AND LATER TURNED OFF WHILE DRIVING ON A CONGESTED NYC ROAD. *TR

Date Complaint Filed: 08/14/2012
Component(s): POWER TRAIN
Date of Incident: 08/09/2012
NHTSA ID Number: 10470566

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No      Fire: No       Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33506T

SUMMARY:
**THE TRANSMISSION HAS FAILED AT 66K MILES - AS I AM RESEARCHING THIS PROBLEM, I CAN SEE THAT MANY PEOPLE HAVE HAD PREMATURE TRANSMISSION FAILURES WITH THEIR MINI COOPER AND BMW HAS NOT BEEN WILLING TO ADDRESS THE PROBLEM**. THE COST TO US WILL BE APPROXIMATELY $10,000 TO REPAIR. *TR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date Complaint Filed: 11/22/2011
Component(s): POWER TRAIN , STEERING
Date of Incident: 09/01/2011
NHTSA ID Number: 10436695

All Products Associated with this Complaint
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33455T

SUMMARY:
IN THE EARLY FALL, SEPTEMBER 2011, I ENCOUNTERED ISSUES WITH MY CAR NOT
SHIFTING PROPERLY. IT'S AN AUTOMATIC TRANSMISSION SO I KNOW THERE WAS
NOTHING I COULD BE DOING TO CAUSE THIS PROBLEM. THE CAR HAS BEEN SERVICED
REGULARLY AND DRIVEN WITH CARE WHILE IN MY POSSESSION(I'M THE SECOND
OWNER. NO SIMILAR ISSUES ON CARFAX REPORT). WHILE THE ENGINE IS COOL AND
NOT YET AT ITS OPTIMAL TEMPERATURE THE DRIVE IS FINE AND YOU MAY NOT EVEN
NOTICE A PROBLEM; HOWEVER, EVERY RIDE, ONCE WARMED UP THE CAR BEGINS TO
SHIFT INCREDIBLY VIOLENTLY AS IT IS OBVIOUSLY STRUGGLING TO SWITCH GEARS.
THIS OCCURS ALSO WHILE SLOWING DOWN AND THE CAR IS DOWNSHIFTING
CREATING AN OPPORTUNITY TO BE "SLUNG" INTO A CAR FROM BEHIND(THIS
HAPPENED IN THE MID SUMMER OF 2011). AFTER DROPPING THIS CAR OFF SEPTEMBER
15TH TO THE LOCAL MINI DEALERSHIP, I DID NOT HEAR FROM THEM FOR ALMOST
THREE WEEKS. IN THE FIRST WEEK OF OCTOBER I WAS CONTACTED AND TOLD IT
LOOKS LIKE MY CAR IS VERY EASILY FIXABLE AND SHOULD BE READY SHORTLY. IT
WAS EXPLAINED TO ME THAT A SEAL HAD BROKEN ON THE TRANSMISSION LEAKING
FLUID ONTO IT CAUSING THIS SHIFTING MALFUNCTION. WHEN THEY FINALLY TOLD ME
I CAN PICK UP MY CAR(APPROXIMATELY OCTOBER 18TH) THEY REGRETTED TO INFORM
ME THE PROBLEM WAS NOT ABLE TO BE FIXED AND I WOULD HAVE TO BRING IT
ELSEWHERE AS THEY DO NOT REBUILD TRANSMISSIONS. NOW IT IS BACK IN MY
POSSESSION WHERE I AM FORCED TO COMMUTE IN IT DAILY, DRIVING WORSE THAN IT
WAS BEFORE I DROPPED IT OFF. IT NOW DISPLAYS "PE" FOR ITS CURRENT GEAR FROM
TIME TO TIME. THIS IS NOT THE ONLY COMPLAINT I HAVE FILED FOR THIS CAR
MATCHING OTHER CONSUMER COMPLAINTS. I AM A VICTIM OF THEIR FAILED POWER
STEERING AS WELL. *TR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Date Complaint Filed: 06/16/2009
Component(s): POWER TRAIN
Date of Incident: 06/02/2009
NHTSA ID Number: 10273989

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2005

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33455T

SUMMARY:
2005 MINI COOPER S-BEGAN HAVING ISSUES WITH THE CAR JERKING WHEN SHIFTING
GEARS (NOT A MANUAL TRANSMISSION) IN EARLY 2009. I TOOK IT TO MY MECHANICS.
THEY HAD IT FOR QUITE AWHILE, TRYING TO DETERMINE THE ROOT CAUSE. THEY
ADVISED THAT THEY EVEN CONSULTED WITH THE DEALERSHIP, BUT SAID THEY FELT
LIKE THE DEALERSHIP WASN'T VERY FORTHCOMING IN THEIR INFORMATION. MY
MECHANIC ULTIMATELY DECIDED THAT HE THOUGHT IT WAS A SENSOR THAT NEEDED
TO BE REPLACED. $500 TO REPLACE THIS SENSOR. THE ROUGH SHIFTING CONTINUED
AND ON JUNE 2, 2009, WHILE I WAS OUT AT LUNCH, I LOST FIRST GEAR ALTOGETHER.
THE CAR WOULD MOVE FORWARD, BUT WAS NOT ABLE TO PICK UP ANY REAL SPEED
UNTIL THE RPM'S GOT HIGH ENOUGH. I PULLED OVER INTO A PARKING LOT, PUT THE
CAR IN PARK AND TURNED THE CAR OFF. WHEN I STARTED IT AGAIN, I HAD THE USE OF
FIRST GEAR AGAIN, BUT THIS TIME IT FELT AS THOUGH IT WOULDN'T SHIFT OUT
OF THIRD. I DROVE IT VERY SLOWLY AND CAREFULLY BACK TO MY OFFICE. I CALLED THE
DEALERSHIP, TOLD THEM THAT I WAS GOING TO NEED TO HAVE IT TOWED IN, AND
ASKED IF THEY HAD A TOWING SERVICE. SHE SAID NO, BUT RECOMMENDED A TOWING
COMPANY. I HAD IT TOWED IT BUT DIDN'T HEAR ANYTHING BACK FROM ANYONE
UNTIL MONDAY, JUNE 8, 2009. MY HUSBAND WAS TOLD IT WAS THE TRANSMISSION
AND THAT IT WOULD BE $8,000 FOR THE TRANSMISSION AND $2000 FOR THE LABOR.
HARD TO BELIEVE ANYONE COULD SAY THAT WITH A STRAIGHT FACE. AROUND JUNE
9, 2009, THE MINI SERVICE MANAGER SAID HE WAS GOING TO WORK WITH IT A LITTLE
BIT AND SEE IF HE COULD GET ANY OF THOSE COSTS COVERED UNDER A SERVICE
BULLETIN. TODAY IS JUNE 16, 2009. MY HUSBAND HAS CALLED, LEFT VOICEMAILS, AND
EVEN GONE UP THE DEALERSHIP. WE HAVE HEARD NOTHING BACK FROM THE MINI
SERVICE MANAGER. MY HUSBAND SPOKE TO THE BMW SERVICE MANAGER, WHO TOLD
HIM THAT WE'D HAVE TO WAIT AND TALK TO THE MINI SERVICE MANAGER. *TR

Date Complaint Filed: 01/21/2013
Component(s): POWER TRAIN , STEERING
Date of Incident: 01/03/2013
NHTSA ID Number: 10493636

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33566T

SUMMARY:
WHILE DRIVING THE VEHICLE, AT ANY SPEED, THE AUTOMATIC POWER TRAIN DOES
NOT SHIFT GEARS PROPERLY. IT WILL SHIFT UP, AND DOWN, AND NOT ENGAGE THE
PROPER GEAR. THE VEHICLE TRANSMISSION WILL "WIND-UP", THEN JUMP INTO A
GEAR. AT TIMES, THE VEHICLE WILL NOT SHIFT OUT OF FIRST GEAR. *TR

Date Complaint Filed: 11/15/2012
Component(s): ENGINE , POWER TRAIN
Date of Incident: 11/13/2012
NHTSA ID Number: 10484831

All Products Associated with this Complaint
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMWRE33526T

SUMMARY:
**DRIVING ON THE FREEWAY WHEN I FELT THE CAR JERK FORWARD AND THEN IT
FELT AS IF THE AUTOMATIC TRANSMISSION WAS SLIPPING IN AND OUT OF GEARS.
MANAGED TO PULL OFF THE FREEWAY AND DRIVE TO THE LOCAL MINI
DEALERSHIP, WHICH WAS LUCKILY ABOUT A MILE DOWN THE ROAD**. WAS TOLD BY
DEALERSHIP THE PROBLEM WAS TRANSMISSION FAILURE AND WAS QUOTED $9,000
REPAIR COST. WHEN I ASKED THE MECHANIC WHY THE TRANSMISSION HAD FAILED
THIS EARLY, TOLD ME THEY HAD NO IDEA. **HOWEVER, WHEN I ASKED ANOTHER
EMPLOYEE HOW MANY OTHER CARS HAD THEY SEEN WITH TRANSMISSION
PROBLEMS, HE RELUCTANTLY ADMITTED "QUITE A FEW".** *TR

Date Complaint Filed: 05/28/2013
Component(s): POWER TRAIN
Date of Incident: 09/12/2012
NHTSA ID Number: 10513818

All Products Associated with this Complaint:
Vehicle Make: MINI          Model: COOPER S          Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 0      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): WMRE33526TJ

SUMMARY:
**IN SEPTEMBER 2012 THE AUTOMATIC TRANSMISSION BEGAN SLIPPING. I HAD IT CHECKED OUT AND WAS TOLD THAT THE TRANSMISSION WAS FINE AND THAT MINI SAYS IT NEVER NEEDS TO BE SERVICED OR HAVE THE FLUID CHANGED.** OVER THE NEXT SEVERAL MONTHS IT GOT WORSE AND I WAS FINALLY TOLD THAT THE TRANSMISSION NEEDS TO BE REPLACED. **FORTUNATELY I NEVER HAD AN ACCIDENT OR ANY OTHER SERIOUS CONSEQUENCE AS A RESULT OF THE FAILING TRANSMISSION.** THIS CAR HAS BEEN TRADED IN BECAUSE THE TRANSMISSION WOULD COST $10,000.00 TO REPLACE. *TR

Date Complaint Filed: 12/15/2011
Component(s): ELECTRICAL SYSTEM , ENGINE AND ENGINE COOLING , POWER TRAIN , VISIBILITY
Date of Incident: 12/01/2011
NHTSA ID Number: 10440113

All Products Associated with this Complaint:
 Vehicle Make: MINI          Model: COOPER S    Model Year(s): 2006

Details:
Crash: No      Fire: No      Number of Injuries: 1      Number of Deaths: 0
Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): Not Available

SUMMARY:
PLETHORA OF ELECTRICAL PROBLEMS. HEATED SEATS ARE A MAJOR CONCERN. THEY GO ON AND OFF BY THEMSELVES, SEEM HAUNTED. SOMETIMES, THEY GET SO HOT THEY LEAVE BURN MARKS IN MY LEGS. I AM AFRAID OF AN ELECTRICAL FIRE. THE HEATED SEATS GET SO HOT, THEY LEFT BURN MARKS IN MY SEAT. **AISIN 6 SPEED AUTOMATIC TRANSMISSION, EQUIPPED WITH "LIFETIME" FLUID, BEGINS SLIPPING GEARS AT 70K** THE SUPERCHARGER HAD TO BE REPLACED DUE TO THE "DESIGN" OF THE SUPERCHARGER IT COULD NOT BE REPAIRED, I WAS FORCED BY BMWUSA TO PURCHASE A REMANUFACTURED SUPERCHARGER. I WAS TOLD IT WAS A "COMMON PROBLEM" I HAVE ALSO FOUND OUT FROM FORUMS SUCH AS

NORTHAMERICANMOTORING.COM THIS IS A PROBLEM THAT BMW DOES NOT WANT TO ADMIT ITS AT FAULT FOR HOWEVER THEY ARE ACKNOWLEDGING THE WIDESPREAD HAPPENINGS ACROSS THE COUNTRY. THE AVAILABILITY OF NEW SUPERCHARGERS IS VERY LOW BECAUSE OF THIS PROBLEM, HENCE ME PURCHASING A REMFGD ONE. REAR WIPER MOTOR FAILED AT 40K QUOTED HUNDREDS TO REPLACE, NOT WORTH IT!!!!! *TR

### Safety Concerns

40.     In connection with BMW Group's material omissions concerning the premature failures of the Automatic Transmissions, BMW Group also risks the safety of occupants of the Class Vehicles.  When the Class Vehicles' Automatic Transmissions fail while the Class Vehicles are in motion, a number of serious safety issues arise, including:

- Inability of the driver to engage gears;
- Vehicles hesitating, stalling or stopping completely in the midst of traffic;
- Vehicles unexpectedly surging forward while accelerating; and
- Vehicles violently jerking or stumbling while driver attempts to accelerate, or whenever driver attempts to shift gears.

41.     These symptoms of Automatic Transmission failure prevent Class Vehicle drivers from keeping up with the normal flow of traffic, and as a result drivers and occupants of the Class Vehicles are placed at an increased risk of collision.

42.     The reasonable expectation that the Class Vehicles are safe to drive and ride in was, and is, material to Plaintiffs and members of the Classes.  Indeed, as illustrated in the NHTSA complaints above, numerous drivers of the Class Vehicles have reported their safety concerns to the NHTSA.

**Plaintiffs Have Suffered Harm As a Result of**
**BMW Group's Material Omissions**

43.     The fact that the Class Vehicles' Automatic Transmissions are prone to premature and sudden failure is material because no reasonable consumer anticipates needing to pay thousands of dollars for repairs in the early years of vehicle ownership. Additionally, as discussed above, it presents consumers with a serious safety issue.

44.     As a result of BMW Group's material omissions concerning the Class Vehicles' Automatic Transmission failures, consumers have been forced to either spend thousands of dollars -- in some cases, upward of $10,000 -- to repair or replace the Class Vehicles' damaged or destroyed Automatic Transmissions, or to sell their unrepaired Class Vehicles at a substantial loss.

## PLAINTIFFS' CLAIMS AGAINST BMW GROUP

### Michael Callaghan

45.     Plaintiff Michael Callaghan is a resident of Walnut Creek, California, which is in Contra Costa County.

46.     On or around April 2011, Plaintiff Callaghan purchased a used 2005 Mini Cooper S from MINI of San Francisco for personal, family or household purposes.  The Class Vehicle had a mileage of approximately 65,445 miles.

47.     Plaintiff Callaghan was exposed to BMW Group's advertising campaign, which generally depicted the Class Vehicles to be of good quality.

48.     When Plaintiff Callaghan purchased his Class Vehicle, he relied on a reasonable expectation that the Class Vehicle's Automatic Transmission would last beyond the warranty period without need for costly repair or replacement.  He also relied on a reasonable expectation that his Class Vehicle did not pose an unavoidable safety risk. Given the small size of his Class Vehicle, the safety of the vehicle was particularly material to him.

49.     At the time of purchase, on or around April 2011, Plaintiff Callaghan reviewed BMW Group's promotional materials and other information, and had BMW

Group disclosed its knowledge of the Automatic Transmission failures, Plaintiff Callaghan would have seen such disclosures and would have been aware of them.

50.     Indeed, BMW Group's nondisclosures were material to Plaintiff Callaghan, and he would not have purchased the Class Vehicle, or he would not have paid the purchase price charged by BMW Group, had he known that the Automatic Transmission installed in his Class Vehicle was prone to premature dangerous failure, or that he likely would have to spend thousands of dollars for the Automatic Transmission's repair or replacement in the early years of vehicle ownership and operation.  Accordingly, Plaintiff Callaghan has been monetarily damaged and suffered injury in fact as a result of BMW Group's omission.

51.     Soon after he purchased his Class Vehicle, the Automatic Transmission in Plaintiff Callaghan's Class Vehicle began to degrade until ultimately, his Class Vehicle would not shift above the third gear.

52.     On or around November 7, 2012, Plaintiff Callaghan took his Class Vehicle to MINI of Concord for repairs.  The mileage of his Class Vehicle was approximately 69,000 miles.  MINI of Concord advised Plaintiff Callaghan that the Automatic Transmission would have to be replaced, at a cost of $8,000.  As a result, Plaintiff Callaghan took his Class Vehicle to an independent repair shop, which charged him approximately $6,000 for a Automatic Transmission rebuild.  Thus, Plaintiff Callaghan has been damaged and suffered injury-in-fact as a result of BMW Group's material omissions concerning the Automatic Transmission failures.

53.     At all times, Plaintiff Callaghan drove his Class Vehicle in a reasonably foreseeable manner.

**Matthew Caldwell**

54.     Plaintiff Matthew Caldwell is a resident of West Sacramento, California.

55.     On or around 2008, Plaintiff Caldwell purchased a used 2005 Mini Cooper S model vehicle for personal, family or household purposes.

56.     Plaintiff Caldwell was exposed to BMW Group's advertising campaign,

which generally depicted the Class Vehicles to be of good quality.

57.    When Plaintiff Caldwell purchased his Class Vehicle, he relied on the reasonable expectation that his Class Vehicle's Automatic Transmission would last beyond the warranty period without the need for costly repair or replacement.  He also relied on a reasonable expectation that his Class Vehicle did not pose an unavoidable safety risk.  Given the small size of his Class Vehicle, the safety of the vehicle was particularly material to him.

58.    At the time of purchase, on or around 2008, Plaintiff Caldwell reviewed BMW Group's promotional materials and other information, and had BMW Group disclosed its knowledge of the Automatic Transmission failures, Plaintiff Caldwell would have seen such disclosures and would have been aware of them.

59.    Indeed, BMW Group's material omissions were material to Plaintiff Caldwell, and he would not have leased or purchased his Class Vehicle, or he would have not paid the purchase price charged by BMW Group, had he known that the Automatic Transmission installed in his Class Vehicle was prone to premature dangerous failure, or that he would likely have to spend thousands of dollars for the Automatic Transmission's repair or replacement in the early years of vehicle operation and ownership.  Accordingly, Plaintiff Caldwell has been monetarily damaged and suffered injury in fact as a result of BMW Group's omissions.

60.    On or around 2010, shortly after expiration of the Class Vehicle's warranty, Plaintiff Caldwell's Class Vehicle began shifting harshly while accelerating, and the Automatic Transmission would become stuck in neutral, causing the Class Vehicle to stop completely.  Thus, on November 19, 2010, Plaintiff Caldwell took his Class Vehicle to Niello MINI and paid $160 for a diagnosis of the issue.  The dealership's technicians informed him that the only recommended solution from BMW Group was to replace the Automatic Transmission entirely, which would cost $9,099.00 (plus costs of labor).  Although the dealership requested that BMW Group cover the cost of repairs given that the warranty had just expired, BMW Group denied this request.

61. On December 22, 2010, after researching online and having reason to believe that degraded transmission fluid was the likely cause of the Automatic Transmission malfunctions, Plaintiff Caldwell took his Class Vehicle back to Niello MINI to have the fluid flushed. Plaintiff Caldwell paid $284.03 to Niello MINI for this service, after, as a gesture of goodwill, BMW Group discounted $100.00 from his total bill. Shortly thereafter, the Automatic Transmission defects manifested themselves again and worsened.

62. On December 6, 2011, Plaintiff Caldwell took his Class Vehicle to a mechanic, EU Tech, for diagnosis. After paying $110.00, the technicians informed Plaintiff Caldwell that the issue with the Automatic Transmission was "internal[] and mechanical" and that the Automatic Transmission now needed to be completely replaced.

63. On January 16, 2012, Plaintiff Caldwell's Class Vehicle registered a fault on the computer and put the car into "limp" mode, where it was locked into 2nd or 3rd gear. Plaintiff Caldwell had his Class Vehicle towed to Sunrise Auto Source, a mechanic, who cleared the fault from the Class Vehicle's computer for $80.00.

64. On November 10, 2012, Plaintiff Caldwell's Class Vehicle again went into fault mode. Plaintiff Caldwell took his Class Vehicle to another mechanic, Sierra Hart, and a technician reset the code for $47.50.

65. At this time, having faced ongoing and unresolved Automatic Transmission issues, Plaintiff Caldwell decided it was now necessary to completely replace the Automatic Transmission, despite the prohibitive cost. He purchased a used manual transmission for $2,155. He paid $2,845.45 to technicians at Ryan GMW in Auburn, California, for installation of the used transmission into his Class Vehicle.

66. At all times, Plaintiff Caldwell drove his Class Vehicle in a reasonably foreseeable manner.

67.     In total, Plaintiff Caldwell was forced to spend $5,732.18 out-of-pocket for repairs to his Class Vehicle.   Accordingly, he has suffered injury in fact and monetary damages as a result of BMW Group's material omissions concerning the Automatic Transmission failures.

**Rodney Pena**

68.     Plaintiff Rodney Pena is a resident of Campbell Hall, New York.

69.     On or around 2007, Plaintiff Pena purchased a used 2005 Mini Cooper S model vehicle from Prestige MINI in Ramsey, New Jersey.  Plaintiff Pena purchased this Class Vehicle for personal, family or household purposes.

70.     Plaintiff Pena was exposed to BMW Group's advertising campaign, which generally depicted the Class Vehicles to be of good quality.

71.     When Plaintiff , on or around 2007, purchased his Class Vehicle from BMW Group, he relied on a reasonable expectation that his Class Vehicle's Automatic Transmission would last beyond the warranty period without the need for costly repair or replacement.  He also relied on a reasonable expectation that his Class Vehicle did not pose an unavoidable safety risk.  Given the small size of the Class Vehicle, the safety of the vehicle was particularly material to him.

72.     At the time of purchase, on or around 2007, Plaintiff Pena reviewed BMW Group's promotional materials and other information, and had BMW Group disclosed its knowledge of the Automatic Transmission failures, Plaintiff Pena would have seen such disclosures and been aware of them.

73.     Indeed, BMW Group's omissions were material to Plaintiff Pena.  He would not have purchased his Class Vehicle, or he would not have paid the purchase price charged by BMW Group, had he known that the Automatic Transmission installed in his Class Vehicle was prone to premature dangerous failure, or that he likely would have to spend thousands of dollars for the Automatic Transmission's repair or replacement in the early years of vehicle ownership and operation.  Accordingly, Plaintiff Pena has been monetarily damaged and suffered injury in fact as a result of BMW Group's material

omissions concerning the Automatic Transmission failures.

74.     On or around July 2013, at a mileage of approximately 125,000 miles, Plaintiff Pena began experiencing problems with the Automatic Transmission in his Class Vehicle.  It began slipping and not staying in gear.  He took his Class Vehicle to European Import Repair in Harriman, New York, where a BMW specialist changed the transmission fluid.  However, the problems persisted, and the BMW specialist informed him that he would have to replace the Automatic Transmission at a cost of approximately $9,000.  At that time, the approximate value of his Class Vehicle was $9,500.  As a result of the Automatic Transmission problem, he ultimately traded in his car at R.I. Suresky & Son, a car dealership located in Goshen, New York, for approximately $4,000.   Accordingly, he suffered injury in fact and monetary damages as a result of BMW Group's material omissions concerning the Automatic Transmission failures.

75.     At all times, Plaintiff Pena drove his Class Vehicle in a reasonably foreseeable manner, as it was intended to be driven.

### Jeanne Dose-Alderson

76.     Plaintiff Jeanne Dose-Alderson is a resident of Sequim, Washington.

77.     On or around April 27, 2010, Plaintiff Dose-Alderson purchased her 2005 Mini Cooper Convertible S model vehicle in Sequim, Washington.  The Class Vehicle had a mileage of approximately 55,000 miles.   Plaintiff Dose-Alderson purchased this Class Vehicle for personal, family or household purposes.

78.     Plaintiff Dose-Alderson was exposed to BMW Group's advertising campaign, which generally depicted the Class Vehicles to be of good quality.

79.     When Plaintiff Dose-Alderson purchased her vehicle, she relied on a reasonable expectation that the Class Vehicle's Automatic Transmission would last beyond the warranty period without the need for costly repair or replacement.  She also relied on a reasonable expectation that the Class Vehicle did not pose an unavoidable safety risk.  Given the small size of the Class Vehicle, the safety of the vehicle was particularly material to her.

80.     At the time of purchase, on or around April 27, 2010, Plaintiff Dose-Alderson reviewed BMW Group's promotional materials and other information, and had BMW Group disclosed its knowledge of the Automatic Transmission failures, Plaintiff Dose-Alderson would have seen such disclosures and been aware of them.

81.     Indeed, BMW Group's nondisclosures were material to Plaintiff Dose-Alderson, and she would not have purchased the Class Vehicle, or she would not have paid the purchase price charged by BMW Group, had she known that the Automatic Transmission installed in her Class Vehicle was prone to premature dangerous failure, or that she would likely have to spend thousands of dollars for the Automatic Transmission's repair or replacement in the early years of vehicle operation and ownership.  Accordingly, Plaintiff Dose-Alderson has been monetarily damaged and suffered injury in fact as a result of BMW Group's material omissions.

82.     At all times, Plaintiff Dose-Alderson drove her Class Vehicle in a reasonably foreseeable manner.

83.     On or around December 28, 2012, at a mileage of approximately 73,887 miles, Plaintiff Dose-Alderson began noticing problems with her Automatic Transmission function.  After taking her Class Vehicle to a dealer, she was told that the Automatic Transmission had "burnt fluid," and that her Automatic Transmission needed to be replaced, at an estimated cost of $8,200.  Unable to afford the cost of such repairs, Plaintiff Dose-Alderson sold her Class Vehicle back to the dealer at a loss, for $7,400.  She later saw her Class Vehicle back on the dealer's lot, with an asking price of $13,991.  Accordingly, Plaintiff Dose-Alderson has been damaged and suffered injury-in-fact as a result of BMW Group's material omissions concerning the Automatic Transmission failures.

**Steve Mueller**

84.     Plaintiff Steve Mueller is a resident of Mobile, Alabama.

85.     On or around February 2, 2013, Plaintiff Mueller purchased his 2005 Mini Cooper S Model from an independent used car dealer in Mobile, Alabama.  The Class Vehicle had a mileage of 73,722 miles.   Plaintiff Mueller purchased this Class Vehicle for personal, family or household purposes.

86.     Plaintiff Mueller was exposed to BMW Group's advertising campaign, which generally depicted the Class Vehicles to be of good quality.

87.     When Plaintiff Mueller purchased his Class Vehicle, he relied on a reasonable expectation that the Class Vehicle's Automatic Transmission would last beyond the warranty period without the need for costly repair or replacement.  He also relied on a reasonable expectation that the Class Vehicle did not pose an unavoidable safety risk.  Given the small size of the Class Vehicle, the safety of the vehicle was particularly material to him.

88.     At the time of purchase, on or around February 2, 2013, Plaintiff Mueller reviewed BMW Group's promotional materials and other information, and had BMW Group disclosed its knowledge of the Automatic Transmission failures, Plaintiff Mueller would have seen such disclosures and been aware of them.

89.     Indeed, BMW Group's omissions were material to Plaintiff Mueller, and he would not have purchased the Class Vehicle, or he would not have paid the purchase price charged by BMW Group, had he known that the Automatic Transmission installed in his Class Vehicle was prone to premature dangerous failure, or that he would likely have to spend thousands of dollars for the Automatic Transmission's repair or replacement in the early years of vehicle ownership and operation.  Accordingly, Plaintiff Mueller has been monetarily damaged and suffered injury in fact as a result of BMW Group's material omissions.

90.     At all times, Plaintiff Mueller drove his Class Vehicle in a reasonably foreseeable manner.

91.     Shortly after purchasing the Class Vehicle, on or around July 2013, at a mileage of approximately 77,583 miles, Plaintiff Mueller first began noticing problems with his Automatic Transmission.  At a traffic light, Plaintiff Mueller noticed his Class Vehicle was struggling to pull away at a normal speed.  He drove home in "limp" mode, and had his Class Vehicle placed on a flatbed to be hauled to an independent repair shop.

92.     The repair shop charged Plaintiff Mueller $7,963.64 to have his Automatic Transmission replaced.  Accordingly, Plaintiff Mueller has been damaged and suffered injury-in-fact as a result of BMW Group's material omissions concerning the Automatic Transmission failures.

## STATUTE OF LIMITATIONS

93.     Any applicable statutes of limitations have been tolled by BMW Group's knowing and active concealment, denial, and misleading actions, as alleged herein. Plaintiffs and members of the Classes defined below were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part.  Plaintiffs and members of the Classes could not reasonably have discovered the latent nature of the premature and unsafe Automatic Transmission failures in the Class Vehicles, or the cause thereof, or any of the other issues and facts alleged herein.

94.     BMW Group is and has been under a continuous duty to disclose to Plaintiffs and members of the Classes the true character, quality, and nature of the Class Vehicles, and in particular, to disclose the existence of the Automatic Transmission failures. However, BMW Group knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Class Vehicles and of the Automatic Transmissions installed therein.  Plaintiffs and members of the Classes reasonably relied upon BMW Group's knowing, affirmative, and active concealment.  Based on the foregoing, BMW Group is estopped from relying on any statutes of limitation as a defense in this action.

95.     The causes of action alleged herein did or will only accrue upon discovery of the latent premature Automatic Transmission failures, as a result of BMW Group's

fraudulent concealment of the defect.  Plaintiffs and members of the Classes did not

discover, and could not have discovered, through the exercise of reasonable diligence, the

true nature of the Automatic Transmission defect.

**CLASS ACTION ALLEGATIONS**

96.    Plaintiffs brings this action, on behalf of themselves and all others similarly

situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

97.    The classes Plaintiffs seek to represent (collectively, the "Classes") are

defined as follows:

> CLASS: All persons and entities in the United States who purchased or leased a Mini Cooper S Model (defined as any of the following:  2005 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles), which was equipped with an automatic transmission.

> CALIFORNIA SUBCLASS: All citizens of the State of California who purchased or leased a Mini Cooper S Model (defined as any of the following: 2005 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles), which was equipped with an automatic transmission.

> NEW YORK SUBCLASS:  All citizens of the State of New York who purchased or leased a Mini Cooper S Model (defined as any of the following: 2005 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper

Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles), which was equipped with an automatic transmission.

WASHINGTON SUBCLASS:  All citizens of the State of Washington who purchased or leased a Mini Cooper S Model (defined as any of the following: 2005 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles), which was equipped with an automatic transmission.

ALABAMA SUBCLASS:  All citizens of the State of Alabama who purchased or leased a Mini Cooper S Model (defined as any of the following: 2005 through 2006 R53 Mini Cooper Hatchback S model vehicles, 2005-2008 R52 Mini Cooper Convertible S model vehicles, 2007-current R56 Mini Cooper Hatchback S model vehicles, 2008-current R55 Mini Cooper Clubman S model vehicles, 2009-current R57 Mini Cooper Convertible S model vehicles, and 2011-current R60 Mini Cooper Countryman S model vehicles), which was equipped with an automatic transmission.

98.   Plaintiffs reserve the right to amend the Classes' definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

99.   Plaintiffs reserve the right to establish subclasses as appropriate.

100.   This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) and satisfies the requirements thereof.

101.   Numerosity:  While the exact number of members of the Classes is unknown to  Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Classes is ascertainable based upon the records maintained by BMW Group.  At this time, Plaintiffs are informed and believe, and based thereon, allege that the

Classes include thousands of members.  Therefore, the Classes are sufficiently numerous that joinder of all members of the Classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

102.  <u>Ascertainablity</u>:  Names and addresses of members of the Classes are available from BMW Group's records.  Notice can be provided to the members of the Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

103.  <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the other members of the Classes which they seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Classes have been subjected to the same deceptive and improper practices and have been damaged in the same manner thereby.

104.  <u>Adequacy</u>:  Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4).  Plaintiffs are adequate representatives of the Classes, because they have no interests which are adverse to the interests of the members of the Classes.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

105.  <u>Superiority</u>: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

> (a)  The expense and burden of individual litigation make it economically unfeasible for members of the Classes to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)    If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)    Absent a class action, BMW Group likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

106.    Common questions of law and fact exist as to the members of the Classes, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Classes within the meaning of Federal Rule of Civil Procedure 23(b)(3).

107.    The common questions of fact include, but are not limited to, the following:

(a)    Whether the Automatic Transmissions installed in the Class Vehicles are prone to premature failure;

(b)    Whether the fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure is material to consumers;

(c)    Whether BMW Group has known or should have known that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure;

(d)    Whether BMW Group has had a duty to disclose the fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure;

(e)    Whether BMW Group breached its duty to disclose the fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure;

(f)    Whether BMW Group actively concealed material facts from consumers for the purpose of transferring the costs of Automatic Transmission failures to consumers;

(g)     Whether BMW Group's conduct constitutes violation(s) of the
        Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*);

(h)     Whether BMW Group's conduct constitutes violation(s) of the Unfair
        Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);

(i)     Whether BMW Group's conduct constitutes violation(s) of the New
        York Deceptive Practices Act (N.Y. Gen. Bus. Law § 349);

(j)     Whether BMW Group's conduct constituted violation(s) of the New
        Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, *et seq.*);

(k)     Whether BMW Group's conduct constituted violation(s) of the
        Washington Consumer Protection Act (Rev. Code of Wash. §§ 19.86,
        *et seq.*);

(l)     Whether BMW Group's conduct constituted violation(s) of the Code
        of Alabama (§ 6-5-12)

(m)     Whether BMW Group's conduct constituted fraud;

(n)     Whether BMW Group's conduct constituted unjust enrichment;

(o)     Whether Plaintiffs and members of the Classes are entitled to
        restitution and damages.

108.   In the alternative, this action is certifiable under the provisions of Federal
Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)     The prosecution of separate actions by individual members of the
        Classes would create a risk of inconsistent or varying adjudications
        with respect to individual members of the Classes which would
        establish incompatible standards of conduct for BMW Group;

(b)     The prosecution of separate actions by individual members of the
        Classes would create a risk of adjudications as to them which would,
        as a practical matter, be dispositive of the interests of the other

1    members of the Classes not parties to the adjudications, or

2    substantially impair or impede their ability to protect their interests;

3    and

4    (c)    BMW Group has acted or refused to act on grounds generally

5    applicable to the Classes, thereby making appropriate final injunctive

6    relief or corresponding declaratory relief with respect to the Classes as

7    a whole and necessitating that any such relief be extended to members

8    of the Classes on a mandatory, class-wide basis.

9    109.   Plaintiffs are not aware of any difficulty which will be encountered in the

10   management of this litigation which should preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### Violation of Consumers Legal Remedies Act
### (Cal. Civ. Code §§ 1750 *et seq.*)

13   110.   Plaintiffs hereby incorporate by reference the allegations contained in the

14   preceding paragraphs of this Second Amended Complaint.

15   111.   Plaintiffs Michael Callaghan and Matthew Caldwell (the "California

16   Plaintiffs") bring this cause of action against BMW Group on behalf of themselves and

17   members of the California Subclass.

18   112.   This cause of action is brought under the Consumers Legal Remedies Act,

19   California Civil Code sections 1750 *et seq.* ("CLRA"). California Plaintiffs and members

20   of the California Subclass are consumers as defined by California Civil Code

21   section 1761(d). The Class Vehicles are goods within the meaning of California Civil

22   Code section 1761(a).

23   113.   BMW Group violated and continues to violate the CLRA by engaging in the

24   following practices proscribed by California Civil Code section 1770(a) in transactions

25   with California Plaintiffs and members of the California Subclass, which were intended to

26   result in, and did result in, the sale of Class Vehicles:

(5)   Representing that [Class Vehicles have]…
characteristics…[and] uses…which they do not have….

(7)   Representing that [Class Vehicles] are of a particular
standard…if they are of another.

(9)   Advertising goods…with intent not to sell them as
advertised.

114.   BMW Group violated the CLRA by failing to timely disclose to California Plaintiffs and members of the California Subclass that the Automatic Transmissions installed in the Class Vehicles were prone to unsafe premature failure.

115.   BMW Group further violated the CLRA by actively concealing material facts from California Plaintiffs and members of the California Subclass for the purpose of transferring the cost of the Automatic Transmission failures to consumers.

116.   BMW Group also violated the CLRA because its failure to disclose to California Plaintiffs and members of the California Subclass the material fact that the Class Vehicles were prone to premature and sudden Automatic Transmission failure risked the safety of owners and occupants of the Class Vehicles.

117.   As a result of BMW Group's nondisclosures, California Plaintiffs and members of the California Subclass were exposed to safety risks, and were required to spend thousands of dollars to repair or replace their Automatic Transmissions, or sell their Class Vehicles without repair at a substantial loss.

118.   The fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure is material because no reasonable consumer expects that they will have to spend thousands of dollars for repairs in the early years of vehicle ownership. It is also material because California Plaintiffs and members of the California Subclass reasonably expected that the Class Vehicles would not suffer from a premature part failure presenting a safety risk, especially given the small size of the Class Vehicles.

119.   On August 22, 2013, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiffs' counsel, on behalf of Plaintiff Matthew Caldwell, and all other members of the California Subclass, notified BMW Group in writing of the

particular violations of Section 1770, and demanded that it rectify the problems associated with the behavior detailed above, which acts and practices are in violation of Section 1770.

120.    BMW Group failed to respond in any way to Plaintiff Caldwell's notice letter, and did not give the requested notice to all affected consumers under Section 1782. Therefore, under Section 1780(a) of the CLRA, California Plaintiffs and members of the California Subclass seek actual and punitive damages.

121.    Under Section 1782(d) of the CLRA, California Plaintiffs, on behalf of themselves and members of the California Subclass, also seek restitution of property, and any other relief that the court deems proper.

122.    BMW Group's conduct is malicious, fraudulent, and wanton, and the company continues to intentionally withhold material information from consumers.  The malicious, fraudulent, and wanton nature of BMW Group's conduct is evidenced by the fact that even after receiving notice of the issues described above from Plaintiff Caldwell, and from countless other consumers, BMW Group continues to deny that there is any problem with the Automatic Transmissions installed in the Class Vehicles, and refuses to offer California Plaintiffs and members of the California Subclass any remedy for the damages it has caused.

### SECOND CAUSE OF ACTION
### Violation of Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

123.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

124.    The California Plaintiffs bring this cause of action against BMW Group on behalf of themselves and members of the California Subclass.

125.    California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, BMW Group has engaged in unlawful, unfair, and/or fraudulent business acts or practices

1  in violation of California Business and Professions Code section 17200.

2  126.   BMW Group's omission of material fact, as set forth herein, constitutes an

3  "unlawful" practice because they violate California Civil Code sections 1572, 1573, 1709,

4  1710, 1711, 1770, California Business and Professions Code sections 17200 *et seq*. and

5  the common law.

6  127.   BMW Group's omission, as set forth herein, also constitute "unfair" business

7  acts and practices within the meaning of California Business and Professions Code

8  sections 17200 *et seq*., in that BMW Group's conduct was injurious to consumers,

9  offended public policy, and was unethical and unscrupulous.  The California Plaintiffs

10  also assert a violation of public policy by withholding material facts from consumers.

11  BMW Group's violation of consumer protection and unfair competition laws in the State

12  of California and other states resulted in harm to consumers.

13  128.   There were reasonable alternatives available to BMW Group to further BMW

14  Group's legitimate business interests, other than the conduct described herein.

15  129.   California Business and Professions Code section 17200 also prohibits any

16  "fraudulent business act or practice."

17  130.   BMW Group's concealment of material fact, as set forth above, was

18  misleading and likely to deceive the public within the meaning of California Business and

19  Professions Code section 17200.

20  131.   BMW Group's omission was made with knowledge of their its, and to induce

21  the California Plaintiffs and the members of the California Subclass to purchase the Class

22  Vehicles, and to discourage them from seeking repairs to or replacement of the Automatic

23  Transmissions while the Class Vehicles were under warranty, thereby unlawfully

24  transferring the costs of repairs and replacements from BMW Group to Plaintiff and

25  members of the California Subclass.  The California Plaintiffs and the members of the

26  California Subclass justifiably relied on upon BMW Group's knowing, affirmative and

27  active concealment when they purchased their Class Vehicles, and when they failed to

28  seek to have their Automatic Transmissions repaired or replaced within the warranty

1   period.

2   132.   BMW Group's conduct caused and continues to cause injury to the
3   California Plaintiffs and the members of the California Subclass.  The California Plaintiffs
4   and the members of the California Subclass have suffered injury in fact and have lost
5   money as a result of BMW Group's conduct.  Indeed, as a result of BMW Group's failure
6   to disclose that the Automatic Transmissions installed in the Class Vehicles were prone to
7   premature failure, the California Plaintiffs and the members of the California Subclass
8   were exposed to safety risks, and were required to spend thousands of dollars to repair or
9   replace their Automatic Transmissions, or sell their Class Vehicles without repair at a
10  substantial loss.

11  133.   The fact the Automatic Transmissions are prone to premature failure is
12  material because because no reasonable consumer expects to be forced to spend thousands
13  of dollars for repairs or part replacements in the early years of vehicle ownership.
14  Additionally, this fact is material because the California Plaintiffs and the members of the
15  California Subclass had a reasonable expectation that the Class Vehicles would not suffer
16  from a premature failure that would present a serious safety risk, especially given the
17  small size of the Class Vehicles.  Indeed, sudden Automatic Transmission failure presents
18  a serious safety issue and places the driver and passengers of the Class Vehicles at risk of
19  serious harm.  When the Automatic Transmissions fail, drivers are unable to keep up with
20  the normal flow of traffic or control the movement of their Class Vehicles, exposing them
21  to the risk of collisions.

22

23  134.   Accordingly, the California Plaintiffs and the members of the California
24  Subclass would not have purchased or leased the Class Vehicles had it not been for BMW
25  Group's active concealment of material facts.  Furthermore, had the California Plaintiffs
26  and the members of the California Subclass known that the Automatic Transmissions
27  installed in the Class Vehicles were prone to premature failure, they would have sought
28  appropriate repairs and replacements within the warranty period.

135.   BMW Group has thus engaged in unlawful, unfair, and fraudulent business acts entitling the California Plaintiffs and the members of the California Subclass to judgment against BMW Group, as set forth in the Prayer for Relief.

### THIRD CAUSE OF ACTION
#### Violation of New York Deceptive Practices Act
#### (N.Y. Gen. Bus. Law § 349)

136.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

137.   Plaintiff Pena brings this cause of action on behalf of himself and the members of the New York Subclass.

138.   Plaintiff Pena and the members of the New York Subclass are "consumers" under N.Y. Gen. Bus. Law § 349.

139.   BMW Group has failed to disclose and/or concealed material facts from Plaintiff Pena and members of the New York Subclass, namely, that the Automatic Transmissions installed in the Class Vehicles are prone to premature and dangerous failure. Thus, BMW Group has violated New York Gen. Bus. Law § 349 by:

(a)   Representing that [Class Vehicles] had characteristics, uses, benefits or quantities which they do not have;

(b)   Representing that [Class Vehicles] were of a particular standard, quality or grade when they were of another; and

(c)   Advertising [Class Vehicles] with intent not to sell them as advertised.

140.   The deceptive acts and practices engaged in by BMW Group were consumer-oriented.

141.   BMW Group's conduct has a sufficient geographic nexus to the state of New York.  As a result of BMW Group's failure to disclose the fact that the Automatic Transmissions were prone to premature failure, Plaintiff Pena was forced to seek repairs to his Automatic Transmission from a BMW specialist in New York.  The Automatic

Transmission continued to malfunction, and Plaintiff Pena was told that complete Automatic Transmission replacement at a cost of $9,000 was needed.  At that time the approximate value of Plaintiff Pena's Class Vehicle was $9,500.  Plaintiff Pena was forced to trade in his car to a dealership in New York for approximately $4,000, at a substantial loss.  Accordingly, he suffered injury in fact and monetary damages in New York.

142.   Plaintiff Pena is informed and believes, and based thereon, alleges that BMW Group knew that the Class Vehicles were prone to premature Automatic Transmission failure since at least 2005, if not earlier, as a result of pre-production testing, design failure mode analysis, customer complaints made directly to BMW Group, and complaints made to the NHTSA, among other sources of information.

143.   Despite its knowledge, BMW Group chose not to fully and honestly disclose to its customers the true nature of the Class Vehicles and the Automatic Transmission failures, which was not readily discoverable by consumers, often until after the Class Vehicles' warranties had expired and their Automatic Transmissions had already failed.

144.   All of the deceptive acts and practices set forth herein were materially misleading and constitute violations of New York Gen. Bus. Law § 349 independent of whether those acts and practices constitute violations of any other law, including common law.

145.   These deceptive acts and practices were committed in conduct of business, trade, commerce, or the furnishing of a service in New York.  BMW Group's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.  To the contrary, the deceptive conduct set forth herein is part of a regular and recurring practice that impacts all of the New York Subclass members.

146.   As a result of BMW Group's deceptive practices, Plaintiff Pena and the other members of the New York Subclass have suffered actual injury and damages, in that they have been forced to either spend thousands of dollars to repair or replace the Class

Vehicles' damaged or destroyed Automatic Transmissions, or to sell their unrepaired Class Vehicles at a substantial loss.

147.    Plaintiff Pena is informed and believes, and based thereon, alleges that BMW Group's violations of this Act were willful and knowing and committed in bad faith.

148.    For these reasons, Plaintiff Pena is entitled to actual damages, costs and reasonable attorneys' fees pursuant to N. Y. Gen. Bus. Law § 349(h), and a declaratory judgment that BMW Group's practices are deceptive as defined under § 349.

### FOURTH CAUSE OF ACTION
### Violation of New Jersey Consumer Fraud Act
### (N.J. Stat. § 56:8-1, *et seq.*)

149.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

150.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

151.    The Class Vehicles are "merchandise" under N.J. Stat. § 56:8-1(c).

152.    BMW Group is a "person" under N.J. Stat. § 56:8-1(d).

153.    N.J. Stat. § 56:8-2 states:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . .

154.    BMW Group has violated N.J. Stat. § 56:8-2 by intentionally failing to disclose and/or concealing material facts from Plaintiffs and the Class concerning the Class Vehicles, including that the Class Vehicles are equipped with Automatic Transmissions that are prone to premature and dangerous failure.

155.    For example, BMW Group violated N.J. Stat. § 56:8-2 by engaging in the

following conduct:

(a)   Representing that its goods had characteristics, uses, benefits or quantities which they do not have;

(b)   Representing that its goods were of a particular standard, quality or grade when they were of another;

(c)   Concealing, suppressing and making fraudulent or negligent misrepresentations concerning the Automatic Transmissions, as set forth above;

(d)   Failing to repair, replace or reimburse Plaintiffs and members of the Class for damages incurred due to premature Automatic Transmission failures.

156.   BMW Group made the above described concealments and omissions of material facts with full knowledge or recklessness that they were false and misleading and with the intent that their consumers would rely upon such concealment, suppression and omission in purchasing the Class Vehicles, and in not seeking repairs to or replacement of the Automatic Transmissions within the warranty period.

157.   Plaintiffs are informed and believed, and based thereon allege that BMW Group has about the premature Automatic Transmission failures since 2005, if not earlier, as a result of pre-production testing, design failure mode analysis, customer complaints made directly to BMW Group, and complaints made to the NHTSA, among other sources of information.

158.   Despite its knowledge, BMW Group intentionally chose not to disclose to its customers the true nature of the Class Vehicles and the Automatic Transmissions installed therein, which was not readily discoverable by consumers, often until after the Class Vehicles' warranties had expired and the Automatic Transmissions had already failed or begun to fail.  Plaintiffs are informed and believe, and based thereon, allege that BMW Group continues to conceal the material fact that the Class Vehicles' Automatic Transmissions are prone to premature failure.

159.   The fact that the Automatic Transmissions are prone to premature failure is material.  Sudden Automatic Transmission failure is a serious safety issue, placing the driver and passengers of the Class Vehicles at risk of serious bodily harm.  The safety of the Class Vehicles is particularly material given the small size of the Class Vehicles. When the Automatic Transmissions fail, there is no safe alternative way for drivers to avoid the risk of potential harm while driving.

160.   As a result of BMW Group's practices in violation of N.J. Stat. § 56:8-2, Plaintiffs and members of the Class were exposed to safety risks, and were required to spend thousands of dollars on repairs to or replacement of the Automatic Transmissions, or to sell their Class Vehicles without repairs at a substantial loss.

## FIFTH CAUSE OF ACTION
### Violation of Washington Consumer Protection Act
### (Revised Code of Washington §§ 19.86 *et seq.*)

161.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

162.   Plaintiff Jeanne Dose-Alderson brings this cause of action on behalf of herself and the members of the Washington Subclass.

163.   BMW Group engaged in unfair or deceptive acts or practices when it: (i) failed to disclose that the Class Vehicles' Automatic Transmissions were not of a particular standard, quality or grade; (ii) failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Class Vehicles, including their Automatic Transmissions; (iii) failed to disclose at the time of purchase or lease that the Class Vehicles, including their Automatic Transmissions, were not in good working order, were defective, and were not fit for their intended purpose; (iv) failed to give adequate warnings and notices regarding the use, defects, and problems with the Class Vehicles' Automatic Transmissions to customers and consumers who purchased or leased the Class Vehicles, despite the fact that BMW Group possessed prior knowledge of the inherent defects in the Class Vehicles'

Automatic Transmissions; (v) failed to disclose, either through warnings or recall notices, and/or actively concealed the facts that the Class Vehicles' and that the Class Vehicles' Automatic Transmissions were prone to premature failure, despite the fact that BMW Group knew of such problems; and (viii) caused Plaintiff and members of the Washington Subclass to expend sums of money at its dealerships to repair or replace the Class Vehicles' Automatic Transmissions despite BMW Group's knowledge of the problem.

164.    BMW Group either knew or should have known that the Class Vehicles' Automatic Transmissions were defectively designed or manufactured, would fail prematurely, were not suitable for their intended use, and otherwise were not as warranted by BMW Group.

165.    BMW Group's unfair or deceptive acts or practices repeatedly occurred in its trade or business, and were capable of deceiving a substantial portion of the purchasing public.

166.    As a direct and proximate result of BMW Group's unfair or deceptive acts or practices, Plaintiff Jeanne Dose-Alderson and the Washington Subclass have suffered and will continue to suffer actual damages in (i) expending out-of-pocket monies for repairs to and replacements of the Class Vehicles' Automatic Transmissions; (ii) the failure of consideration in connection with or difference in value arising out of the variance between the Class Vehicles as warranted and the Class Vehicles containing the defect; and (iii) the diminution of resale value of the Class Vehicles resulting from the defect.

167.    As a result of BMW Group's unfair and deceptive practices, Plaintiff Jeanne Dose-Alderson and the Washington Subclass are entitled to compensatory and treble damages, attorneys' fees, and other relief under RCW 19.86 *et seq.*

**SIXTH CAUSE OF ACTION**
**Suppression of Material Fact**
**(Code of Alabama § 6-5-12)**

168.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

169.   Plaintiff Mueller brings this cause of action on behalf of himself and members of the Alabama Subclass.

170.   Code of Ala. § 6-5-102 states:  "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."

171.   BMW Group suppressed the material fact that the Class Vehicles' Automatic Transmissions are prone to premature and dangerous failure.  BMW Group has the duty to disclose this material fact to Plaintiff Mueller and the Alabama Subclass.  This fact is material because no reasonable consumer expects that they will have to spend thousands of dollars for repairs and part replacements in the early years of vehicle ownership, and because Plaintiff and members of the Alabama Subclass had a reasonable expectation that the Class Vehicles would not suffer from a premature failure that would present a safety risk, especially given the small size of the Class Vehicles.

172.   Plaintiff Mueller is informed and believes, and based thereon, alleges that BMW Group has known about the Automatic Transmission failures since 2005, if not earlier, as a result of pre-production testing, design failure mode analysis, customer complaints made directly to BMW Group, and complaints made to the NHTSA.  These facts were not reasonably discoverable by Plaintiff Mueller and members of the Alabama Subclass, often until the Class Vehicles' warranties had expired and the Automatic Transmissions had already failed or begun to fail.

173.   Had Plaintiff Mueller and members of the Alabama Subclass known that the Class Vehicles' Automatic Transmissions were prone to premature failure, they would not have purchased the Class Vehicles, or would have not paid the purchase price charged by

BMW Group, or they would have had appropriate repairs made to their Class Vehicles' Automatic Transmissions within the warranty period.

174.   As a result of BMW Group's material nondisclosures, Plaintiff Mueller and members of the Alabama Subclass were exposed to safety risks, and were required to spend thousands of dollars on repairs to or replacements of their Class Vehicles' Automatic Transmissions, or to sell their Class Vehicles without repair at a substantial loss.

## SEVENTH CAUSE OF ACTION
### Fraud

175.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

176.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Class.

177.   BMW Group concealed and suppressed the material fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure, exposing drivers and occupants of the Class Vehicles to safety risks, and causing members of the Class to suffer monetary damages.

178.   BMW Group knew its concealment and suppression of material fact was false and misleading.

179.   As a result of BMW Group's failure to disclose to members of the Class the material fact that the Automatic Transmissions installed in Class Vehicles are prone to premature failure, consumers are required to spend thousands of dollars to repair or replace their Automatic Transmissions, or to sell their Class Vehicles without repair at a substantial loss.  Therefore, the fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure is material because no reasonable consumer expects to have to spend thousands of dollars for repairs in the early years of vehicle ownership, and because Plaintiffs and members of the Class reasonably expected that the Class Vehicles would not suffer from premature failures posing safety risks, especially

given the small size of the Class Vehicles.

180.   Additionally, the fact that the Automatic Transmissions installed in the Class Vehicles are prone to premature failure is material to consumers because it presents a safety issue and places the driver and passengers at risk of serious harm.  When the Automatic Transmissions fail, they do so without warning, and drivers of the Class Vehicles are unable to keep up with the normal flow of traffic or control the movement of their Class Vehicles, exposing them to the risk of collisions.  Accordingly, Plaintiffs and members of the Class would not have purchased the Class Vehicles, or would not have paid the price charged by BMW Group, but for BMW Group's omission and concealment of material fact.

181.   BMW Group made the omission and concealment of material fact discussed above with knowledge of the effect of concealment.  BMW Group knew that by misleading consumers, it would sell more Class Vehicles, and would discourage consumers from seeking replacement of their Automatic Transmissions within the warranty period, thereby unlawfully transferring the cost of repairs and replacements to from itself to the consumers, both of which would increase BMW Group's profit margins.

182.   Plaintiffs and members of the Class justifiably relied upon BMW Group's knowing, affirmative, and active concealment.  By concealing material information about the Class Vehicles, BMW Group intended to induce Plaintiffs and members of the Class into purchasing the Class Vehicles and discourage them from seeking repairs or replacement of the Automatic Transmissions within the warranty period.

183.   BMW Group acted with malice, oppression, or fraud.

184.   As a direct and proximate result of BMW Group's omission and active concealment of material fact, Plaintiffs and each member of the Class has been damaged in an amount according to proof at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment

185.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

186.   BMW Group profited unjustly from the lease and sale of the Class Vehicles at inflated prices as a result of concealing its knowledge of premature Automatic Transmission failures, engaging in a secret warranty program, providing repair services, or selling replacement parts for the Automatic Transmissions.

187.   As a proximate result of their wrongful acts and omissions described herein, and as a result of their ill-gotten benefits and profits, BMW Group has been unjustly enriched at the expense of Plaintiffs and the Class.

188.   The circumstances as described herein are such that it would be inequitable for BMW Group to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiffs and the Class.

189.   Plaintiffs and members of the Class are entitled to restitution of the amount of BMW Group's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct, as described above.

190.   Accordingly, Plaintiffs and members of the Class seek an order establishing BMW Group as constructive trustees of the gains, benefits and profits that served to unjustly enrich them, together with interest during the period in which BMW Group has retained such benefits and profits, and requiring BMW Group to disgorge those profits to Plaintiffs and members of the Class in a manner to be determined by the Court.

### PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against BMW Group, as follows:

1.   Certifying the Classes as requested herein;

2.   Awarding Plaintiffs and the members of the Classes compensatory damages in an amount according to proof at trial;

1       3.      Awarding to Plaintiffs and the Classes punitive damages;

2       4.      Awarding restitution and disgorgement of BMW Group's revenues to

3 Plaintiffs and members of the Classes;

4       5.      Awarding interest on the monies wrongfully obtained from the date of

5 collection through the date of entry of judgment in this action;

6       6.      Awarding attorneys' fees, expenses, and recoverable costs reasonably

7 incurred in connection with the commencement and prosecution of this action; and

8       7.      For such other and further relief as the Court deems just and proper.

Dated:  May 16, 2014             BARON & BUDD, P.C.

By:   /s/ Mark Pifko
     Mark Pifko

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:  (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiffs
MICHAEL CALLAGHAN, MATTHEW
CALDWELL, RODNEY PENA, JEANNE
DOSE-ALDERSON, and STEVE
MUELLER individually, and on behalf of
other members of the public similarly
situated

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiffs request trial by jury on all issues so triable.

3

Respectfully submitted,

4

Dated:  May 16, 2014                         BARON & BUDD, P.C.

5

6

By:   /s/ Mark Pifko

7

Mark Pifko

8

Roland Tellis (SBN 186269)

9

rtellis@baronbudd.com
Mark Pifko (SBN 228412)

10

mpifko@baronbudd.com
BARON & BUDD, P.C.

11

15910 Ventura Boulevard, Suite 1600

12

Encino, California 91436
Telephone:  (818) 839-2333

13

Facsimile:   (818) 986-9698

14

Attorneys for Plaintiffs

15

MICHAEL CALLAGHAN, MATTHEW
CALDWELL, RODNEY PENA, JEANNE

16

DOSE-ALDERSON, and STEVE
MUELLER individually, and on behalf of

17

other members of the public similarly

18

situated

19

20

21

22

23

24

25

26

27

28

Case No.: 3:13-cv-04794-JD